IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,<br><br>      Plaintiff,<br><br>  v.<br><br>UNITED STATES,<br><br>      Defendant. | Before: Hon. _____<br><br>Court No. 21-00253 |

## COMPLAINT

Plaintiff, Aluminum Extrusions Fair Trade Committee ("Plaintiff"), by and through its attorneys, alleges and states as follows:

### ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1. Plaintiff brings this Complaint to contest certain aspects of the U.S. Department of Commerce's ("Commerce") final scope ruling finding that Reflection Window + Wall, LLC's ("Reflection") window wall system kits are outside the scope of the antidumping duty and countervailing duty orders on *Aluminum Extrusions from the People's Republic of China*. The final scope ruling was issued on April 26, 2021. Memorandum from Mark Flessner, Senior Int'l Trade Compliance Analyst, Off. VI, AD/CVD Operations, through Dana S. Mermelstein, Director, Off. VI, AD/CVD Operations, to James Maeder, Deputy Assistant Sec'y for AD/CVD Operations, re: *Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China: Final Scope Ruling on Reflection Window + Wall, LLC's Window Wall System Kits* (Apr. 26, 2021) ("Scope Ruling").

Court No. 21-00253

## JURISDICTION

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action is commenced under sections 516A(a)(2)(A)(ii) and (a)(2)(B)(vi) of the Tariff Act of 1930, *codified as amended at* 19 U.S.C. § 1516a(a)(2)(A)(ii), (a)(2)(B)(vi).

## STANDING

3. Plaintiff is a coalition of domestic producers of aluminum extrusions and is, therefore, an interested party within the meaning of 19 U.S.C. § 1516a(f)(3) and 19 U.S.C. § 1677(9)(E) and participated in the scope inquiry under review. Accordingly, Plaintiff has standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF ACTION

4. Plaintiff commenced this action by filing a Summons on May 26, 2021, within 30 days of the publication of the final scope ruling. Summons (May 26, 2021), ECF No. 1. Plaintiff is filing this Complaint within 30 days of the filing of the Summons. The Summons and Complaint are, therefore, timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A) and pursuant to Rules 3(a)(2) and 6(a) of this Court.

## HISTORY OF THE ADMINISTRATIVE PROCEEDING

5. On March 31, 2010, Plaintiff and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (collectively "Petitioners") filed a petition with Commerce and the U.S. International Trade Commission ("ITC") alleging that an industry in the United States was materially injured or threatened with material injury by reason of dumped and subsidized imports of certain aluminum extrusions from China.

**Court No. 21-00253**

6.      On April 27, 2010, Commerce initiated an antidumping duty investigation to determine whether certain aluminum extrusions from China were being, or were likely to be, sold in the United States at less than fair value. *Aluminum Extrusions from the People's Republic of China*, 75 Fed. Reg. 22,109 (Dep't Commerce Apr. 27, 2010) (initiation of antidumping duty inv.). That same day, Commerce also initiated a countervailing duty investigation to determine whether certain aluminum extrusions from China received countervailable subsidies. *Aluminum Extrusions from the People's Republic of China*, 75 Fed. Reg. 22,114 (Dep't Commerce Apr. 27, 2010) (initiation of countervailing duty inv.).

7.      In June 2010, the ITC found that there was a reasonable indication that imports of certain aluminum extrusions from China were materially injuring, or threatening material injury to, a U.S. industry. *See Certain Aluminum Extrusions from China*, Inv. Nos. 701-TA-475 and 731-TA-1177, USITC Pub. 4153 (June 2010) (Prelim.).

8.      On April 4, 2011, Commerce published notice of its final determination that certain aluminum extrusions from China were being, or were likely to be, sold in the United States at less than fair value. *Aluminum Extrusion from the People's Republic of China*, 76 Fed. Reg. 18,524 (Dep't Commerce Apr. 4, 2011) (final deter. of sales at less than fair value). On the same day, Commerce also published notice of its final affirmative countervailing duty determination. *Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 18,521 (Dep't Commerce Apr. 4, 2011) (final affirm. countervailing duty deter.).

9.      In May 2011, the ITC notified Commerce of its final determination that imports of certain aluminum extrusions from China were materially injuring a U.S. industry. *See Certain Aluminum Extrusions from China*, Inv. Nos. 701-TA-475 and 731-TA-1177, USITC Pub. 4229 (May 2011) (Final).

10. On May 26, 2011, Commerce issued antidumping and countervailing duty orders regarding certain aluminum extrusions from China. *Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 30,650 (Dep't Commerce May 26, 2011) (antidumping duty order) ("AD Order"); *Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011) (countervailing duty order) ("CVD Order") (collectively, the "Orders").

11. The scope of the orders reads, in part: "The scope . . . excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels. The scope also excludes finished goods containing aluminum extrusions that are entered unassembled in a 'finished goods kit.' A finished goods kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled 'as is' into a finished product. An imported product will not be considered a 'finished goods kit' and therefore excluded from the scope . . . merely by including fasteners such as screws, bolts, *etc.* in the packaging with an aluminum extrusion product." AD Order at 30,651; CVD Order at 30,654.

12. On August 7, 2019, Reflection requested that Commerce determine that its window wall system kits imported from China meet the "finished goods kits" exclusion in the scope and are outside the scope of the Orders. *See* Letter from Husch Blackwell LLP to Sec'y Commerce, re: *Aluminum Extrusions from the People's Republic of China: Request for Scope Ruling on Certain Window Wall System Kits* (Aug. 7, 2019). Reflection explained that window wall systems generally are non-load bearing fenestration systems provided in combination assemblies and

**Court No. 21-00253**

composite units, including transparent vision panels and/or opaque glass or metal panels that span from the top of a floor slab to the underside of the next higher floor slab, and that window wall kits are complete fenestration systems inserted into the opening of a building. *See id.* at 2-3. Reflection also explained that all window wall systems include four primary components: panels, head receptors, sill receptors, and slab covers. *See id.* at 3.

13. Commerce rejected Reflection's request and issued it a supplemental questionnaire on September 23, 2019, which included requesting that Reflection provide full sets of entry documents for each of the kits for which it was requesting a scope ruling and to delineate the parts that are included in each kit. *See* Letter from Erin Kearney, Program Manager, AD/CVD Operations, Off. VI, Enf't and Compliance, to Reflection Window + Wall, LLC, re: *Aluminum Extrusions from the People's Republic of China: Request for Information Regarding Reflection Window + Wall, LLC's Scope Inquiry on Window Wall System Kits* (Sept. 23, 2019). Reflection responded to Commerce's supplemental questionnaire and resubmitted its request on January 9, 2020. *See* Letter from Husch Blackwell LLP to Sec'y Commerce, re: *Aluminum Extrusions from the People's Republic of China: Request for Scope Ruling on Certain Window Wall System Kits Qualifying as a Finished Goods Kit* (Jan. 9, 2019).[1]

14. Commerce issued a second supplemental questionnaire on March 11, 2020. *See* Letter from Erin Kearney, Program Manager, AD/CVD Operations, Off. VI, Enf't and Compliance, to Reflection Window + Wall, LLC, re: *Aluminum Extrusions from the People's Republic of China: Request for Information Regarding Reflection Window + Wall, LLC's Scope Inquiry on Window Wall System Kits* (Mar. 11, 2020). Reflection responded to the questionnaire

---

[1] Plaintiff notes that, while the date on the header of this submission was January 9, 2019, the submission was stamped with the date of January 9, 2020 when filed at Commerce. The discrepancy between the dates appears to have been a typographical error.

**Court No. 21-00253**

on March 16, 2020. *See* Letter from Husch Blackwell LLP to Sec'y Commerce, re: *Aluminum Extrusions from the People's Republic of China Request for Scope Ruling on Certain Window Wall System Kits Supplementary Response* (Mar. 16, 2020).

15.     Commerce issued a third supplemental questionnaire on April 28, 2020. *See* Letter from Erin Kearney, Program Manager, AD/CVD Operations, Off. VI, Enf't and Compliance, to Reflection Window + Wall, LLC, re: *Aluminum Extrusions from the People's Republic of China: Request for Information Regarding Reflection Window + Wall, LLC's Scope Inquiry on Window Wall System Kits* (Apr. 28, 2020).

16.     Reflection responded to Commerce's third supplemental questionnaire on May 11, 2020. *See* Letter from Husch Blackwell LLP to Sec'y Commerce, re: *Responses to Questions Identified in Attachment I to the Department of Commerce's Letter of April 28, 2020 Concerning Reflection Window's Scope Ruling Request Specific to Certain Window Wall Systems* (May 11, 2020). Reflection's third supplemental questionnaire response clarified that its scope ruling request was for four series of its window wall systems currently in production, RWW-8000, RWW-9000, RWW-9500, and RWW-12000, and indicated that it is designing a similarly engineered fifth series, series RWW-7000. *Id.* at 3-4. These series vary with respect to their structural mullion and/or receptor system depths but are otherwise identical in production and materials. *Id.* at 4.

17.     Over the course of the inquiry, Plaintiff submitted arguments to establish that Reflection's window wall system kits are not "finished goods kits." Specifically, Plaintiff pointed to evidence indicating that Reflection's imported product does not contain all the necessary parts to fully assemble a final finished good at the time of importation and also is not assembled as-is into a finished product. Letter from Wiley Rein LLP to Sec'y Commerce, re: *Aluminum Extrusions from the People's Republic of China: Comments on Reflection Window and Wall, LLC's Scope*

**Court No. 21-00253**

*Ruling Request* (Mar. 31, 2020) ("Plaintiff's Mar. 31, 2020 Letter") at 6-9; Letter from Wiley Rein LLP to Sec'y Commerce, re: *Aluminum Extrusions from the People's Republic of China: Comments on Reflection Window and Wall, LLC's Scope Ruling Request* (July 13, 2020) ("Plaintiff's July 13, 2020 Letter") at 9-15. For instance, Plaintiff explained that window walls are generally assembled, attached, and sealed in the field and can interlock and cover large portions of the exterior of a building. Plaintiff's July 13, 2020 Letter at 11. Plaintiff also noted that Reflection confirmed that its window wall systems do in fact have a continuous enclosure around each individual floor of a building, while the system is designed to allow breakpoints in the façade. *Id.* at 12. Plaintiff also argued that Reflection's products were more like the curtain wall products that Commerce has found to be not excludable as "finished goods kits," because they require further finishing or fabrication as well as additional parts before they could be considered finished, and less like the window wall products examined by Commerce in prior scope proceedings. Plaintiff's Mar. 31, 2020 Letter at 11-15; Plaintiff's July 13, 2020 Letter at 16-17. Plaintiff also explained that Reflection's products could be interchangeable with curtain wall products in construction applications as a means of circumventing the Orders. Plaintiff's July 13, 2020 Letter at 16-17. Plaintiff also explained that while Reflection argued that its products should be excluded from the scope consistent with the Department's past scope rulings on certain window or window wall kits, each scope ruling applies exclusively to the product at issue and in those prior scope rulings, Commerce found the products at issue to meet the requirements of the "finished goods kit" exclusion, not that there is a categorical exclusion in the scope for "window wall systems." *See* Plaintiff's Mar. 31, 2020 Letter at 9-10.

18.   On April 26, 2021, Commerce issued the final scope ruling, holding that four of Reflection's window wall system kits (series RWW-8000, series RWW-9000, series RWW-9500,

7

**Court No. 21-00253**

and series RWW-12000) constitute "finished goods kits" and thus are excluded from the scope of the Orders on aluminum extrusions from China. *See* Scope Ruling at 1. Commerce concluded that each of Reflection's window wall system kits is a packaged combination of parts that contains all parts necessary to assemble window wall systems by the end-users, at the time of importation, and requires no further finishing or fabrication. *Id.* at 20-21. According to Commerce, Reflection's window wall system kits enter the United States on the same 7501 Entry Summary form and are not re-packaged upon entry. *Id.* at 23. Commerce further found that Reflection's window wall systems were unlike curtain wall systems because they "are inserted into the opening between the top of one floor slab and the underside of the next higher floor slab, and do not make up the entirety of the building's façade . . . ." *Id.* at 24 (citations omitted). Commerce did not make a scope ruling on Refection's series RWW-7000 window wall system kit. *Id.* at 19, 25.

19. Commerce emphasized that its ruling was based on the "limitation" that each of Reflection's window wall systems subject to the scope ruling is "designed to fit into the aperture of a wall and not to vertically span a greater distance than from the top of one floor slab to the underside of the next higher floor slab, and such distance is no greater than 15 feet." *Id.* at 24. According to Commerce, this would ensure that a subject window wall system would not be able to "connect with other window wall systems to cover the entirety of a building's façade and compose a type of curtain wall." *Id.*

Court No. 21-00253

## CLAIMS AND BASES FOR RELIEF

### Count I

20. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 19.

21. Insofar as Commerce found in the Scope Ruling that the window wall system kits imported by Reflection constituted "finished goods kits" for purposes of the "finished goods kit" exclusion in the scope of the Orders, the determination is not supported by substantial evidence.

### Count II

22. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 21. Insofar as Commerce found in the Scope Ruling that each of Reflection's window wall system kits is a packaged combination of parts that contains, at the time of importation, all the parts necessary to assemble window wall systems by the end-users in the United States and requires no further finishing or fabrication, the determination is not supported by substantial evidence.

### Count III

23. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 22.

24. In arguing that Reflection's window wall system kits are not assembled as is into a finished product, Plaintiff explained that window walls are generally assembled, attached, and sealed in the field and can interlock and cover large portions of the exterior of a building. Plaintiff also noted that Reflection confirmed that its window wall systems do in fact have a continuous enclosure around each individual floor of a building, while the system is designed to allow breakpoints in the façade. Plaintiff also argued that Reflection's products were more like the curtain wall units that Commerce has found to be not excludable as "finished goods kits," because they require further finishing or fabrication as well as additional parts before they could be considered finished. In the final scope ruling, Commerce did not specifically address Plaintiff's

**Court No. 21-00253**

argument that window wall systems can interlock and cover large portions of the exterior of a building.

26. In the Scope Ruling, Commerce reached a determination that directly conflicts with its established practice in previous scope rulings analyzing the scope of the AD and CVD Orders on aluminum extrusions from China, including, but not limited to, scope rulings on curtain wall units.

26. As Commerce's determination in the Scope Ruling was directly contrary to its previous scope rulings under the same AD and CVD Orders and thus a departure from Commerce's consistent past practice without reasonable explanation, the determination is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

**Court No. 21-00253**

## **REQUEST FOR JUDGMENT AND RELIEF**

For the reasons stated in this Complaint, Plaintiff respectfully requests that the Court:

1) Hold that Commerce's Scope Ruling that Reflection Window + Wall, LLC's window wall system kits are outside the scope of the antidumping duty and countervailing duty orders on *Aluminum Extrusions from the People's Republic of China* is not supported by substantial record evidence and are otherwise not in accordance with law; and

2) Remand this matter to Commerce for disposition consistent with the Court's final opinion.

Respectfully submitted,

/s/ Robert E. DeFrancesco, III
Robert E. DeFrancesco, III, Esq.
Alan H. Price, Esq.
Elizabeth S. Lee, Esq.
Claire M. Webster, Esq.

**WILEY REIN LLP**
1776 K Street, NW
Washington, DC 20006
(202) 719-7000
WileyTrade@wiley.law

*Counsel for Aluminum Extrusions Fair Trade Committee*

Date: June 25, 2021

## **CERTIFICATE OF SERVICE**

PUBLIC SERVICE

### *Aluminum Extrusions Fair Trade Committee v. United States*
### Court No. 21-00253

I certify that a copy of this public submission was served on the following parties, via certified mail and electronic service, on June 25, 2021.

                                                                         */s/ Claire M. Webster*

Robert D. Stang, Esq.
**Husch Blackwell LLP**
750 17th St., NW
Suite 900
Washington, DC 20006

Attorney-in-Charge
**U.S. Department of Justice, Civil Division**
International Trade Field Office
26 Federal Plaza
Room 346, Third Floor
New York, NY 10278

Ann C. Motto, Esq.
**U.S. Department of Justice**
Commercial Litigation Branch - Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

Leslie M. Lewis, Esq.
**U.S. Department of Commerce**
Office of Chief Counsel for Trade
Enforcement and Compliance
14th St. and Constitution Ave., NW
Washington, DC 20230