## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| **ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,**<br><br>                              **Plaintiff,**<br><br>              **v.**<br><br>**UNITED STATES,**<br><br>                       **Defendant,**<br><br>              **and**<br><br>**REFLECTION WINDOW + WALL, LLC,**<br><br>                       **Defendant-Intervenor.** |

**Before:  Hon. Stephen A. Vaden**
               **Judge**

**Court No. 21-00253**

### ORDER

Upon consideration of the Rule 56.2 motion of Plaintiff Aluminum Extrusions Fair Trade Committee ("AEFTC") for judgment on the agency record, and all other pertinent papers and proceedings herein, it is hereby

**ORDERED,** that AEFTC's motion for judgment on the agency record is granted; and it is further

**ORDERED,** that this action is remanded to the U.S. Department of Commerce for proceedings consistent with this Court's opinion.

**SO ORDERED**.

_____
 Hon. Stephen Alexander Vaden, Judge

Dated: _____, 2021
           New York, New York

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,<br><br>                 Plaintiff,<br><br>     v.<br><br>UNITED STATES,<br><br>               Defendant,<br><br>     and<br><br>REFLECTION WINDOW + WALL, LLC,<br><br>            Defendant-Intervenor. | Before:  Hon. Stephen A. Vaden<br>              Judge<br><br>Court No. 21-00253 |

**ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE'S
RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade, Plaintiff Aluminum Extrusions Fair Trade Committee ("AEFTC"), by and through its attorneys, respectfully moves this Court for judgment on the agency record with respect to the U.S. Department of Commerce's ("Commerce") final scope ruling pursuant to the antidumping and countervailing duty orders on Aluminum Extrusions from the People's Republic of China regarding Reflection Window + Wall, LLC's window wall system kits.  Memorandum from Mark Flessner, Senior Int'l Trade Compliance Analyst, Off. VI, AD/CVD Operations, through Dana Mermelstein, Dir., Off. VI, AD/CVD Operations, to James Maeder, Deputy Assistant Sec'y for AD/CVD Operations, re: *Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China: Final Scope Ruling on Reflection Window + Wall, LLC's Window Wall System Kits* (Apr. 26, 2021), Appx01584-01609.

Ct. No. 21-00253

AEFTC respectfully moves, for the reasons explained in the accompanying memorandum, that this Court find that Commerce's final scope ruling was unlawful and unsupported by substantial evidence.   AEFTC further moves that the Court remand this determination to Commerce for disposition consistent with the Court's opinion in this matter.

Respectfully submitted,

*/s/ Robert E. DeFrancesco, III*
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Elizabeth S. Lee, Esq.
Claire M. Webster, Esq.

**WILEY REIN LLP**
1776 K Street, NW
Washington, DC 20006
(202) 719-7000

*Counsel for Aluminum Extrusions Fair Trade Committee*

Dated: November 23, 2021

NON-CONFIDENTIAL VERSION

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

ALUMINUM EXTRUSIONS FAIR TRADE
COMMITTEE,

                              Plaintiff,

            v.

UNITED STATES,

                              Defendant,

            and

REFLECTION WINDOW + WALL, LLC,

                              Defendant-Intervenor.

Before:  Hon. Stephen A. Vaden
              Judge

Court No. 21-00253

NON-CONFIDENTIAL VERSION

Business  Proprietary  Information
Removed from Pages: 2, 17-20, 26

## ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE'S MEMORANDUM IN SUPPORT OF RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Elizabeth S. Lee, Esq.
Claire M. Webster, Esq.

WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
(202) 719-7000

*Counsel for Aluminum Extrusions Fair
Trade Committee*

Dated:  November 23, 2021

## <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION ................................................................................ 1

II.   RULE 56.2 STATEMENT ................................................................... 1

      A.    Administrative Decision Under Review .................................... 1

      B.    Issues Presented and Summary of Argument ........................... 1

III.  STATEMENT OF FACTS ................................................................... 2

IV.   STANDARD OF REVIEW .................................................................. 7

V.    ARGUMENT ...................................................................................... 9

      A.    Commerce Erred in Concluding that Reflection's Window Wall
            System Kits Constitute "Finished Goods Kit" Excluded from the
            Scope of the Orders ................................................................ 10

            1.    Commerce's Determination that Reflection's Imported
                  Products Meet the "Finished Goods Kits" Exclusion
                  Requirements is Unsupported by Substantial Evidence ........... 10

            2.    Commerce Failed to Address the Issue With Respect to the
                  Question of Whether Reflection's Imported Products
                  Include All Necessary Parts ................................................. 19

      B.    Commerce's Determination Directly Conflicts with its Established
            Practice in Prior Scope Rulings Under the Same Orders .................... 20

            1.    Commerce and the Courts Have Confirmed that in the
                  Context of these Orders the Relevant Final Finished Good is
                  the Complete Curtain Wall, not the Smaller Curtain Wall
                  Units ............................................................................... 21

            2.    Reflection's Imports of Window Wall System Components
                  Fail to Meet the "Finished Goods Kit" Exclusion
                  Requirements for the Same Reasons as Curtain Wall Units ..... 24

VI.   CONCLUSION .................................................................................. 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allegheny Bradford Corp. v. United States*,
    28 CIT 830, 342 F. Supp.2d 1172 (2004) ...................................................9

*Altx, Inc. v. United States*,
    25 CIT 1100, 167 F. Supp. 2d 1353 (2001), *aff'd*, 370 F.3d ..................18

*Altx, Inc. v. United States*,
    370 F.3d 1108 (Fed. Cir. 2004) .................................................................7

*Baroque Timber Indus. (Zhongshan) Co. v. United States*,
    971 F. Supp. 2d 1333 (Ct. Int'l Trade 2014) ......................................8, 13

*Consol. Bearings Co. v. United States*,
    348 F.3d 997 (Fed. Cir. 2003) ...................................................................9

*Consolo v. Fed. Mar. Comm'n*,
    383 U.S. 607 (1966) ...................................................................................8

*CS Wind Vietnam Co. v. United States*,
    832 F.3d 1367 (Fed. Cir. 2016) .........................................................8, 18

*Eckstrom Indus., Inc. v. United States*,
    254 F.3d 1068 (Fed. Cir. 2001) .................................................................8

*Fujitsu Gen. Ltd. v. United States*,
    88 F.3d 1034 (Fed. Cir. 1996) ...................................................................7

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) .........................................................................8, 16, 19

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345 (Fed. Cir. 2006) .................................................................8

*Russ Berrie & Co., Inc. v. United States*,
    23 CIT 429, 57 F. Supp. 2d 1184 (1999) .................................................10

*Shanghai Foreign Trade Enters. Co. v. United States*,
    28 CIT 480, 318 F. Supp. 2d 1339 (2004) ..........................................8, 13

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*,
    146 F. Supp. 3d 1331 (Ct. Int'l Trade 2016) ...........................................28

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*,
    181 F. Supp. 3d 1348 (Ct. Int'l Trade 2016) ..........................................28

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*,
    279 F. Supp. 3d 1209 (Ct. Int'l Trade 2017) ..........................................23

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*,
    776 F.3d 1351 (Fed. Cir. 2015).................................................................21, 22

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*,
    918 F.3d 1355 (Fed. Cir. 2019).................................................................. *passim*

*SKF USA, Inc. v. United States*,
    263 F.3d 1369 (Fed. Cir. 2001)..................................................................9

*Walgreen Co. of Deerfield, Ill. v. United States*,
    620 F.3d 1350 (Fed. Cir. 2010)..................................................................13

*WelCom Prods., Inc. v. United States*,
    36 CIT 1336, 865 F. Supp. 2d 1340 (2012) ..............................................9

*Yantai Oriental Juice Co. v. United States*,
    26 CIT 605 (2002) ......................................................................................8

**Statutes**

19 U.S.C. § 1516a(a)(2)(B)(vi)....................................................................7

**Regulations**

19 C.F.R. § 351.225(k)(1)............................................................................7

19 C.F.R. § 351.225(k)(2) ...........................................................................7

**Administrative Materials**

*Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 30,650
    (Dep't Commerce May 26, 2011) ...............................................................1, 2, 4, 11

*Aluminum Extrusions From the People's Republic of China*, 76 Fed. Reg. 30,653
    (Dep't Commerce May 26, 2011)................................................................1, 2, 4, 11

# I.     INTRODUCTION

On behalf of Plaintiff Aluminum Extrusions Fair Trade Committee ("AEFTC"), we respectfully submit the following brief in support of AEFTC's Rule 56.2 motion for judgment on the agency record.

# II.    RULE 56.2 STATEMENT

## A.     Administrative Decision Under Review

The administrative determination challenged in this case is the U.S. Department of Commerce's ("Commerce") final scope ruling pursuant to the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China (the "Orders") regarding Reflection Window + Wall, LLC's ("Reflection") window wall system kits.  *See* Appx01584-01609; *see also Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 30,650 (Dep't Commerce May 26, 2011) (antidumping duty order) ("AD Order"); *Aluminum Extrusions From the People's Republic of China*, 76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011) (countervailing duty order) ("CVD Order") (collectively, "the Orders").

## B.     Issues Presented and Summary of Argument

### 1.     Whether Commerce's Determination That Reflection's Window Wall System Kits Constitute "Finished Goods Kits" Excluded from the Scope of the Orders is Unsupported by Substantial Evidence?

Yes.  While Commerce correctly found that Reflection's imported products are covered by the general scope language of the Orders, the agency erred in concluding that Reflection's products meet the requirements of the narrow exclusion in the scope for "finished goods kits."  Commerce's determination that each of Reflection's window wall system kits is a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble window wall systems and require no further finishing or fabrication is unsupported by substantial evidence. AEFTC provided information indicating that the opposite was true – that Reflection's products are

BUSINESS PROPRIETARY INFORMATION HAS BEEN DELETED    NON-CONFIDENTIAL VERSION

likely not ready to be assembled as is and inserted into a building, and instead the window wall system components need to be attached to other components, including other window wall units, to be installed.  In addition, AEFTC argued that Reflection's products would fail to meet the "finished goods kit" exclusion requirements because [                    ].  AEFTC also provided additional information indicating that Reflection's imported products do not contain all necessary parts at the time of importation to fully assemble a final finished good.  Commerce failed to consider this material record evidence and the arguments made by AEFTC.  Furthermore, the agency failed to provide an adequate explanation for its determination, largely relying on Reflection's circular, unsubstantiated statements, and the limited explanation that the agency did provide was flawed.

> ### 2.    Whether Commerce's Determination Directly Conflicts with its Established Practice in Prior Scope Rulings Under the Same Orders?

Yes.  In the final scope ruling, Commerce reached a determination that directly conflicts with its established practice in prior scope rulings under these Orders.  Commerce failed to address the crux of AEFTC's argument – that Reflection's imports of window wall system components are more like the imports of curtain wall units that the agency and the courts have confirmed cannot be excluded as "finished goods kits" than the window wall products that Commerce has examined in prior scope rulings – where the issue was not as well considered as in the proceeding at issue. The agency failed to provide a reasonable explanation for its decision, and its determination was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

## III.    STATEMENT OF FACTS

On May 26, 2011, Commerce issued antidumping and countervailing duty orders on aluminum extrusions from China.  *See* AD Order, 76 Fed. Reg. at 30,650; CVD Order, 76 Fed. Reg. at 30,653.  The scope of the Orders reads, in relevant part:

The merchandise covered by the order is aluminum extrusions which are shapes and forms, produced by an extrusion process, made from aluminum alloys having metallic elements corresponding to the alloy series designations published by The Aluminum Association commencing with the numbers 1, 3, and 6 . . . Aluminum extrusions are produced and imported in a wide variety of shapes and forms, including, but not limited to, hollow profiles, other solid profiles, pipes, tubes, bars, and rods. Aluminum extrusions that are drawn subsequent to extrusion ("drawn aluminum") are also included in the scope.

Aluminum extrusions are produced and imported with a variety of finishes (both coatings and surface treatments), and types of fabrication. The types of coatings and treatments applied to subject aluminum extrusions include, but are not limited to, extrusions that are mill finished (*i.e.*, without any coating or further finishing), brushed, buffed, polished, anodized (including bright-dip anodized), liquid painted, or powder coated. Aluminum extrusions may also be fabricated, *i.e.*, prepared for assembly. Such operations would include, but are not limited to, extrusions that are cut-to-length, machined, drilled, punched, notched, bent, stretched, knurled, swedged, mitered, chamfered, threaded, and spun. The subject merchandise includes aluminum extrusions that are finished (coated, painted, *etc.*), fabricated, or any combination thereof.

Subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to, window frames, door frames, solar panels, curtain walls, or furniture. Such parts that otherwise meet the definition of aluminum extrusions are included in the scope. The scope includes the aluminum extrusion components that are attached (*e.g.*, by welding or fasteners) to form subassemblies, *i.e.*, partially assembled merchandise unless imported as part of the finished goods 'kit' defined further below. The scope does not include the non-aluminum extrusion components of subassemblies or subject kits.

Subject extrusions may be identified with reference to their end use, such as fence posts, electrical conduits, door thresholds, carpet trim, or heat sinks (that do not meet the finished heat sink exclusionary language below). Such goods are subject merchandise if they otherwise meet the scope definition, regardless of whether they are ready for use at the time of importation.

    . . . .

The scope also excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels. The scope also excludes finished goods containing aluminum extrusions that are entered unassembled in a "finished goods kit." A finished goods kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such

> as cutting or punching, and is assembled "as is" into a finished product. An imported product will not be considered a "finished goods kit" and therefore excluded from the scope of the investigation merely by including fasteners such as screws, bolts, *etc.* in the packaging with an aluminum extrusion product . . . .

AD Order, 76 Fed. Reg. at 30,650-51; CVD Order, 76 Fed. Reg. at 30,653-54.

On August 7, 2019, Reflection filed a request for a scope ruling on its window wall system kits. *See* Appx01584. Reflection explained that it is "an architectural building enclosure company specializing in the engineering, pre-construction, and project management of façade construction." *See* Appx01001. Regarding window wall systems generally, Reflection explained that a window wall system is a non-load bearing fenestration system provided in combination assemblies and composite units, including transparent vision panels and/or opaque glass or metal panels, which span from the top of a floor slab to the underside of the next higher floor slab. *See* Appx01001-01002. Regarding its specific products, Reflection explained that it designs, imports, and distributes fully complete custom-designed window wall systems, with each system unique to the size, dimensions, and modulation of a particular project. *See* Appx01001. The company explained that it creates detailed drawings that include individual window component schedules, performance criteria, floor plans, elevations, partial elevations, main vertical sections, sizes, colors, and horizontal and vertical detail section cuts, which are all provided to the foreign manufacturer to produce unique custom designed window wall systems. *See id.*

With regard to its imported products, Reflection described them as customized and completed window wall systems kits, claiming that each kit incorporates a number of "primary components" and, depending on the exact project, a number of "accessory components" necessary to install the completed window wall system at the project site. Appx01002. The primary components – each of which incorporates an aluminum extrusion part – are window panels, head

receptors, sill receptors, jamb receptors, and slab covers.[1]  *Id.*, Appx80005 (Appx01115).

Reflection explained that the accessory components may include mullions and mullion parts,

glazing bead, insulating materials, jamb receptors, corner posts, FIN assemblies, various

connectors (screws, snaps, *etc.*) and various hardware.  Appx01002-01003.

Reflection provided further detail on each of the primary components.  In particular,

Reflection noted that each component has a singular identification mark for a specific location in

the building, including a reference to floor location and individual sequence number on that floor.

Appx01003-01005.  Reflection explained that after production, the window wall system

components are arranged for shipment in determined batches, delivered to a designated warehouse

in the location where the project is based, and subsequently moved from the U.S. warehouse to the

project site in accordance with the construction schedule. *See* Appx01006.

It became clear in Reflection's later submissions that what Reflection was calling an

individual window wall system, and a finished product, was not the complete window wall system

for the building.  Rather, Reflection claimed that individual packages consisting of a select number

of primary and accessory components each constituted a final finished good.  *See* Appx80003-

80004 (Appx01113-01114), Appx01189-01190.  As an example, Reflection identified as an

individual kit "Package 950-F2-R-27-P-1" associated with one of the Customs entry packages that

it submitted.  Appx01189; *see* Appx01188.  Reflection explained that the "950" is a project code

---

[1]     In its initial scope ruling request, Reflection stated that each window wall system kit
contained four primary components – window panels, head receptors, sill receptors, and slab
covers.  Appx01002.  In its January 9, 2020 resubmission, Reflection added an additional primary
component – jamb receptors – but noted that not all window wall systems include jamb receptors.
*See* Appx80005 (Appx01115).  In addition, in its initial request, Reflection stated that slab covers
were a primary component, Appx01002, but in its resubmission, claimed that depending on the
particular window wall design, slab covers may or may not be part of the particular system, and as
such, may or may not be included in a shipment.  Appx80005-80006 (Appx01115-01116).

indicating that this "kit" is specific to the "950 M GFRC Factory" project, that "F2" is the specific floor on which it will be installed, and that "R-27-P-1" identifies the crate sequence for the "kits" intended for the second floor of this building.  Appx01189-01190.  In other words, what Reflection was calling an individual window wall system, and a finished product, was a package of window wall system components for a portion of one floor of an entire building.

Reflection resubmitted its scope ruling request on January 9, 2020, March 16, 2020, and May 11, 2020 with additional information, respectively, pursuant to Commerce's rejections and requests for additional information.  *See* Appx01585.  In its March 16, 2020 resubmission, Reflection stated for the first time that it was requesting a scope ruling on multiple series of its products, *see* Appx01190, and in its May 11, 2020 resubmission, Reflection specified five of its series – RWW-8000; RWW-9000; RWW-9500; RWW-12000; and RWW-7000.  *See* Appx80146 (Appx01301).

AEFTC submitted comments on Reflection's scope ruling request on March 31, 2020 and July 13, 2020.  *See* Appx01585.  AEFTC argued that Reflection's imported products cannot be excluded from the scope of the Orders.  AEFTC explained that Reflection's window wall system kits contain aluminum extrusions that match the physical description of subject merchandise and are covered by the general scope language.   Appx80089-80091  (Appx01223-01225).  Furthermore, AEFTC argued that Reflection's imported window wall system components do not meet the requirements of the "finished goods kit" exclusion because the imported products do not contain all of the necessary parts to fully assemble a final finished good at the time of importation and are not assembled as is into finished products.  *See* Appx80357-80363 (Appx01486-1492), Appx80092-80094 (Appx01226-01228).   AEFTC also argued that Reflection's products are similar to the curtain wall units that Commerce has found to be not excludable as "finished goods

kits," and fail to meet the exclusion requirements in the same manner.  *See* Appx80364-80365 (Appx01493-01494).  Appx80097-80101 (Appx01231-01235).  On April 9, 2020 and July 22, 2020, Reflection filed rebuttals to AEFTC's comments.  *See* Appx01585.

On April 26, 2021, Commerce issued its final scope ruling, finding that four of Reflection's window wall system kits (series RWW-8000, series RWW-9000, series RWW-9500, and series RWW-12000) meet the "finished goods kit" exclusion requirements.  Appx01602.  The agency declined to make a determination with respect to Reflection's series RWW-7000 window wall system because the product is in the design phase and not yet in commercial production, consistent with the agency's practice to issue a scope ruling or conduct a scope inquiry when the requesting party can show that the specific product in question is actually in production.  Appx01602, Appx01608.  Commerce found the description of the product, the scope language, and prior rulings, together, to be dispositive, in accordance with 19 C.F.R. § 351.225(k)(1), and thus, found it unnecessary to consider the additional factors in 19 C.F.R. § 351.225(k)(2).  Appx01602.

This appeal followed.

## IV.   <u>STANDARD OF REVIEW</u>

The Court may review a determination by Commerce "as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order."  19 U.S.C. § 1516a(a)(2)(B)(vi).  When reviewing a scope ruling, the Court will overturn "any determination, finding or conclusion found" by Commerce where "unsupported by substantial evidence on the record, or otherwise not in accordance with the law."  *See Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)).  Substantial evidence is "'more than a mere scintilla'" of supportive record information.  *See Altx, Inc. v. United States*, 370 F.3d 1108, 1116 (Fed. Cir.

2004) (quoting *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)).  Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (quotations and citation

omitted).  The standard of review requires the agency to take into account "whatever in the record

fairly detracts" from the evidence adduced in support of the agency's conclusion.  *CS Wind*

*Vietnam Co. v. United States*, 832 F.3d 1367, 1373 (Fed. Cir. 2016) (citing *Gerald Metals, Inc. v.*

*United States*, 132 F.3d 716, 720 (Fed. Cir. 1997)).  In addition, the substantial evidence standard

requires that the agency grapple with all "important aspect{s} of the problem" before it, *Motor*

*Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), and

also that the agency "provide a 'rational connection between the facts found and the choice made'"

and "'articulate a satisfactory explanation for its action.'"  *Baroque Timber Indus. (Zhongshan)*

*Co. v. United States*, 971 F. Supp. 2d 1333, 1339-40 (Ct. Int'l Trade 2014) (quoting *Burlington*

*Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) and *Yangzhou Bestpak Gifts & Crafts*

*Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013)).  Thus, an agency must do more than

offer conclusory statements of its findings.  *See, e.g.*, *Shanghai Foreign Trade Enters. Co. v.*

*United States*, 28 CIT 480, 488, 318 F. Supp. 2d 1339, 1346 (2004) (rejecting conclusory agency

explanation as inconsistent with the substantial evidence standard); *Yantai Oriental Juice Co. v.*

*United States*, 26 CIT 605, 611 (2002) (same).  Overall, an agency's decision is only supported by

substantial record evidence if it is reasonable.  *See Nippon Steel Corp. v. United States*, 458 F.3d

1345, 1351 (Fed. Cir. 2006).

    While the Court grants significant deference to Commerce's scope rulings, "Commerce

cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce

interpret an order in a manner contrary to its terms."  *Eckstrom Indus., Inc. v. United States*, 254

F.3d 1068, 1072 (Fed. Cir. 2001).  "{A} scope determination is not in accordance with the law if it changes the scope of an order or interprets an order in a manner contrary to the order's terms." *Allegheny Bradford Corp. v. United States*, 28 CIT 830, 842 n.6, 342 F. Supp.2d 1172, 1183 (2004).

Finally, "an agency action is arbitrary when the agency offer{s} insufficient reasons for treating similar situations differently." *SKF USA, Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (quoting *Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996)) (internal quotation marks omitted).  If Commerce provides "no reasonable explanation" for changing a practice that it has "consistently followed," such a change is unacceptable agency practice.  *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1007 (Fed. Cir. 2003).  *See also WelCom Prods., Inc. v. United States*, 36 CIT 1336, 1341, 865 F. Supp. 2d 1340, 1344 (2012).

## V.    **ARGUMENT**

Commerce's final scope ruling finding Reflection's window wall system kits to be excluded from the scope of the Orders as "finished goods kits" is unsupported by substantial evidence.  In addition, Commerce's determination directly conflicts with its established practice in prior scope rulings under the Orders.  The agency failed to provide a reasonable explanation for its decision and, thus, is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.  Each scope ruling stands on its own, with Commerce making a determination based on the facts on the record of each case.  In this case, a large amount of evidence was placed on the record that showed that (1) Reflection's imported products could not be assembled as is into finished products, as required by the "finished goods kit" exclusion, and (2) that Reflection's window walls act much more like curtain walls than windows, and that for the same reasons that Commerce and the courts have found imports of curtain wall units not

excludable as "finished goods kits," the imports of window wall system components at issue also do not meet the requirements of the exclusion.  Commerce failed to address the material record evidence and largely ignored or mischaracterized AEFTC's arguments.  Instead, Commerce erroneously relied on Reflection's conclusory statements without support.  Commerce's final scope ruling failed to grapple with this evidence and, as such, cannot be supported by substantial evidence.

### A.    Commerce Erred in Concluding that Reflection's Window Wall System Kits Constitute "Finished Goods Kit" Excluded from the Scope of the Orders

Commerce correctly found that Reflection's imported products are covered by the general scope language.  *See* Appx01603.  Thus, they may be excluded only if they meet one of the narrow exclusions to the general scope.  This Court has held that "{s}ince the antidumping law and antidumping duty orders are remedial in nature, exceptions to them should be construed narrowly and limited to effect the remedy intended."  *Russ Berrie & Co., Inc. v. United States*, 23 CIT 429, 440, 57 F. Supp. 2d 1184, 1195 (1999).  As discussed below, Commerce erred in concluding that Reflection's imported products can be excluded from the scope of the Orders as "finished goods kits."

### 1.    Commerce's Determination that Reflection's Imported Products Meet the "Finished Goods Kits" Exclusion Requirements is Unsupported by Substantial Evidence

Commerce's determination that Reflection's imports of window wall system components constitute a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication and is assembled as is into a finished product is unsupported by substantial evidence. The agency failed to provide an adequate explanation for its decision.  Instead, Commerce provided circular reasoning largely based on Reflection's conclusory statements and also

erroneously relied on certain information provided by Reflection.  In addition, Commerce failed

to address material record evidence and AEFTC's arguments indicating that Reflection's imported

products do not meet the "finished goods kit" exclusion requirements.  In doing so, the agency

failed to consider evidence that fairly detracts from its conclusion and also failed to grapple with

all important aspects of the problem.  These errors render the agency's determination inconsistent

with the standard of review.

The scope of the Orders has a narrow exclusion for "finished goods containing aluminum

extrusions that are entered unassembled in a 'finished goods kit.'"  *See* AD Order, 76 Fed. Reg. at

30,651; CVD Order, 76 Fed. Reg. at 30,654.

> A finished goods kit is understood to mean a packaged combination of parts that
> contains, at the time of importation, all of the necessary parts to fully assemble a
> final finished good and requires no further finishing or fabrication, such as cutting
> or punching, and is assembled "as is" into a finished product.  An imported product
> will not be considered a "finished goods kit" and therefore excluded from the scope
> of the {Orders} merely by including fasteners such as screws, bolts, *etc.* in the
> packaging with an aluminum extrusion product.

AD Order, 76 Fed. Reg. at 30,651; CVD Order, 76 Fed. Reg. at 30,654.

As the plain scope language requires, and as Commerce has confirmed in numerous prior

scope rulings, the "finished goods kits" exclusion requirements are not met if in order to fully

assemble a final finished good, additional material must be added to the imported components, or

further finishing or fabrication is required after importation.[2]  *See, e.g.*, *Shenyang Yuanda*

*Aluminum Indus. Eng'g Co. v. United States*, 918 F.3d 1355, 1367 (Fed. Cir. 2019) ("*Yuanda*

*2019*").  In addition, while Commerce has previously determined that the fact that a product may

enter the United States in separate containers does not, in and of itself, constitute a basis on which

to find that the "finished goods kit" exclusion requirements are not met, the merchandise must be

---

[2]         These are necessary, but not the only, requirements of the "finished goods kit" exclusion.

reported on one 7501 Entry Summary. *See, e.g.*, Appx01605-01606. The U.S. Court of Appeals for the Federal Circuit (the "Federal Circuit") has also affirmed that "{e}ntering merchandise is not a 'finished goods kit' unless it is a 'packaged combination' of the required components at the time of importation," explaining that this requirement "focuses only on the physical contents of the 'packaged combination' at a particular time, not on contractual obligations that might link one 'packaged combination' to another, later-entering one." *See Yuanda 2019*, 918 F.3d at 1367.

The agency's explanation for its finding that Reflection's imported products meet the "finished goods kits" exclusion requirements was limited and conclusory. For instance, Commerce stated:

> We find that the evidence on the record shows that each of Reflection's window wall system kits is a packaged combination of parts that contains, at the time of importation, all the parts necessary to assemble window wall systems by the end-users in the United States and requires no further finishing or fabrication. Information in the Scope Request and supplemental responses (*e.g.*, narrative statements, product instructions, packing lists, entry summaries, photographs, and schematics) indicates that Reflection's window wall system kits contain all of the parts necessary for the end-user to fully assemble the window wall system, are fully fabricated, and require no further finishing or fabrication prior to being assembled.

Appx01603-01604 (internal citations omitted). The agency also concluded that Reflection's window wall system kits' carton and crates enter the United States under the same 7501 entry summary form, and also satisfy the "finished goods kit" exclusion requirements in this regard. *See* Appx01606.

Commerce did not explain how the information referenced in its explanation above demonstrated that Reflection's imported products met the referenced "finished goods kit" exclusion requirements, *i.e.*, that all of the parts necessary for the end-user to fully assemble the window wall system are included, are fully fabricated, and require no further finishing or fabrication prior to being assembled. *See* Appx01603-01604. In fact, Commerce did not even

explain what it was defining as the "window wall system," *i.e.*, the alleged final finished good. *See* Appx01603-01604. The agency's determination plainly "lacks such relevant evidence as a reasonable mind would accept as adequate to support the conclusion reached," *Walgreen Co. of Deerfield, Ill. v. United States*, 620 F.3d 1350, 1354 (Fed. Cir. 2010) (internal quotations omitted). Commerce simply offered conclusory statements of its findings, *see Shanghai Foreign Trade*, 28 CIT at 488, 318 F.Supp. 2d at 1346, and failed to articulate a satisfactory explanation for its action. *Baroque Timber*, 971 F. Supp. 2d at 1339-40 (quoting *Burlington Truck*, 371 U.S. at 168 and *Yangzhou Bestpak*, 716 F.3d at 1378).

In addition, the limited information that Commerce did cite does not actually support its conclusion, further rendering the agency's determination unsupported by substantial evidence. Specifically, Commerce referenced "narrative statements, product instructions, packing lists, entry summaries, photographs, and schematics" in concluding that Reflection's window wall system kits meet the "finished goods kits" exclusion requirements, citing Reflection's May 11, 2020 submission at page 3. *See* Appx01603-01604. This page makes no reference to product instructions, packing lists, entry summaries, photographs, or schematics. Appx80145 (Appx01300). The narrative statement that Commerce relied on appears to be the following:

> As imported, Reflection Window's window wall systems are shipped as a 'finished goods kit;' that is, 'a packaged combination of parts' that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled 'as is' into a finished product.

*Id.* This is merely a refutation of the existing standard with no evidence to support such a conclusion. Reflection largely relied on similar circular statements throughout the proceeding, instead of submitting documentary evidence, such as schematics for the specific building projects associated with the imported products or installation instructions, that clearly detail the installation

13

process and identify all required parts and materials, that would have allowed Commerce to evaluate whether or not any further finishing or fabrication is required or supplementary parts or materials are needed to assemble the final finished good. This is information that Reflection as the end-user should have. *See* Appx01606. As the party requesting a scope exclusion, Reflection had the burden of providing adequate evidence to substantiate its claims but failed to do so. Commerce's reliance on Reflection's conclusory statements renders the agency's determination unsupported by substantial evidence.

With respect to the other information that Commerce allegedly relied on, AEFTC is left to guess what information the agency was actually referencing. While Reflection submitted entry documents with 7501 forms, commercial invoices, packing lists, and bills of lading, *see* Appx01188, Appx80022-80063 (Appx01132-01134), these documents, by definition, would only reflect what is imported, and thus, cannot demonstrate that what is imported is all that is needed to actually assemble the final finished good at the project site, without further finishing or fabrication or additional parts or materials. In other words, Reflection effectively argued that its products as imported, as reflected in its entry documentation, were assembled as is into finished products because the entry documentation showed that everything that Reflection imported was included in those imports. *See* Appx80128 (Appx01264). The flawed nature of Reflection's reasoning should be obvious. Commerce's apparent categorical reliance on these documents is circular and, thus, flawed.

Similarly, while Reflection submitted technical literature for its four series of window wall systems generally, these drawings do not provide a complete list of the necessary parts and materials or a description of the assembly or installation process for these products. *See* Appx01190, Appx01193-01211, Appx80275-80348 (Appx01398-1471). Thus, Commerce could

not confirm that no further finishing or fabrication or additional parts or materials are required to assemble Reflection's imported products into finished products based on these drawings. Moreover, as Reflection indicated, these drawings are for its window wall systems generally, and the window wall systems at issue in its scope ruling request were custom designed and manufactured. *See* Appx01190. The appropriate drawings to rely on would have been the actual schematics and details of the building projects associated with the imported products at issue in Reflection's scope ruling request, which Reflection did not submit and Commerce did not consider. If anything, the submitted drawings demonstrate that the relevant final finished good is the entire window wall system for Reflection's RWW-8000 series, RWW-9000 series, RWW-9500 series, and RWW-12000 series, not a smaller collection of components for such window wall systems.

With regard to the photographs, Reflection provided three categories of photographs: (1) select photographs of certain window wall units, *see* Appx01027-1031; (2) select photographs of some of the primary components in its window wall systems, *see* Appx01032-01054, Appx80064-80072 (Appx01339-01347); and (3) select photographs of packed and shrink-wrapped crates allegedly containing its imported window wall system components in warehouses. *See* Appx01055-01059. Appx80073-80078 (Appx01348-01353). None of these photographs provide any evidence of how Reflection's products are assembled or installed, or a complete list of parts and materials needed for such processes, and, thus, do not provide evidence that Reflection's products are assembled as is into a final finished good. Lastly, AEFTC is unaware of what Commerce was referencing as "product instructions." As discussed above, Reflection did not submit any installation instructions for the specific building projects associated with its imported products. In sum, the information that Commerce claims to have relied on did not actually

demonstrate that the "finished goods kit" exclusion requirements were met, contrary to the agency's assertion.  Commerce plainly failed to make a "rational connection between the facts found and the choice made." *See Motor Vehicle Mfrs.*, 463 U.S. at 43 (quoting *Burlington Truck*, 371 U.S. at 168).

Lastly, Commerce's determination is unsupported by substantial evidence because the agency disregarded the substantial amount of information that AEFTC highlighted (including information submitted by AEFTC and information that Reflection itself submitted) indicating that Reflection's imported products cannot be assembled as is into finished products.  AEFTC provided information indicating that the opposite was true – that Reflection's products are not ready to be assembled as is and inserted into a building, and instead the window wall system components need to be attached to other components, including other window wall units, to be installed.

For instance, AEFTC explained that window walls are generally assembled, attached, and sealed in the field, and require numerous parts for this process.  Appx80093 (Appx01227), Appx80120 (Appx01250).  Window walls can interlock and cover large portions of the exterior of the building.  Appx80094 (Appx01228), Appx80120 (Appx01250).  Reflection also confirmed that its window wall systems have a continuous enclosure around each individual floor of a building, while the system is designed to allow breakpoints in the façade.  *See* Appx80142 (Appx01277).  Each window unit is dependent on the next for structure and weathering. Appx80094 (Appx01228), Appx80120 (Appx01250).  One unit depends on the next unit and slab cover to be watertight.  *Id.*

In fact, Reflection consistently stated and demonstrated throughout the proceeding that its window wall systems include detailed sequencing to ensure that each section and component of its window wall systems is installed in the proper order.  *See* Appx80360 (Appx01489).  Reflection

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

explained that it imports its products in crates, which are inventoried based on a crate identification mark identifying the project, building floor, and floor sequence for the components in the crate, and that these crates are moved from the U.S. warehouse to the project site in accordance with the construction schedule and moved to specific floors for installation. *See* Appx80010 (Appx01120). The pictures of the crates in Reflection's warehouse shows that the window wall components are held in crates with like parts together, again with a mark identifying the project, floor, and floor sequence. Reflection also explained that each of its window wall system components (panels; head receptors and sill receptors; side jamb receptors; and slab covers) have a singular identification mark for a specific location in the building, including a reference to floor location and individual sequence number on that floor. Appx80006-80009 (Appx01116-01119). AEFTC argued that this demonstrates that there is no other sequence in which Reflection's window wall components can be installed. Appx80360 (Appx01489). Each package is designed to fit in one particular location in a building and is therefore reliant on the window wall units and other structures of a project to its left and right. *Id.* Commerce did not respond to these arguments demonstrating that Reflection's imported products are not assembled as is into finished products. *See* Appx01603-01604.

Commerce also did not address AEFTC's argument that Reflection's products would fail to meet the "finished goods kit" exclusion requirements because [

]. *See* Appx80362 (Appx01491). Reflection submitted three sets of entry documents to Commerce, claiming that each individual package number in the packing lists included with each entry constitutes an individual window wall system. *See* Appx80003-80004 (Appx01113-01114). Reflection also explained that the packing lists and entry documents that it provided with its scope ruling request involve the company's [                                        ], *i.e.*, [                              ].

**BUSINESS PROPRIETARY INFORMATION**
**HAS BEEN DELETED**

Appx80129 (Appx01265).  In other words, Reflection [

].  Rather, [


].[3]  *See* Appx80022-80063 (Appx01132-01134).  AEFTC is unaware of whether

Reflection [                                                                                    ].

Thus, AEFTC argued that the individual packages [

], and  [                                          ].   Appx80363,

(Appx01492).

In failing to address AEFTC's arguments and the material record evidence indicating that

Reflection's imported products do not meet the "finished goods kit" exclusion requirements, the

agency failed to take into account "whatever in the record fairly detracts" from the evidence

adduced in support of its conclusion, further rendering Commerce's determination unsupported by

substantial evidence.  *CS Wind Vietnam*, 832 F.3d at 1373; *see also Altx, Inc. v. United States*, 25

CIT 1100, 1117-18, 167 F. Supp. 2d 1353, 1374 (2001) (holding that an agency must address

significant arguments and evidence that seriously undermine its reasoning and conclusions), *aff'd*,

370 F.3d at 1116.

---

[3]      The [                                ] included with [

]" and the [                                ] included with [

]."  Appx80024, Appx80045,

Appx80056 (Appx01134).   However, Reflection itself explained that [

].  Appx80129 (Appx01265).  In

addition,  [

]."  Appx80023, Appx80044, Appx80055 (Appx01134).

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED     NON-CONFIDENTIAL VERSION

### 2. Commerce Failed to Address the Issue With Respect to the Question of Whether Reflection's Imported Products Include All Necessary Parts

In addition to the issues noted above, Commerce failed to address the issue at hand specifically in responding to AEFTC's argument that Reflection's imported products are missing slab covers – which Reflection identified as one of the primary components in window wall systems. *See* Appx01604-01605; *see also* Appx80092-80093 (Appx01226-01227), Appx80357-80359 (Appx01486-01488).

In response, Commerce only stated that it is incumbent upon Reflection to define its products with specificity, and that this ruling applies to the Reflection's four series of window wall systems as defined, *i.e.*, all with slab covers. *See* Appx01604-01605. AEFTC understands this to mean that any of Reflection's imports that do not include slab covers are subject to antidumping/countervailing duties. But Commerce failed to address AEFTC's fundamental argument – that Reflection's imported products do not contain all necessary parts at the time of importation to fully assemble a final finished good as is, one of the requirements of the "finished goods kit" exclusion. Commerce failed to acknowledge this and did not grapple with all "important aspect{s} of the problem" before it, and, thus, failed to meet the substantial evidence standard. *Motor Vehicle M,frs.*, 463 U.S. at 43.

Notably, in response to AEFTC's arguments, Reflection had argued that the packing lists and entry documents that it provided involved the company's [                    ] and that the window wall system for this project does not include slab covers, and that [



]. *See* Appx80129-80130 (Appx01265-01266). Thus, Reflection claimed that slab covers were not required for this project. *See* Appx80130 (Appx01266). The packing lists

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

and entry documents that Reflection provided, [

        ].  *See* Appx80022-80063 (Appx01132-01134).  Nor do they [

                                                        ].  *See*

*id.*  In confirming that [




        ].  *See* Appx80359 (Appx01488).  Commerce failed to respond to these arguments,

further rendering its determination unsupported by substantial evidence.

### B.    <u>Commerce's Determination Directly Conflicts with its Established Practice in Prior Scope Rulings Under the Same Orders</u>

        Reflection's imported products are similar to the curtain wall units that Commerce has

previously found to be within the scope of the Orders and not excludable as "finished goods kits,"

as upheld by the courts.  For the same reasons, Reflection's imports of window wall system

components fail to meet the "finished goods kit" exclusion requirements.  *See* Appx80364-80365

(Appx01493-01494),   Appx80097-80101   (Appx01231-01235).   Commerce's   conclusion

notwithstanding that Reflection's products can be excluded as "finished goods kits" was a

departure from the agency's past practice.  Furthermore, Commerce failed to provide a reasonable

explanation for its decision, ignoring or mischaracterizing AEFTC's arguments in this regard.  As

such, the agency's determination is arbitrary, capricious, an abuse of discretion, and otherwise not

in accordance with law.

      1.      **Commerce and the Courts Have Confirmed that in the Context of these Orders the Relevant Final Finished Good is the Complete Curtain Wall, not the Smaller Curtain Wall Units**

Commerce and the courts have examined curtain wall units in two sets of proceedings.  In the first proceeding, Commerce determined that curtain wall units – portions of an overall curtain wall – cannot be excluded from the scope of the Orders as "finished merchandise," which was upheld by the courts.[4]  *See Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d 1351, 1353 (Fed. Cir. 2015) ("*Yuanda 2015*").  The Federal Circuit upheld Commerce's determination, holding that the scope language explicitly includes "parts for . . . curtain walls" and curtain wall units are parts of a finished curtain wall.  *Id.* at 1359.  The Federal Circuit also observed Commerce's finding that finished merchandise is a "complete product upon entry," but that units for curtain walls are designed to be attached to other units to eventually form a completed curtain wall, as well as this Court's finding that an individual curtain wall unit "has no consumptive or practical use because multiple units are required to form the wall of a building."  *Id.* at 1358.  The importer there also conceded that no one purchases for consumption a single curtain wall piece or unit.  *See id*.  The Federal Circuit noted that this Court correctly explained that "curtain wall units are {} undeniably components that are fastened together to form a completed curtain wall.  Thus, they are 'parts for,' and 'subassemblies' for, completed curtain walls.  A part or

---

[4]      The scope ruling request explained that curtain walls are comprised of numerous curtain wall components, which can be categorized into three groups: "(i) an aluminum extruded frame, which includes anchors, overlays, and other devices that attach the unit to the cement structure and adjoining units; (ii) infill material; and (iii) hardware to attach the curtain wall parts to the building, as well as to adjoining units, including fasteners, elastomeric lineal gaskets, anchor assemblies and components, clips, screws, nuts and bolts, steel embeds, splices to adjoin units, sealants used between the frames, infill material, and aluminum extrusion trim to physically attach the suspending curtain wall to the building structure."  *See Yuanda 2015*, 776 F.3d at 1353.

subassembly, here a curtain wall unit, cannot be a finished product." *See id.* (internal citations omitted).

In a subsequent proceeding, Commerce confirmed that curtain wall units that are produced and imported pursuant to a contract to supply a complete curtain wall do not meet the requirements of the "finished goods kit" exclusion, which was ultimately upheld by the courts. *See Yuanda 2019*, 918 F.3d at 1358. Specifically, the Federal Circuit agreed with the narrower ground for Commerce's decision – that the curtain wall units as entered did not meet the condition that they be ready for installation "as is." *See id.* at 1367. The court noted that Commerce compared technical drawings of the products to the import documentation to find that the material imported would not complete the curtain because hangers, lock panels, shims, and embeds necessary to piece the curtain wall units together were missing, as well as Commerce's finding that once the curtain wall units were hung, the purchaser would need to waterproof the connection between adjacent units and trim and punch the units to ensure that they fit next to each other. *Id.* The Federal Circuit also acknowledged that Commerce also identified other information about additional finishing needed. *See id.*

For instance, Commerce had explained in its final remand redetermination that the specific installation procedures demonstrate that the curtain wall units, as shipped are:

> (1) incorporated into the building, in designated spots; (2) hung by their anchor brackets (consisting of brackets shipped with but not attached to the units and hangers shipped separately, necessarily attached onto the unit after importation using screws and/or fasteners) onto pre-installed anchor plates (consisting of brackets and shims); (3) are attached to steel embeds pre-bored into the concrete superstructure of the building; and 4) the anchor bracket and plates are secured by a lock panel.

*See* Appx80099 (Appx01233) (citing Final Results of Third Redetermination Pursuant to Court Remand, *Shenyang Yuanda Alum. Indus. Eng'g Co. v. United States*, Consol. Court No. 14-00106,

(Oct. 6, 2016) (Ct. Int'l Trade Jan. 19, 2017) at 29 ("Shenyang Yuanda Third Remand Redetermination")). Thus, Commerce had concluded that "the process as shown on the record does not reflect a system in which curtain wall units and necessary parts, as imported, may be incorporated 'as is' into a curtain wall." *See id.* Commerce also had found that the record shows that in addition to the curtain wall units,

> (1) rubber, elastomeric lineal gaskets are used to waterproof and weatherproof the interlocking of adjacent curtain wall units and (2) the top of curtain wall unit frames must be adjoined with a dynamic silicone that spreads the gap between the two curtain wall units to assure a watertight installation. In addition, (3) aluminum trim is cut and punched to fit gaps between units and to accommodate for imperfections on and/or in between units.

*See id.* (citing Shenyang Yuanda Third Remand Redetermination at 30). Commerce had concluded that "{t}he additional procedures listed above demonstrate that curtain wall units are not ready to be installed upon importation 'as is.'" *See id.* (citing Shenyang Yuanda Third Remand Redetermination at 30-31).

But more importantly, the Federal Circuit also agreed with Commerce's broader ground for its decision – that the "finished goods kit" exclusion language, as applied to curtain walls, requires, at the time of importation, all of the pieces needed to assemble the curtain wall (which the court has already held is the only "final finished good"), which must include all of the required curtain wall units.[5] *See Yuanda 2019*, 918 F.3d at 1367. The Federal Circuit noted that the requirement in the scope exclusion for "finished goods kits" that merchandise enter as a "packaged combination" of the required components at the time of importation focuses only on the physical

---

[5]     In upholding Commerce's third remand redetermination finding that the curtain wall units at issue were not excluded from the scope of the Orders, this Court "relied on Commerce's narrower findings establishing that 'the individual curtain wall units do not contain all parts necessary to install them,' require further finishing or fabrication before assembly, and hence are 'not suitable for installation as is.'" *See Yuanda 2019*, 918 F.3d at 1363; *see also Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 279 F. Supp. 3d 1209, 1214-15 (Ct. Int'l Trade 2017).

contents of the "packaged combination" at a particular time, not on contractual obligations that might link one "packaged combination" to another, later-entering one.  *See id.*

2.    **Reflection's Imports of Window Wall System Components Fail to Meet the "Finished Goods Kit" Exclusion Requirements for the Same Reasons as Curtain Wall Units**

In the final scope ruling, Commerce narrowed AEFTC's argument to the following: (1) Reflection's window wall systems essentially are a type of curtain wall, and (2) Reflection's window wall systems can be substituted for curtain walls.  *See* Appx01606-01607.  This is wrong. AEFTC clearly argued that Reflection's products fail to meet the "finished goods kit" exclusion requirements in the same manner as the curtain wall units that Commerce previously examined. *See* Appx80364 (Appx01493), Appx80100-80101 (Appx01234-01235).   The agency failed to address the crux of AEFTC's argument.  On this basis alone, the agency's determination should be remanded.   In addition, Commerce failed to address the evidence on the record of this proceeding demonstrating that Reflection's imported products are more like the curtain wall units previously found not excludable as "finished goods kits," and unlike the window wall products that the agency reviewed in prior scope rulings – where the issue was not as well considered as in the proceeding at issue.

For instance, in concluding that Reflection's products are distinct from curtain wall units and curtain walls, Commerce wholly disregarded the substantial amount of evidence that AEFTC highlighted demonstrating the similarities between window walls and curtain walls.  *See* Appx01607, Appx80392-80393 (Appx01515-01516).  For instance, the agency did not address AEFTC's arguments that similar to curtain walls, window walls can interlock and cover large portions of the exterior of the building; both are dependent on the units on either side and potentially above and below them to work structurally or be considered weather tight; and window

walls are also generally assembled, attached, and sealed in the field, with numerous parts required for this process, such as mullion and mullion parts, insulating materials, and other connector materials.  Appx80120 (Appx01250), Appx01606-01607.  Again, Reflection also confirmed that its window wall systems do in fact have a continuous enclosure around each individual floor of a building, while the system is designed to allow breakpoints in the façade.  *See* Appx80142 (Appx01277).

In the face of the compelling evidence that AEFTC highlighted, Commerce stated only that Reflection's window wall systems are inserted into the opening between the top of one floor slab and the underside of the next higher floor slab, and do not make up the entirety of the building's façade.  *See* Appx01607.  The agency's analysis is plainly insufficient.  Moreover, that the window wall system may not compose the entire façade of the building does not mean that a smaller portion of that window wall system individually constitutes a final finished good.  No language in the "finished goods kit" exclusion dictates otherwise.  Again, Reflection provides to its customers custom-designed window wall systems, *see* Appx80003 (Appx01113), "multi-million-dollar construction project{s}" involving hundreds or thousands of window wall units for any particular project.  *See* Appx80397 (Appx01520).  In other words, the actual "finished good" that Reflection's customers are presumably purchasing is the entire window wall system for the particular building.  To claim that an individual package containing a select number of components for one portion of one floor is a "final finished good" is divorced from reality.  *See* Appx01189-01190.  One can only presume that Reflection imports its products in the manner described above for convenience in shipping.  Parties should not be permitted to abuse the narrow exclusion language in these Orders by assigning arbitrary names to their products for the purpose of avoiding duties.  Otherwise, the domestic industry would be deprived of the full extent of the trade relief

that it was granted.  In the entry documents that Reflection submitted, [



].  *See* Appx80022-80063 (Appx01132-01134).

Like curtain wall units, to meet the "finished goods kit" exclusion requirements, Reflection would

have to import as a packaged combination of parts all of the components required to complete the

entire window wall system for the building.

Commerce also did not respond to AEFTC's argument regarding the prior scope rulings

on curtain wall units and certain window wall products.  For instance, AEFTC acknowledged that

Commerce has previously found certain window or window wall products to be excluded from the

scope of the Orders as "finished goods kits."   *See* Appx80096-80097 (Appx01230-01231),

Appx80352-80354 (Appx01481-01483)*; see also* Ventana Scope Ruling, Appx01714, NR

Windows Scope Ruling, Appx01666, IAP Enclosures Scope Ruling, Appx01648.  However, in

those proceedings, AEFTC argued that Commerce found the products at issue to meet the

requirements of the "finished goods kit" exclusion.[6]  *See* NR Windows Scope Ruling, Appx01673-

01675, Ventana Scope Ruling, Appx01722-01723, IAP Enclosures Scope Ruling, Appx01652-

01653.  For instance, in the Ventana Scope Ruling, Commerce found that all of the parts needed

to complete a finished window wall were included at the time of importation.  Ventana Scope

Ruling, Appx01722.  Commerce's conclusion relied, in part, on its observation that individual

window walls are placed directly into the structure of the wall of the building – unattached to other

window walls.  Ventana Scope Ruling, Appx01723.  Similarly, in the NR Windows Scope Ruling,

---

[6]      AEFTC notes that while Reflection and Commerce also relied on the IAP Enclosures Scope Ruling, *see* Appx01593, Appx01011-01012, that decision covered punched window kits and ribbon window kits, and it is unclear whether the products at issue in that proceeding are comparable to Reflection's window wall systems.  *See* IAP Enclosures Scope Ruling, Appx01651-01652.

Commerce found that the products at issue "do not require any further processing or additional supplementary materials," and "{u}pon importation, they are fully complete finished goods kits and, when assembled, are able to be inserted into the building using only the material included in the imported cartons." NR Windows Scope Ruling, Appx01670. In contrast, here, Reflection failed to demonstrate that its products met the "finished goods kits" exclusion requirements, and there was substantial evidence indicating that the opposite was true.

AEFTC also explained that the prior scope rulings involving window wall products were largely based on information exclusively submitted by the importer requesting the scope exclusion, without being probed, and thus, the records in those proceedings were not as fully developed as in this case. *See generally* NR Windows Scope Ruling, Appx01666-01675, Ventana Scope Ruling, Appx01714-01723; *see also* Appx80097 (Appx01231), Appx80354 (Appx01483). Notably, none of these three prior scope rulings were specifically examined by the courts. In the underlying proceeding here, there was significantly more analysis put forward than before and more probing of the product at issue. Each scope request must stand on its own merits, and this proceeding was no exception. Here, there was a substantial amount of evidence on the record indicating that Reflection's imported window wall system components do not meet the requirements of the "finished goods kit" exclusion that Commerce improperly ignored.

In fact, during the course of the second set of curtain wall unit proceedings, Commerce clarified its prior scope rulings involving window wall products. Specifically, in one of the agency's remand redeterminations,[7] in responding to arguments by certain parties that the curtain

---

[7]    In this second remand redetermination, while Commerce conducted further analysis, the agency found, under protest, that the curtain wall units are excluded from the scope of the Orders. This Court remanded a third time, and Commerce found – as it had initially – that the curtain wall units are not excluded as "finished goods kits," which was ultimately upheld. *See Yuanda 2019*, 918 F.3d at 1362-63.

wall units at issue should be excluded as "finished goods kits" like the window wall products that Commerce previously examined, the agency explained that "when {Commerce} found that the {finished goods kit} exclusion applied to window walls, it applied to self-contained window walls which are imported into the United States as a kit and can be fully assembled upon importation into the structure of the building," noting that these parties were describing "window walls" differently – "products which are better described for our purposes as window wall building projects (*i.e.*, a collection of window walls, floor slabs, and other parts of the side of a building's structure)."[8]  *See* Appx80378-80379 (Appx01501-01502).  Commerce also explained that:

> The window wall kits thus far analyzed by {Commerce} include all the necessary parts at the time of importation to make a finished window wall, which is a modular stand-alone unit that fits within a building's discrete aperture, similar to a window, and is imported in a single entry . . . . {W}indow walls fill a hole in a wall or structure, generally are placed between floor slabs, have physical differences between the window and the existing building structure (*i.e.*, the load of the window wall is carried by the floor slabs of the building), and are considered complete or finished after they are installed into a discrete opening in a structure. Furthermore, window walls may be secured without consideration of interlocking or installation of other components.

*See* Appx80386-80387 (Appx01509-01510).

Reflection's window wall systems are like the "window wall building projects" described above, and more like curtain walls than the window wall products that Commerce previously examined.  As such, for the same reasons as the curtain wall units, Reflection's imports of window

---

[8]       In this Court's opinion that Commerce's second remand redetermination addressed, this Court also held that Commerce drew an arbitrary distinction between window walls and curtain walls. *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 146 F. Supp. 3d 1331, 1353 (Ct. Int'l Trade 2016).  Regarding this aspect of Commerce's second remand redetermination, the Court noted that the agency provided an explanation of the distinction that it has drawn between curtain wall and window wall units, and that because the reasonableness of this explanation was not challenged, such explanation is affirmed.  *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 181 F. Supp. 3d 1348, 1351, n. 4 (Ct. Int'l Trade 2016).

wall system components cannot be excluded as "finished goods kits." Again, however, Commerce failed to respond to this argument.

Commerce's failure to address the arguments and evidence regarding the similarities between Reflection's products and curtain wall units – critical similarities that render Reflection's imports of window wall system components not excludable as "finished goods kits" – was egregious. By failing to consider evidence that fairly detracted from its conclusion and failing to grapple with all of the important aspects of the problem, the agency failed to provide a reasonable explanation for treating similar products differently. For this reason, Commerce's determination was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, and must be remanded.

NON-CONFIDENTIAL VERSION

## VI.    CONCLUSION

For the foregoing reasons, AEFTC respectfully requests that the Court find that Commerce's final scope ruling excluding Reflection's imports of window wall system components from the scope of the Orders is unsupported by substantial evidence and not in accordance with law.  Accordingly, AEFTC requests that the Court remand this determination to Commerce for further consideration in accordance with the discussion above.

Respectfully submitted,

*/s/ Robert E. DeFrancesco, III*
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Elizabeth S. Lee, Esq.
Claire M. Webster, Esq.

**WILEY REIN LLP**
1776 K Street, NW
Washington, DC 20006
(202) 719-7000

*Counsel for Aluminum Extrusions Fair Trade Committee*

Dated:  November 23, 2021

CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Aluminum Extrusion Fair Trade Committee's Memorandum In Support of Rule 56.2 Motion for Judgment on the Agency Record, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 9,244 words.

*/s/ Robert E. DeFrancesco, III*
(Signature of Attorney)

Robert E. DeFrancesco, III
(Name of Attorney)

Aluminum Extrusions Fair Trade Committee
(Representative Of)

November 23, 2021
(Date)