NON-CONFIDENTIAL VERSION

Ct. No. 21-00253

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,**

        **Plaintiff,**

        **v.**

**UNITED STATES,**

        **Defendant,**

    **And**

**REFLECTION WINDOW + WALL, LLC,**

    **Defendant-Intervenor**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Before:  Hon. Stephen A. Vaden**
                **Judge**

**Court No. 21-00253**

**<u>NON-CONFIDENTIAL VERSION</u>**

**Business Proprietary Information Deleted from Pages: 8-11, 19, 24-25, 32-33**

## <u>REFLECTION WINDOW + WALL, LLC'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>

        **Robert D. Stang, Esq.**
        **Jeffrey S. Neeley, Esq.**

        **Husch Blackwell, LLP**
        **750 17th Street, NW**
        **Washington, DC  20006**
        **Tel. (202) 378-2357**

        *Counsel for Reflection*
        *Window + Wall, LLC*

**Dated:  March 1, 2022**

i

Ct. No. 21-00253

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     RULE 56.2 STATEMENT ..................................................................................... 1

        A.      Administrative Decision Under Review ................................................... 1

        B.      Issues Presented and Summary of Argument ......................................... 1

                1.      Whether Commerce's Determination that Reflection's Window Wall
                        System Kits Qualify Under the Exclusion for "Finished Goods Kits"
                        in the Orders is Supported by Substantial Evidence On the Record........... 1

                2.      Whether Commerce's Scope Ruling Was Unlawful for Being
                        Contrary to Earlier Decisions of Commerce Concerning Curtain
                        Wall Units ................................................................................................. 3

III.    STATEMENT OF FACTS ...................................................................................... 4

IV.     STANDARD OF REVIEW .................................................................................... 17

V.      ARGUMENT .......................................................................................................... 18

        A.      Commerce's Ruling that Reflection's Window Wall System Kits Are "
                Finished Goods Kits" Excluded from the Scope of the Orders is Supported
                by Substantial Evidence on the Record. ................................................... 18

        B.      Commerce Found that Reflection's Window Wall Units Were Not Curtain
                Wall Units or Curtain Walls. ..................................................................... 21

        C.      Commerce Found that All Required Components to Fully Assemble
                the Window Wall Units Were in the Reflection Window Wall System Kits. ...... 24

        D.      Commerce's Scope Ruling is a Well-Reasoned Decision. ................................ 29

VI.     CONCLUSION ...................................................................................................... 34

HB: 4865-9694-1586.1

Ct. No. 21-00253

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Altx, Inc. v. United States*,
  370 F.3d 1108 (Fed. Cir. 2004)................................................................................................. 28

*Atl. Sugar, Ltd. v. United States*,
  744 F.2d 1556 (Fed. Cir. 1984)................................................................................................. 28

*Bowman Transp. Inc. v. Arkansas Best Freight Sys.*,
  419 U.S. 281 (1974)................................................................................................................... 32

*Ceramica Regiomontana, S.A. v. United States*,
  810 F.2d 1137 (Fed. Cir. 1987)................................................................................................. 32

*China Custom Manufacturing, Inc. and Greentec Engineering LLC v. United States*,
  No. 1:20-cv-00121, Slip Op. 21-163 at 13-14 (Ct. Int'l Trade Dec. 6, 2021) ......................... 17

*Consolo v. Fed. Mar. Comm'n*,
  383 U.S. 607 (1966)................................................................................................................... 28

*Dongtai Peak Honey Indus. Co. v. United States*,
  971 F. Supp. 2d 1234 (Ct. Int'l Trade 2014) ............................................................................ 28

*Global Commodity Grp., LLC v. United States*,
  709 F.3d 1134 (Fed. Cir. 2013)................................................................................................. 17

*Goldlink Indus. Co. v. United States*,
  431 F. Supp. 2d 1323 (CIT 2006).............................................................................................. 18

*I.N.S. v. Elias-Zacarias*,
  502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)............................................................... 28

*Meridian Products LLC v. United States*, Ct. No., 13-00018, Slip. Op. 15-67 (June 23, 2015)
  (*Meridian* Products)*(Ct. Int'l Trade)* ...................................................................................... 29

*Meridian Prods., LLC v. United States*,
  851 F.3d 1375 (Fed. Cir. 2017)................................................................................................. 29

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983)..................................................................................................................... 32

*POSCO v. United States*,
  No. 17-00137, 2022 WL 124635 (Ct. Int'l Trade Jan. 13, 2022)............................................. 28

HB: 4865-9694-1586.1

*Sango Int'l, L.P. v. United States,*
    484 F.3d 1371 (Fed. Cir. 2007) ............................................................................ 17

*Shenyang Yuanda Aluminum Indus. En'g Co., Ltd. v. United States,*
    918 F.3d 1355 (Fed. Cir. 2019) ..................................................................... 16, 29

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States,*
    961 F. Supp. 2d 1291 (CIT 2014), *aff'd* ..................................................... 29, 31, 33

*Sunpreme Inc. v. United States,*
    946 F.3d 1300 (Fed. Cir. 2020) ............................................................................ 28

**Statutes**

19 C.F.R. § 351.225 ............................................................................................... 17

28 U.S.C. § 1581(c) ............................................................................................... 17

**Regulations**

*Aluminum Extrusions from the People's Republic of China,*
    76 Fed. Reg. 30,650 (Dep't Commerce May 26, 2011) ................................... 1, 4, 5

*Aluminum Extrusions From the People's Republic of China,*
    76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011) .......................................... 1

HB: 4865-9694-1586.1

Ct. No. 21-00253

# I.    INTRODUCTION

On behalf of Defendant-Intervenor Reflection Window + Wall, LLC ("Reflection"), we respectfully submit the following brief in opposition to the Aluminum Extrusions Fair Trade Committee ("Petitioner" or "Plaintiff") Rule 56.2 Motion for Judgment on the Agency Record.

# II.   RULE 56.2 STATEMENT

## A.  Administrative Decision Under Review

The administrative determination under review in this case is the final scope ruling ("the Reflection Scope Ruling") by the U.S. Department of Commerce ("Commerce" or "the Department") pursuant to the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China regarding certain window wall system kits imported by Reflection. *See* Appx01584-01609; *see also Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 30,650 (Dep't Commerce May 26, 2011) (antidumping duty order) ("AD Order"); *Aluminum Extrusions From the People's Republic of China*, 76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011) (countervailing duty order) ("CVD Order") (collectively, "the Orders").

## B.  Issues Presented and Summary of Argument

1.  <u>Whether Commerce's Determination that Reflection's Window Wall System Kits Qualify Under the Exclusion for "Finished Goods Kits" in the Orders is Supported by Substantial Evidence On the Record.</u>

Yes.  The Reflection Scope Ruling is supported by substantial evidence on the record.  The record supporting this scope ruling request was fully developed and thoroughly examined by Commerce, which reasoned to a logical conclusion based on the record evidence.  The decision at issue is limited to the exclusion from the Orders of four specific products, each product being an unassembled window wall unit. Plaintiff's real complaint in this case is not that there is an absence of substantial evidence to support Commerce's decision.  Instead, Plaintiff's complaint is that

1

Commerce's decision does not agree with the Plaintiff's assessment of the credibility of the extensive documentation and sworn statements provided by Reflection confirming that the products subject to this inquiry were stand-alone finished goods kits within the meaning of the scope language.  The fact that Commerce reasonably determined that Reflection's information on the record was credible and thus did not require even more information, after a lengthy investigation, does not mean that the subject scope decision was unsupported by substantial evidence.

In addition to the information contained in Reflection's scope ruling request of August 7, 2019, the record includes submissions with narratives responding to forty-three specific Commerce inquiries.   Reflection also provided to Commerce:

- Three full sets of entry documents specific to shipments of goods covered under the scope ruling request, each set including an entry summary, a commercial invoice, and a highly detailed packing list identifying each and every part in the shipment.

- Technical literature describing each series of window wall system kits subject to the scope ruling request.

- Annotated images showing the window wall systems before packing and after packing, which identified not only the individual parts being shipped in each entry, but also the components and materials in those parts (*e.g.,* trims, sealants, thermal break struts, EPDM gaskets, silicone pads, end caps with sealant, etc.).

- A chart identifying every part in the window wall system kits with a corresponding reference as to whether the part had an aluminum extrusion component, a non-extruded aluminum component, a non-aluminum component or some combination thereof.

- Detailed declarations by a Reflection employee with deep experience in the window wall system industry and first-hand knowledge of the window wall system kits at issue, specifying why the items at issue were stand-alone products qualifying as a finished goods kit and discussing the completeness of all of the required components in the imported kits.

As admitted by Petitioners, in this scope ruling request, as compared to earlier scope rulings involving window wall units, "there is significantly more analysis being put forward than before, more probing of the product at issue, and the record is more fully developed, including the

2

Department's three supplemental questionnaires to Reflection and industry expertise regarding these products and how they are installed." *See* Appx01483.

    2.  Whether Commerce's Scope Ruling Was Unlawful for Being Contrary to Earlier Decisions of Commerce Concerning Curtain Wall Units.

No. Commerce's decision subject to this action is consistent with prior scope rulings on window wall system kits and is not unlawful. Plaintiff asks this court to re-weigh the extensive factual evidence that Commerce reviewed and conclude that Reflection's window wall system kits are the same as certain different products - curtain wall units - that were previously reviewed by Commerce. In effect, Plaintiff's argument on this issue is the same substantial evidence argument under another guise. Both arguments fail because Commerce thoroughly reviewed the nature of the Reflection window wall system kits at issue and carefully considered the similarities and differences between Reflection's window wall system kits and certain curtain wall units previously considered. Thereafter, Commerce concluded that Reflection's factual statements and evidence were credible and consistent with the documents provided, and that Reflection's window wall system kits were distinct from both curtain wall units and curtain walls.

Commerce also considered Plaintiff's claim that a building's design could be changed from one utilizing curtain wall to a different design utilizing window wall systems, thereby enabling a company to substitute window wall systems for a curtain wall. Commerce found this to be an uncompelling argument because the question at hand was whether a particular product did or did not meet the exclusion criteria based on its physical characteristics, not whether the otherwise excluded product could be substituted for an included product.

As noted herein, the factual evidence that Commerce considered included narrative statements, product instructions, packing lists, entry summaries, annotated photographs, a chart with component material breakdowns, installation instructions and schematics. The rulings reviewed

and considered by Commerce included eight prior scope rulings and one Preliminary Scope Memorandum, each involving aluminum extrusions and all involving a "finished goods kit" inquiry.  Commerce's scope ruling also confirms that relevant case law that the Department relied upon included the 2015 *Meridian Products* case at the Court of International Trade; the 2017 *Meridian II* case at the Court of Appeals for the Federal Circuit ("CAFC"); and the Shenyang *Yuanda 2019* case at the CAFC.  In short, the record confirms that Commerce carefully analyzed and weighed a tremendous amount of factual evidence coupled with prior scope rulings and court cases directly on point, in order to arrive at a well-reasoned decision.

## III.    STATEMENT OF FACTS

On May 26, 2011, Commerce issued antidumping and countervailing duty orders on aluminum extrusions from China. *See* AD Order, 76 Fed. Reg. at 30,650; CVD Order, 76 Fed. Reg. at 30,653. In relevant part the scope of the Orders reads as follows:

> The merchandise covered by the order is aluminum extrusions which are shapes and forms, produced by an extrusion process, made from aluminum alloys having metallic elements corresponding to the alloy series designations published by The Aluminum Association commencing with the numbers 1, 3, and 6 . . . . Aluminum extrusions are produced and imported in a wide variety of shapes and forms, including, but not limited to, hollow profiles, other solid profiles, pipes, tubes, bars, and rods. Aluminum extrusions that are drawn subsequent to extrusion ("drawn aluminum") are also included in the scope. Aluminum extrusions are produced and imported with a variety of finishes (both coatings and surface treatments), and types of fabrication. The types of coatings and treatments applied to subject aluminum extrusions include, but are not limited to, extrusions that are mill finished (*i.e.*, without any coating or further finishing), brushed, buffed, polished, anodized (including bright-dip anodized), liquid painted, or powder coated. Aluminum extrusions may also be fabricated, *i.e.*, prepared for assembly. Such operations would include, but are not limited to, extrusions that are cut-to-length, machined, drilled, punched, notched, bent, stretched, knurled, swedged, mitered, chamfered, threaded, and spun. The subject merchandise includes aluminum extrusions that are finished (coated, painted, *etc.*), fabricated, or any combination thereof.
>
> Subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to, window frames, door frames, solar panels, curtain walls, or furniture. Such parts that

otherwise meet the definition of aluminum extrusions are included in the scope. The scope includes the aluminum extrusion components that are attached (*e.g.*, by welding or fasteners) to form subassemblies, *i.e.*, partially assembled merchandise unless imported as part of the finished goods 'kit' defined further below. The scope does not include the non-aluminum extrusion components of subassemblies or subject kits. Subject extrusions may be identified with reference to their end use, such as fence posts, electrical conduits, door thresholds, carpet trim, or heat sinks (that do not meet the finished heat sink exclusionary language below). Such goods are subject merchandise if they otherwise meet the scope definition, regardless of whether they are ready for use at the time of importation.

The scope also excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels. **The scope also excludes finished goods containing aluminum extrusions that are entered unassembled in a "finished goods kit." A finished goods kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled "as is" into a finished product. An imported product will not be considered a "finished goods kit" and therefore excluded from the scope of the investigation merely by including fasteners such as screws, bolts, *etc.* in the packaging with an aluminum extrusion product** …. (Emphasis added)

AD Order, 76 Fed. Reg. at 30,650-51; CVD Order, 76 Fed. Reg. at 30,653-54.

On August 7, 2019, Reflection filed a scope ruling request with the Department covering certain Reflection window wall system kits, asserting that the kits, as imported, met the above definition for exclusion.  *See* Appx01584.  As noted in that scope ruling request, Reflection is "an architectural building enclosure company specializing in the engineering, pre-construction, and project management of façade construction."  *See* Appx01001.  To that end, Reflection "designs, imports and distributes fully complete custom designed window wall systems, each window wall system unique to the size, dimensions and modulation of the particular project."  *See id.* Regarding window wall systems generally, Reflection confirmed the definition of this product, which was established by the American Architectural Manufacturers Association ("AAMA"); specifically, "a non-load bearing fenestration system provided in combination assemblies and composite units,

including transparent vision panels and/or opaque glass or metal panels, which span from the top of a floor slab to the underside of the next higher floor slab." *See* Appx01001-01002.

Reflection explained that its window wall systems were "arranged for shipment in determined batches, kitted, rated, shrink-wrapped and loaded into shipping containers for export to the United States." *See* Appx01006. After importation the crates remained packed and shrink-wrapped in Reflection's warehouse. *See id.* Critically, Reflection further explained: "The imported window wall system components are not further manufactured or finished in the United States prior to installation" as that could create "confusion or misdelivery of the window wall system kits at the project jobsite." *See id*. Furthermore, Reflection stated and certified subject to criminal sanctions that it does not inventory any off-the-shelf components. *See id.* Reflection's August 7, 2019, scope ruling request also noted that the imported components were "the <u>exact</u> components in the <u>exact</u> quantities needed to fully assemble a final finished window wall system." *See* Appx01008

After an initial review of the information provided, on September 23, 2019, Commerce requested that Reflection refile the scope ruling request with additional information identified in the Department's first supplemental questionnaire, including:

> A chart which identifies each individual part of the kit, classifying each individual part as (a) extruded aluminum, (b) non-extruded aluminum, or (c) non-aluminum … or a combination thereof.

> Full sets of entry documents for Reflection's last three entries at that time, including the Customs form 7501, invoice, shipping invoice, bill of lading, and all other pertinent documents,

> Three packing lists identifying the product kit components that are sold and shipped together.

> All model numbers or other identifying names or characteristics by which the kits or individual parts within them are described.

*See* Appx01098.

In order to consider fully the Commerce requirements for establishing that the imported product is a finished goods kit, Commerce required Reflection to explain yet again whether all "accessory components" were shipped to the United States in the same shipment as the "primary components" and "whether all components of Reflection's window wall systems enter the United States on the same Customs form 7501." *See id.*

On January 9, 2020, Reflection refiled the scope ruling request, as directed, along with responses to the Department's first supplemental questionnaire. *See* Appx01585. In its response to the Department's first supplemental questionnaire Reflection included the following documents:

- Customs and Border Protection ("Customs" or "CBP") entry summaries (Form 7501s) and commercial invoices covering all items in the subject entries along with detailed packing lists identifying the Primary Description, Secondary Description, Part No., Length, Width (as applicable), Area (as applicable), Quantity, Floor No., Package No., Container No. and project reference for each packaged shipment of window wall system parts in each entry. *See* Appx80025 - 80063.

- Annotated images of the individual window wall component parts - both before and after packing - identifying not only the primary parts, but secondary parts such as gaskets, cap seals, polyamide thermal break struts, foam baffles, silicone pads, sealant, and snaps. *See* Appx80064-80078. Significantly, the annotated images of the window wall system kits fully packed also identify a project code for the kit as well as a code providing instructions specific to the placement and sequencing of the window wall systems in the building's floor plan. *See* Appx80074 - 80076.

- A chart identifying all parts of complete window wall system kits (primary components and accessory components) with all primary and secondary descriptions and a mark (x) identifying each component as containing extruded aluminum, non-extruded aluminum or non-aluminum components or materials. *See* Appx80079-80085.

The January 9, 2020, submission in response to Commerce's first supplemental questionnaire also contained a narrative describing Reflection's supply chain. Among other information, that narrative noted: "The imported components are not unpacked in the U.S. prior to delivery to the job site." *See* Appx01123.

Ct. No. 21-00253

On March 11, 2020, the Department requested additional information from Reflection and issued a second supplemental questionnaire requesting narratives and specific citations to certain information provided on January 9, 2020. *See* Appx01180 – 01182. Reflection provided the full narratives and specific citations requested to Commerce on March 16, 2020. *See* Appx01186 – 01211. The information provided included references to the Chart enclosed as Exhibit C to Reflection's January 9, 2020 submission, which identified each individual part of the subject kits and further identified the material in each part (extruded aluminum, non-extruded aluminum or non-aluminum) (*See* Appx01187); confirmation that all "accessory components" and "primary components" for a kit were covered in the same shipment (*See* Appx01188); full sets of entry documents (Form 7501s, commercial invoices, packing lists, bills of lading) for the company's last three shipments at that time (*See id.*); a narrative explaining that the packing lists designate each component in the finished goods kit by a Primary Description, corresponding Secondary Description, Part Number and Part Dimensions *(See id.)*; confirmation that the entry documents verify that all of the components in the subject window wall system kits entered the U.S. under a single shipment and on a single Form 7501 (*See* Appx01189); and an explanation of the "Package No." codes on the packing lists, which identify the placement of each window wall unit in the wall of the building. *See* Appx01189 – 01190.

On March 31, 2020, Plaintiff filed a letter with Commerce that included a Declaration by [            ], an individual claiming "extensive knowledge concerning the industry…." *See* Appx80087 – 80119. [            ] Declaration claimed: "The only practical difference between window walls and curtainwalls is that window wall runs between the floor slabs and curtainwall runs in front of the floor slab." *See* Appx80120. Additionally, [            ] Declaration claimed to have provided [                    ] to Reflection that were [                    ] to the goods

covered under Reflection's scope ruling request.  *See id.*  However, [                    ] Declaration did not provide dates, project sites, merchandise descriptions, invoices, packing lists or any further information or documentation in support of the statement that goods [          ] the window wall system kits in Reflection's scope ruling were previously provided by [              ] company to Reflection.   In addition, even if [                  ] statements were correct, they did not discuss or analyze why the products that [     ] said were provided  to Reflection were considered to be curtain wall units rather than window wall units.

On April 9, 2020, Reflection provided comments and factual evidence rebutting comments by the Petitioner. *See* Appx80122-80142.  Reflection's  rebuttal comments were accompanied by a Declaration from James J. White, Reflection's Executive Vice-President of Engineering, who has a degree in civil engineering.  Mr. White has been engaged in the commercial window and wall business since 2005 and has been employed by Reflection since 2016.  He has been involved in over [     ] separate window wall projects.  *See* Appx80141.  Mr. White's Declaration under penalty of perjury referenced the exact entry numbers and products identified in Reflection's responses to Commerce and noted that "shipments of Reflection Window's window wall system kits contain all of the necessary parts to fully assemble the finished window wall systems with no further finishing or fabrication, thereby enabling the finished window wall systems to be installed 'as is' into a building." *See id.*

Reflection's rebuttal comments stated that Petitioner's submission confused and conflated curtain walls with curtain wall units (*See* Appx80126) and further confused the analysis by analogizing window wall system kits to curtain wall units.  *See* Appx80126 - 80127.  The rebuttal comments also asserted that the [          ] declaration was misleading, inaccurate and vague.  *See* Appx80134.

HB: 4865-9694-1586.1

NON-CONFIDENTIAL VERSION

Ct. No. 21-00253

On April 28, 2020, Commerce sent a letter to Reflection, which requested additional information. The attachment to the Commerce letter consisted of 29 separate questions, several with subparts, thereby totaling 35 separate inquiries. *See* Appx01279 - 01284. On May 11, 2020, Reflection provided a response to each of those 35 inquiries along with supporting documentation. *See* Appx80143 - 80153. Included in those responses was information on the exact products in the scope ruling request and corresponding technical literature, as well as descriptions of the characteristics of window wall units used in other projects. *See* Appx80145 - 80154.   In addition, Reflection submitted technical literature to Commerce covering each series of window wall system kits covered by Reflection's scope ruling request. *See* Appx80275 - 80348.

On July 13, 2020, the Petitioner filed additional comments opposing Reflection's scope ruling request. *See* Appx80349 - 80393.  Those comments addressed three Commerce scope rulings on window wall units (the "N.R. Windows scope ruling;" the "Ventana scope ruling;" and the "IAP Enclosures scope ruling"), all of which Plaintiff tried to distinguish from the current case. *See* Appx08352 - 08354.  While conceding that these rulings were seemingly adverse to Petitioner's position in the current case, Petitioner also admitted that in the Reflection Scope Ruling inquiry "there is significantly more analysis being put forward than before, more probing of the product at issue, and the record is more fully developed, including the Department's three supplemental questionnaires to Reflection and industry expertise regarding these products and how they are installed." *See* Appx01483.  Petitioner's comments also included an additional Declaration from [          ]. *See* Appx80392 - 80393.  In [    ] second declaration [          ] asserted: "In fact, curtain walls and window walls can be used interchangeably for the same projects." *See* Appx80392.  There was no explanation in this Declaration as to the basis on which [    ] concluded that a curtain wall designed for one building could be substituted into a different design for that

10

same building.  Similarly, the Declaration failed to address the cost of any such redesign or whether redesigning a building for window wall units rather than curtain wall units  was economically feasible let alone practical.

Thereafter, [          ] made another comment, not on the product itself, but based on his supposed expertise concerning the intent of the "Chinese," that "due to Chinese importers attempts to avoid duties subcontractors supplying curtain walls will frequently pitch window walls as a more cost-effective alternative to curtain walls, and the buildings will subsequently be built with window walls as the glazing system."  *See* Appx80392.  [   ] also stated: "Curtain walls and window walls can be used interchangeably on a project because of the physical characteristics they have in common."  *See* Appx80392-80393.

Reflection provided rebuttal comments to Commerce on July 22, 2020.  *See* Appx01517. Reflection described in detail the nature of its modular stand-alone units (*i.e.,* Reflection's window wall system kits) and Reflection's actual experience installing these goods.  *See* Appx80397-80403.  One of Petitioner's central arguments is apparently that if Reflection's window wall units must be installed one after the other *at the same time*, then this would be indicative that Reflection's window wall systems are not individual stand-alone units, but are part of a larger finished product (akin to a curtain wall).  *See* Appx80100; Appx80120.  Alternatively, if Reflection's window wall units have a particular placement in a building's wall, but installation of one window wall unit does not require the installation *at the same time* of a window wall unit before it or after it (the time of installation) to be functional, then this would be consistent with Reflection's claim that its window wall units are modular stand-alone units that qualify as an excluded "finished goods kit." *See* Appx01599 – 01600.

On August 27, 2020, Petitioner held an *ex parte* video conference with Commerce.  Counsel for the Petitioner was accompanied by the President of the Petitioner and two Vice-Presidents. Commerce personnel attending the *ex parte* conference included the Deputy Assistant Secretary for AD/CVD Operations; the Associate Deputy Assistance Secretary for AD/CVD Operations; two attorneys from Commerce's Office of the Chief Counsel for Trade Enforcement and Compliance; a representative from Commerce's Office of Policy and Negotiations; a Program Manager from Commerce's AD/CVD Operations, Office VI and the Senior Analyst from that office as well.  *See* Appx01542.

On September 8, 2020, Commerce's Special Assistant to the Assistant Secretary for Enforcement and Compliance received and forwarded internally email inquiries from the staff of the U.S. House of Representatives to Commerce's International Trade Administration concerning the scope inquiries.  *See* Appx01543.  Thereafter, from October 21, 2020 to April  19, 2021 Commerce extended the time for issuing a scope ruling six times in order to thoroughly consider and clarify "issues concerning key terms used in the scope of the *Orders*…."  *See* Appx01548; Appx01550; Appx01552; Appx01554; Appx01570; Appx01582.

Finally, on April 26, 2021, Commerce issued its "Final Scope Ruling on Reflection Window + Wall, LLC's Window Wall System Kits" ("the Reflection Scope Ruling"), which held that Reflection's series RWW-8000, RWW-9000, RWW-9500 and RWW-12000 window wall units "qualify for the finished goods kits exclusion because they contain, at the time of importation, all of the necessary parts to fully assemble a final finished good."  *See* Appx01608.  As a result, Commerce held that Reflection's window wall units identified in the scope ruling "are not within the scope of the *Orders* because they are finished goods kits."  *See id*.

12

The evidence relied upon by Commerce in the Reflection Scope Ruling included "narrative statements, product instructions, packing lists, entry summaries, photographs, and schematics." *See* Appx01603.   The Reflection Scope Ruling confirms that Commerce carefully reviewed Petitioner's evidence, but simply disagreed with the quality of Petitioner's evidence and certain conclusions to be drawn therefrom.  For example, in footnote 127 in the Reflection Scope Ruling Commerce addresses the video provided in Reflection's first supplemental response (*See* Appx01116) and states "we have repeatedly reviewed the video referenced by the parties and cannot find any support for the Petitioner's contention that it demonstrates that there is further finishing, *but conclude that it shows the opposite.*"  *See* Appx01604. Emphasis added.

The Reflection Scope Ruling confirms that, in considering the completeness of the window wall system kits,  Commerce examined in detail the packaging and shipment of the Reflection window wall system kits, going so far as to quote the meaning for each segment of the shipping code associated with each component in the packing lists.  ("For example, the packing list associated with Entry 988-0842227-7 identifies package 950-F2-R-27-P-1.  The "950" is the project code ….  F2 is the specific floor on which this kit will be installed….R-27-P-1 identifies the crate sequence for the window wall system kits intended for the 2nd floor at the 950 project. These identifying codes for each window wall system kit are also placed on each individual shrink wrapped kit."  *See* Appx01605.

The Reflection Scope Ruling specifically cited to the Customs and Border Protection Form 7501 Entry Summary (CBP Form 7501) as evidence that the subject goods are imported into the United States on a single entry.  *See* Appx01606.  Moreover, the Reflection Scope Ruling cites by footnote to the detailed description of the merchandise contained in Reflection's third supplemental response as evidence that the subject window wall units "consist of both aluminum

13

extrusions and non-extruded aluminum components that go beyond mere fasteners." *See* Appx01606, footnote 135 citing to "Description of Merchandise Subject to this Scope Request." *See* Appx01589 – 01592.

Commerce further notes Reflection's chart "showing the composition of each individual part of the window wall system kits." *See* Appx01606. With respect to Reflection's detailed chart, the Reflection Scope Ruling states:

> This chart further breaks down the head receptor into 74 subcomponents, 18 of which are extruded aluminum, three of which are non-extruded aluminum, and 53 of which are not aluminum at all (and numerous non-fastener components). Because Reflection's window wall system kits consist of both aluminum extrusions and non-extruded aluminum components that go beyond mere fasteners, we find that Reflection's window wall system kits meet this criterion of a finished goods kit.

*See id.*

With respect to the placement of Reflection's window wall units into the opening of a building (an important issue distinguishing window wall systems from curtain wall units) the Reflection Scope Ruling states:

> Reflection's window wall systems are distinct from both curtain wall units and curtain walls. Specifically, Reflection's window wall systems are inserted into the opening between the top of one floor slab and the underside of the next higher floor slab, and do not make up the entirety of the building's façade, like a curtain wall as noted above. We find this difference crucial as to whether a window wall system could be considered a type of curtain wall, as the protrusion of the floor slabs themselves serves to demonstrate that the window wall does not compose the entire façade of the building.

*See* Appx10607. Commerce's support for the above statement comes from Reflection's third supplemental response at page 5 (referenced in the Reflection Scope Ruling, footnote 140). (*See* Appx01607). *See also,* page 5 of Reflection's third supplemental response, which references "Technical literature and product brochures" for the RWW-8000, RWW-9000, RWW-9500 and RWW-12000 Series of window wall units. *See* Appx01398 - 01471.

Ct. No. 21-00253

Consistent with prior window wall system scope rulings, Commerce's analysis in the Reflection Scope Ruling also covered the physical characteristics and packing of the window wall units.  For example, Commerce cited to the <u>Hand-E-Shutter Kits</u> Scope Ruling for support that the goods in a single "finished goods kit" can be packaged in separate crates or cartons.  *See* Appx01605.  Additionally, "Commerce considered, in accordance with the Geodesic Domes Kits Scope Ruling and Meridian Trim Kits, whether the product at issue {Reflection window wall system kits} contains non-aluminum extrusion components beyond mere fasteners."  *See* Appx01606.  With respect to the subject goods, Commerce applied the reasoning in the above rulings to the description of Reflection's window wall system kits established on the record, and concluded that Reflection's window wall system kits qualified as a "finished goods kit;" including whether "Reflection's window wall system kits consist of both aluminum extrusions and non-extruded aluminum components that go beyond mere fasteners…."  *See id.*

  When issuing the Reflection Scope Ruling Commerce also included copies of nine prior rulings on which Commerce relied upon and discussed in part as follows:

- The Investigation Preliminary Scope Memorandum (the "Preliminary Scope Memorandum") issued October 27, 2010, responding in part to comments filed by a number of petitioners including the Aluminum Extrusions Fair Trade Committee.  Specifically, Comment 8 in this Preliminary Scope Memorandum addressed a situation where an importer of exhibition kits claimed that the goods should be excluded from the scope of the Orders.  Nevertheless, Commerce concluded that "we are unable to discern whether all the components requisite to assembling a finished product are also included."  As such, in this case Commerce was unable to reach a determination concerning  the exclusion of the goods from the Orders based on the record evidence.  *See* Appx01610;01632.

-  The Geodesic Domes Kits scope ruling issued July 17, 2012, wherein Commerce concluded that certain aluminum poles and fasteners were covered under the scope of the Orders based on the language of the Orders stating that an "imported product will not be considered a 'finished goods kit' … merely by including fasteners such as screws, bolts, etc. in the packaging with an aluminum extrusions product."  *See* Appx01610;01593.

Ct. No. 21-00253

- The IAP Enclosures Systems Window Kits scope ruling issued December 6, 2011: This ruling involved punched window kits and ribbon window kits. The ribbon window kits consisted of "a series of window panels with glass, attached together by extruded aluminum receptors." *See* Appx01651. Commerce noted that "so long as each such container necessary for the assembly of the finished window or windows was listed on a single CBP 7501 entry form, such window kits remained eligible for exclusion from the *Orders*." *See* Appx01610;01593.

- The Meridian Trim Kits scope ruling dated December 17, 2012: Commerce considered certain trim kits utilized as an aesthetic frame around the perimeter of home appliances. Since the trim kits only included aluminum extrusions, fasteners and extraneous materials, Commerce determined that the product was covered by the scope of the Orders and was not subject to the finished goods kit exclusion. In *Meridian Products II*, the CAFC affirmed Commerce's initial scope ruling, reversing and vacating the prior decisions of the U.S. Court of International Trade ("CIT"), which had remanded Commerce's original scope determination. *See* Appx01610;01594.

- The NR Windows Window Wall Kits scope ruling issued June 19, 2014: In this ruling Commerce determined that certain window wall kits containing all parts necessary to fully assemble a final window wall requiring no further fabrication or additional supplementary material qualified as a "finished goods kit" excluded from the scope of the *Orders*. "Commerce also found that the window wall kits at issue were different than curtain wall parts … in that *unlike curtain walls, window walls do not envelope or enclose the entire façade of a building.*" *See* Appx01610;01594. Italics added.

- The NCGMA Curtain Wall Unit scope ruling issued November 12, 2012: In this ruling involving certain curtain wall units and other parts of curtain walls Commerce found that the goods were included in the scope of the Orders because both the scope of the Orders and the description of the merchandise in the underlying investigation explicitly stated that parts of curtain walls are included within the scope of the Orders. *See* Appx01610;01595.

- The Yuanda Curtain Wall Unit scope ruling issued March 27, 2014: Commerce determined that certain curtain wall units were not finished merchandise because a curtain wall unit is merely one piece of the final finished product (the curtain wall). The CAFC affirmed Commerce's finding noting that curtain wall units were subassemblies, not finished products. *See Shenyang Yuanda Aluminum Indus. En'g Co., Ltd. v. United States,* 918 F.3d 1355, 1367-68 (Fed. Cir. 2019)("*Shenyang Yuanda 2019*"). *See* Appx01610;01595.

- The Ventana Window Walls scope ruling issued January 19, 2015: This ruling involved certain window wall structures that, at the time of importation contained all of the parts necessary to assemble a finished window wall. The ruling noted that Commerce had concluded in past

determinations that although window walls and curtain wall units shared some physical characteristics, window walls constituted a finished product while curtain wall units merely formed part of a finished product (*i.e.,* a curtain wall). The ruling further commented that window walls do not envelop the side of a building, but  instead each window wall is placed directly into the structure of the wall of the building.  *See* Appx01610; 01595.

- The Hand-E-Shutters Kits scope ruling issued May 18, 2017.  The scope ruling involved ready-to-assemble roller shutters designed for secure storage of an open space of a structure.  The parts in the kit were entered in separate containers covered under a single Entry Summary (Customs Form 7501).  Commerce thereafter found that the kits met the criteria of a "finished goods kit" and held that the kits in question were excluded from the scope of the Orders.  *See* Appx01610; 01596.

## IV.   STANDARD OF REVIEW

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1581(c), which grants jurisdiction over civil actions brought under section 516A of the Tariff Act of 1930 (19 U.S.C. § 1516a(a)(2)(B)(vi)).  Section 1516a(a)(2)(B)(vi) provides for judicial review of a determination of "whether a particular type of merchandise is within the class or kind of merchandise described in an . . . antidumping or countervailing order."  Consistent with 19 C.F.R. § 351.225 this type of determination is a "scope ruling."

In *China Custom Manufacturing, Inc. and Greentec Engineering LLC v. United States,* No. 1:20-cv-00121, Slip Op. 21-163 at 13-14 (Ct. Int'l Trade Dec. 6, 2021) (*"China Custom Manufacturing"*) this Court addressed the legal standards to be applied in scope ruling appeals: "Scope rulings are 'highly fact-intensive and case-specific determination{s}.'" (quoting *Global Commodity Grp., LLC v. United States,* 709 F.3d 1134, 1138 (Fed. Cir. 2013).  In that regard, the Court "grant{s} significant deference to Commerce's interpretation of a scope order." *Id.*  The Court must uphold a scope ruling unless it finds it to be "unsupported by substantial evidence on the record or otherwise not in accordance with the law." Slip Op. 21-163 at 14 (quoting *Sango Int'l, L.P. v. United States,* 484 F.3d 1371, 1378 (Fed. Cir. 2007).  Accordingly, "{T}he court may

HB: 4865-9694-1586.1

not substitute its judgment for that of the {agency} when the choice is between two fairly

conflicting views, even though the court would justifiably have made a different choice had the

matter been before it *de novo*." Slip Op. 21-163 at 14 (quoting *Goldlink Indus. Co. v. United States*,

431 F. Supp. 2d 1323, 1326 (CIT 2006) (citations omitted) (second alteration in original)).

## V.    ARGUMENT

### A.  Commerce's Ruling that Reflection's Window Wall System Kits Are "Finished Goods Kits" Excluded from the Scope of the Orders is Supported by Substantial Evidence on the Record.

Plaintiff has not met its burden of establishing that the Reflection Scope Ruling was

unsupported by substantial evidence on the record.  Plaintiff's arguments to this Court are simply

a rehashing of arguments already made to Commerce and found to be non-credible.  In fact, the

evidence on the record, which Commerce found persuasive, includes:

- Reflection's responses to specific Commerce inquiries in Commerce's first supplemental questionnaire of September 23, 2019, and second supplemental questionnaire of March 11, 2020.  These responses included:

  - ➢ A chart identifying each component in the window wall unit, the component's material (extruded aluminum, non-extruded aluminum or non-aluminum) as well as whether the component was primary or secondary within the window wall system kit.
  - ➢ Three full sets of entry documents specific to recent shipments of window wall system kits identified in the scope ruling request showing all of the components of the window wall units that were imported.  Each set of documents included an entry summary, a commercial invoice and a highly detailed packing list identifying every part in the shipment.
  - ➢ Confirmation that "accessory components" and "primary components" for particular window wall systems are contained in the same shipment to the United States and that all components enter the United States on the same Entry Summary (Form 7501).
  - ➢ Annotated images showing the window wall system kits before packing and after packing.  The images identified not only the individual parts being shipped in each entry, but also the components and materials in those parts (*e.g.*, trims, sealants, thermal break struts, EPDM gaskets, silicone pads, end caps with sealant, etc.).

*See* Appx01603-01604; Appx01110-01156 (Appx8000-80085); Appx01186-01190.

Ct. No. 21-00253

- A video that Commerce examined and concluded does not evidence "any support for the petitioner's contention" that certain components of the window wall units require further finishing or fabrication, but instead "shows the opposite." *See* Appx01604.

- Reflection's third supplemental response of May 11, 2020 addressing 35 additional inquiries posed by Commerce, which included:

    ➢ Reflection Window's narrative statements concerning the physical characteristics, packaging and installation of Series RWW-8000, RWW-9000, RWW-9500 and RWW-12000 window wall systems. *See* Appx01603; Appx1300 - 1301.
    ➢ Technical literature and product brochures covering each series of window wall kits subject to the scope ruling request (*i.e.,* Reflection Series 8000, 9000, 9500 and 12000 window wall systems). *See* Appx01302;Appx01398 - 01431.

- A detailed declaration on April 8, 2020, by a Reflection employee (James White) with deep experience in the window wall system industry and first-hand knowledge of the window wall system kits covered under the CBP-specific entry documentation and Reflection's scope ruling request. Mr. White's declaration covered the physical characteristics of the window wall systems in the three entries referenced above. It confirmed that "shipments of Reflection Window's window wall system kits contain all of the necessary parts to fully assemble the finished window wall systems with no further finishing or fabrication, thereby enabling the finished window wall systems to be installed 'as is' into a building."

    Mr. White's declaration noted that certain individual parts in the window wall system contain sealants applied at the factory, in which case the sealants become a material in the part identified on the packing list and are not individually identified on the packing list. Finally, this declaration confirmed that Reflection's window wall units "are designed to allow break-points in the facade, even for a continuous enclosure around each individual floor of a building. This feature provides great flexibility for installation of the window wall systems, and/or any other issues that might arise in the field preventing a certain area from being installed (*i.e.,* an incomplete main structure or an out of tolerance structure requiring remediation before installation of the window wall systems)."

    *See* Appx80141 - 80142.

- A second declaration by Mr. White on July 22, 2020, identifying the differences between window wall units and curtain wall units and explaining why these two products cannot be used interchangeably. Mr. White commented: "In my 15 years of experience and work on nearly [    ] separate projects I have never seen these two products used interchangeably." The declaration noted Mr. White's actual experience that in certain instances a particular window wall unit to be installed may be defective or in need of repair. In those instances, the construction company does not halt installation of all window wall units in the project. Rather, "Reflection Window's window wall units are engineered so that if necessary, installation of the units can continue without delay until the corrected or repaired 'stand-alone unit' is received." This provides an important point distinguishing window wall units from curtain walls that are a complete finished product, as found by Commerce. Finally,

        Mr. White's declaration reiterated that "shipments of Reflection Window's window wall system contain all of the necessary parts to fully assemble the finished window wall systems with no further finishing or fabrication, thereby enabling the finished window wall systems to be installed 'as is' into a building."  *See* Appx80413 - 80415.

As set forth above in the Statement of Facts, the relevant exclusion language that Commerce addressed in this instance was: "The scope also excludes finished goods containing aluminum extrusions that are entered unassembled in a 'finished goods kit.' A finished goods kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled 'as is' into a finished product.  An imported product will not be considered a 'finished goods kit' and therefore excluded from the scope of the investigation merely by including fasteners such as screws, bolts, *etc.* in the packaging with an aluminum extrusion product ….."   *See* appx01587.  The questions posed by Commerce carefully probed whether all of the elements of the "finished goods kit" exclusion had been met, with a particular focus on the requirement that all of the necessary parts to fully assemble a final finished product be included in a single CBP entry.  The completeness of the window wall system kits is what Plaintiff continues to challenge in this litigation.

The record shows that Commerce repeatedly extended its deadlines to ensure that it could fully consider the facts and the credibility of the declarations and other evidence.  We also note that in light of interest in this matter from the Congress, Commerce held an *ex parte* high-level meeting to provide Plaintiff with every opportunity to persuade Commerce of the soundness and credibility of Plaintiff's position.  Yet, despite  Plaintiff's repetitive arguments and multiple presentations and submissions, Petitioner failed to persuade Commerce that Petitioner's conclusions were correct.  To the contrary, Commerce remained convinced that Reflection had established that the detailed packing lists and other substantial supporting evidence provided identified every part used

to assemble the subject window wall system kits (the final finished product) at the job site. *See* Appx01603-01604; Appx80010; Appx80396.

The detailed charts and packing lists on the record also confirm that the window wall units contain aluminum extrusion components combined with parts (other than mere fasteners) that contain non-aluminum extrusion parts. The packing lists and entry summaries (Form 7501s) submitted to Commerce confirm that a single Reflection entry may cover multiple containers, thereby supporting Reflection's contention that all of the components in the window wall system kits are imported under the same entry, as required by the scope of the Order and Commerce rulings. *See* Appx01605 – 01606.

The entry documents referenced above – in particular the Form 7501 and the packing lists - are particularly important because in past rulings on "finished goods kits" Commerce has relied on these documents to determine whether the claimed "finished goods kit" contained "all of the necessary parts to fully assemble a final finished good" that requires no further finishing or fabrication" as required in the Orders. *See* Appx01511; Appx01593; Appx01596; Appx01606. This scope language has been interpreted on numerous occasions by Commerce, as Plaintiff concedes. *See Aluminum Extrusions Fair Trade Committee's Memorandum In Support Of Rule 56.2 Motion For Judgment On The Agency Record* (November 23, 2021) ("Petitioner's Memorandum") at 11.

### B. Commerce Found that Reflection's Window Wall Units Were Not Curtain Wall Units or Curtain Walls.

On the threshold issue of the nature of the product being considered, Commerce upheld Reflection's contention that Reflection's window wall units are stand-alone modules. It is true that a construction company will not randomly install window wall units in a building, such as installing one on the fifth floor, then one on the twenty-fifth floor, and then one on the tenth floor,

but instead will usually work sequentially through each space in each floor's walls. Working sequentially, though, does not mean that the subject window wall system kits (modular stand-alone units) *must* be installed in the wall of a building in any particular order. Instead, it simply means that efficient use of workers would not lead to a random approach to installing the goods.

Reflection stated that Petitioner is correct that window wall units are identified "by their exact floor and intended point of installation on the packing lists and crates used for packing." *See* Appx80397. Of course, Reflection's modular units are almost always free of defects and installed in order, on a floor-by-floor basis, as the workers construct the building. However, defective units do occur from time-to-time. Thus, "{c}onsistent with that fact, Reflection Window's window wall units are engineered so that if necessary, installation of the module stand-alone units can continue without delay until the corrected or repaired 'stand-alone' unit is received." *Id.* In support of this statement, Reflection points to Paragraph 8 of the Declaration of James White, which was attached as Exhibit A to Reflection's July 22, 2020 comments. *See* Appx80414. The fact that Reflection window wall systems can be installed out of sequence, then, establishes these goods as stand-alone modules, a characterization consistent with Commerce's scope ruling holding the subject window wall systems to be finished goods kits.

With respect to the technical literature in the record, the evidence confirms that the subject window wall units are inserted *into* the wall of a building, which supports the conclusion that each window wall unit is a stand-alone product that does not and cannot encompass the entire wall of a building. *See* Appx80255 - 80348. The technical literature further confirms that Reflection's window wall systems are not "cladding" forming "the entire outer structure of the building" as would be necessary for the window wall systems to be characterized as curtain walls or curtain wall units. *See Yuanda 2019* at 1355, 1357, 1360. Similarly, the technical literature provided in

the record confirms that the window wall system kits in question are not "hung to the exterior of the building" as is required under the American Architectural Manufacturers Association ("AAMA") definition of "curtain wall." *See* Appx01012.  As such, substantial evidence on the record confirms that Reflection's window wall system kits do not fit the definition of curtain walls or curtain wall units adhered to by Commerce, the courts or the industry at large.  Thus, Commerce found that the Reflection window wall units were significantly different than curtain walls.  *See* Appx01607.

Additionally, the narratives and technical literature provided by Reflection identify certain key physical characteristics of the window wall units to establish their differences from curtain walls; for example, that window wall units span a vertical distance between sequential floors in a building.  As such, the window wall systems do not envelope an entire wall or "the entire outer structure" as required by the Federal Circuit to constitute a curtain wall.  *See Yuanda 2019* at 1360.

Commerce considered all of the evidence and reasoned to the conclusion that the window wall system units at issue are different than curtain walls.  Commerce stated in the Scope Ruling: "Specifically, Reflection's window wall systems are inserted into the opening between the top of one floor slab and the underside of the next floor slab, and do not make up the entirety of the building's façade, like a curtain wall noted above."  *See* Appx01607 citing to Reflection's third supplemental response.   Commerce then went on to refer to the manner in which the Reflection window wall units are inserted into the wall  and how they are distinct from a curtain wall and noted:  "We find this difference crucial to whether a window wall system could be considered to be type of curtain wall, as the protrusion of the floor slabs themselves serve to demonstrate that the window wall system does not compose the entire façade of the building."  *Id.*

23

James White of Reflection had explicitly stated that window wall units span "floor-to-ceiling," not "floor-to-floor" as might be found in curtain walls and that these two products (window wall units and curtain walls) exhibit different engineering, different designs and different means of attachment. *See* Appx80413. Consequently, Mr. White confirmed that "Window wall units and curtain wall units are not used interchangeably for the same project." *See* Appx80413.

In short, Commerce examined the physical differences between window wall systems and curtain wall units and accepted Reflection's information as credible establishing that Reflection's window wall system kits were modular stand-alone products qualifying as excluded finished goods kits.

### C. Commerce Found that All Required Components to Fully Assemble the Window Wall Units Were in the Reflection Window Wall System Kits.

In light of the evidentiary importance of each Form 7501 (Entry Summary) and associated packing list Commerce required Reflection to "provide the full set of entry documents for the last three entries of Reflection's window wall system kits; include in each set the Customs form 7501, invoice, shipping invoice, bill of lading, and all other pertinent documents." *See* Appx01098. Moreover, Commerce required Reflection to "clarify whether all components of Reflection's window wall systems enter the United States on the same Customs form 7501." *See* Appx01182. Thereafter, in the Reflection Scope Ruling Commerce confirmed, based in part on a sworn statement by James White of Reflection, that: "Every component composing the [

            ] kit, including accessory components (or "all primary and secondary parts and components"), for each unit is shipped to the United States in the same shipment." *See* Appx01590. To enable Commerce to make that determination Reflection also provided Commerce with entry documentation packages consisting of a CBP Form 7501, the commercial

24

invoice, the packing list, and the bill of lading.  *See id.*  Commerce found this evidence, taken as a whole, to be credible.

The detailed and annotated images on the record also support Reflection's statement that a number of secondary components (gaskets, cap seals, polyamide thermal break struts, foam baffles, silicone pads, sealant, and snaps) are added to or incorporated in the window wall system's primary components at the factory, which explains why these secondary components are not identified separately on the packing lists.  *See* Appx01134 - 01139; Appx80130, 80141.

The Declarations of James White, which are based on personal knowledge, an engineering background, and experience in over [     ] window wall projects, confirm that Reflection's "window wall systems are packed in complete kits" and are engineered "to allow break points in the façade."  *See* Appx080141 - 080142.

Commerce examined the quality of the evidence submitted by Reflection and examined the quality of the evidence provided by petitioner. Aside from [          ] Declaration, petitioner has not cited to any specific evidence regarding Reflection's products at issue. Moreover, the Declarations of James White are based on personal knowledge, identify significant academic and business experience, and reference the exact entries for which entry documents were provided to Commerce.  [          ] declaration, on the other hand, is devoid of details. [

     ] claims knowledge of certain unspecified [          ] provided to Reflection, but fails even to identify the project for which any such goods were intended.   He also fails to provide any corroborating information for his conclusions, and it is not clear what the legal conclusion would be even if [          ] had sold [          ].   Thus, Commerce had solid support for concluding that Reflection's statements regarding the completeness of the kits were supported by substantial evidence on the record.

25

Plaintiff claims that it cannot find a "reference" in part of Commerce's decision to various "product instructions, packing lists, entry summaries, photographs, or schematics." *See* Petitioner's Memorandum at 13. In fact, Commerce's decision clearly states that this evidence is contained in "the Scope Request and supplemental responses" (*see* Appx01603), which are footnoted with specificity in the Reflection Scope Ruling. *See* Appx0158 5- 01586; Appx01589 - 01592; Appx01598. Moreover, there is no question that the record contains extensive references to evidence establishing the completeness of Reflection's window wall system kits. *See* Reflection's narratives, charts and images in its January 9, 2020, first supplemental response (Appx8000 - 80085); Reflection's second supplemental response of March 16, 2020 (Appx01189), Reflection's third supplemental response of May 11, 2020 (Appx01300); Mr. White's declaration of April 8, 2020 (Appx80141); and Mr. White's subsequent declaration of July 22, 2020 (Appx80415).

Plaintiff believes that Commerce should have required even more evidence on the record. For example, Plaintiff wishes for schematics for specific building projects. Petitioner's Memorandum at 15. However, Plaintiff fails to acknowledge that Commerce already had a detailed list of all of the components contained in the entries, statements that the components were delivered to the job site in their entirety in an unopened crate for unpacking and attachment to the building, and that there were no other components that were later added to the window wall system units. As discussed in the Reflection Scope Ruling (Appx01605 - 01606), record evidence included representative packing lists (Appx80035 - 80040, Appx80046 - 80051, Appx80057 - 80062); bills of lading (Appx80041, Appx80052, Appx80062); photographs of the goods unassembled (Appx80065 - 80072) and crated (Appx80074 - 80078), technical literature (Appx80225 - 80348) and a chart identifying individually all window wall system parts in a kit, indicating a primary and

secondary description for the parts and describing the material of the parts (extruded aluminum, non-extruded aluminum or non-aluminum)(Appx80080 - 80085).

The sworn statements of Mr. James White of Reflection and supporting evidence confirm that as a matter of necessity for assembly at the construction site, the window wall system kits incorporated all components in the kit; that the kits were delivered to the jobsite in their entirety; and that no other components were added to the window wall system kit assemblies at the jobsite. *See* Appx01006; Appx01122-01123; Appx01317; Appx80010; Appx80130-80132. In light of the substantial and detailed evidence provided by Reflection, the fact that Commerce declined to request redundant information from Reflection is not surprising.

Plaintiff's desire for even more evidence does not mean that the Commerce decision was unsupported by substantial evidence. Commerce considered the detailed evidence presented, considered the credibility of the submissions, and reasonably found that the evidence presented, on the record, supported Reflection's contention that its window wall systems qualified as a finished goods kit excluded from the subject Orders.

In the past Commerce has issued window wall system kit scope rulings based on "pictures, parts lists, and schematics of the ribbon windows at issue." *See* <u>IAP Enclosures</u> scope ruling. Appx01651. Petitioner acknowledges that Commerce's decision in the subject scope ruling rested upon "narrative statements, product instructions, packing lists, entry summaries, photographs, and schematics." *See* Petitioner's Memorandum at 12.

Plaintiff contends that "the agency disregarded the substantial amount of information that AEFTC highlighted … indicating that Reflection's imported products cannot be assembled as is into finished products." *See* Petitioner's Memorandum at 16. But Plaintiff misstates the applicable legal standard. The issue before the Court is whether a reasonable mind could accept the evidence

as adequate to support the agency's conclusion and not whether Commerce could have come to a different conclusion based on the record evidence.  Substantial evidence is "more than a mere scintilla" of supportive record information. *See Altx, Inc. v. United States*, 370 F.3d 1108, 1116 (Fed. Cir. 2004) (quoting *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *See e.g. Sunpreme Inc. v. United States*, 946 F.3d 1300, 1308 (Fed. Cir. 2020). It is "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966); *see Dongtai Peak Honey Indus. Co. v. United States*, 971 F. Supp. 2d 1234, 1238 (Ct. Int'l Trade 2014), *aff'd*, 777 F.3d 1343, 1349 (Fed. Cir. 2015); .  The Court must sustain Commerce's determination if it is "reasonable and supported by the record as a whole, even if some evidence detracts from {Commerce's} conclusion." *Altx, Inc. v. United States*, 370 F.3d 1108, 1121 (Fed. Cir. 2004).  "Where Congress has entrusted an agency to administer a statute that demands inherently fact-intensive inquiries, the agency's conclusions fail only if the record contains evidence 'so compelling that no reasonable factfinder' could reach the same conclusion." *POSCO v. United States*, No. 17-00137, 2022 WL 124635, at *3 (Ct. Int'l Trade Jan. 13, 2022) citing *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483-84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)

Plaintiff' arguments were fully heard and rejected by Commerce.  Such consideration of Plaintiff's position included an *ex parte* conference with six high level Commerce personnel reviewing the information provided by Reflection and Petitioner – including  the Deputy Assistant Secretary for AD/CVD Operations; the Associate Deputy Assistance Secretary for AD/CVD Operations; two attorneys from Commerce's Office of the Chief Counsel for Trade Enforcement

and Compliance; a representative from Commerce's Office of Policy and Negotiations; a Program

Manager from Commerce's AD/CVD Operations, Office VI and the Department's Senior Analyst.

*See* Appx01542.  Yet, despite its best efforts and every available opportunity, Plaintiff simply was

unable to convince Commerce that Plaintiff's position was more credible than that of Reflection.

### D.  Commerce's Scope Ruling is a Well-Reasoned Decision.

In making its decision, Commerce relied upon nine earlier scope rulings (the very same

rulings Plaintiff relies on in this appeal) to supports its analytical approach.  *See* Appx80119;

Appx80392.  *See also* Appx80134-80136; Appx80405-80407.  Each of these rulings was specific

to aluminum extrusions and all involved a "finished goods kit" inquiry.  Five of the scope rulings

were specific to window wall systems or curtain wall/curtain wall units.  Many of the scope rulings

relied upon prior rulings.  For example, the <u>Meridian Trim Kits</u> scope ruling relied on six prior

aluminum extrusion scope rulings, each involving a "finished goods kit" or "finished goods"

inquiry.  *See* Appx01658 – 01660.  The <u>NR Windows Window Wall Kits</u> scope ruling relied upon

three prior scope rulings specific to window wall units or curtain wall units.  *See* Appx01671-

01672.  The <u>Yuanda Curtain Wall Unit</u> scope ruling relied upon five prior aluminum extrusions

scope rulings involving a "finished goods" or "finished goods kit" determination, plus the

Preliminary Scope Memorandum.  *See* Appx01692-01695.

Commerce's scope ruling also demonstrates that the Department analyzed relevant court

cases; specifically, *Meridian Products LLC v. United States*, Ct. No., 13-00018, Slip. Op. 15-67

(June 23, 2015) (*Meridian Products*)*(Ct. Int'l Trade); Meridian Prods., LLC v. United States*, 851

F.3d 1375, 1385 (Fed. Cir. 2017) (*Meridian II*) (*See* Appx01594); *Shenyang Yuanda 2019*, 918

F.3d 1355, 1367-68 (Fed. Cir. 2019); and *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United

States,* 961 F. Supp. 2d 1291 (CIT 2014), *aff'd,* 776 (*See* Appx01595).  Thus, it is apparent that

the Plaintiff is not complaining about a failure by Commerce to analyze those prior rulings but is only complaining about Commerce's refusal to accept Plaintiff's arguments.

Petitioner's submission of July 13, 2020, acknowledged the information that Reflection put on the record but simply questioned the credibility of the Reflection information.  In questioning whether the window wall system kits qualified as a "finished goods kit" Petitioner's argument relied upon "The record evidence, including Reflection's own statements….:"  *See* Appx80355. Petitioner, for example, referenced "the packing lists and entry documents that (Reflection) provided with its scope request…."  *See* Appx80358.  On the one hand Petitioner references the record evidence and cites to specific documents (packing lists and entry documents) in specific submissions, but on the other hand seems to claim that Commerce failed to reference those very documents, including packing lists and entry summaries.  *See* Petitioner's Memorandum at 13. Petitioner knows the exact documents referenced by Commerce and Petitioner knows exactly where to find those documents in the record.

It is also significant that Commerce addressed the fact that a particular window wall unit might not be entirely contained in the same shipping crates or boxes.  In its scope ruling, Commerce referenced the entry summaries (Form 7501s), packaging and shipment of the goods (including the specific code on each shipping crate with installation and placement instructions) and determined that "Reflection's window wall system kits' carton and crates enter the United States under the same 7501 Entry Summary form, and are not re-packaged before being installed by the end-user after importation (as Reflection is the end user)."  *See* Appx01606.  Commerce based its conclusions on prior scope rulings, notably the <u>Hand-E-Shutters Kits</u> scope ruling, and concluded "consistent with its prior scope rulings, Commerce finds that Reflection's window wall system kits satisfy the finished goods kit exclusion."  *See* Appx01606.  Commerce was also careful

to document each finding with a footnote citing to the evidence on the record. In other words, Commerce examined the evidence on the record, applied the law to that evidence, and reached a well-reasoned conclusion concerning the packaging of the subject goods.

Commerce also considered whether, in accordance with the <u>Geodesic Domes Kit</u> scope ruling and the <u>Meridian Trim Kits</u> scope ruling, the subject window wall system kits contain non-aluminum extrusions beyond mere fasteners. Commerce based its determination on the detailed chart that Reflection prepared according to Commerce's exact instructions, which chart identified every part in the window wall assembly kit and indicated whether the part included extruded aluminum, non-extruded aluminum or non-aluminum components or materials. *See* Appx01606; Appx80079-80085. Accordingly, Commerce applied the law to the evidence on the record and concluded: "Because Reflection's window wall system kits consist of both aluminum extrusions and non-extruded aluminum components that go beyond mere fasteners, we find that Reflection's window wall system kits meet this criterion of a finished goods kit." *See* Appx01606.

Commerce further analyzed whether the subject window wall system kits are a type of curtain wall or could be substituted for curtain wall. In its determination on this issue Commerce initially cited to the definition of curtain walls and curtain wall units as upheld by the courts including *Shenyang Yuanda 2019*. *See* Appx01607. Thereafter, Commerce noted that "Reflection's window wall systems are distinct from both curtain wall units and curtain walls" because "Reflection's window wall systems are inserted into the opening between the top of one floor slab and the underside of the next higher floor slab, and do not make up the entirety of the building's façade, like a curtain wall noted above." *See id.* Commerce's scope ruling established that this conclusion was based on the technical literature and product brochures submitted with Reflection's third supplemental response (*see* Reflection Scope Ruling footnote 140, Appx01607),

NON-CONFIDENTIAL VERSION

which were specific to the RWW-8000, RWW-9000, RWW9500 and RWW-12000 series of window wall systems.  *See* Appx80147.  Once again, then, Commerce identified the evidence on the record, applied the law to that record evidence and arrived at a well-reasoned conclusion.

In light of the above reasoning and analysis, Commerce's decision passes muster in that it reasons to a conclusion based on the facts before it in a manner that can be followed by a reviewing court.    The court "uphold{s} a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Bowman Transp. Inc. v. Arkansas Best Freight Sys.*, 419 U.S. 281, 286 (1974)); *Ceramica Regiomontana, S.A. v. United States*, 810 F.2d 1137, 1139 (Fed. Cir. 1987).

Having failed to directly attack the evidence on the record or the reasoning of Commerce, Plaintiff places heavy reliance on its sole "expert," [              ] who claims that: "In fact, curtain walls and window walls can be used interchangeably for the same projects" and that: "Once a bid is accepted and procurement begins, however, due to Chinese importers attempts to avoid duties subcontractors supplying curtain walls will frequently pitch window walls as a more cost-efficient alternative to curtain walls, and the building will subsequently be built with window walls as the glazing system."  *See* Appx80392.  Those comments fail for two reasons.  First, these statements by petitioner's "expert" are contrary to the well-established definition and use of window walls and curtainwalls accepted by Commerce and the courts.  For example, in the <u>NR Windows</u> scope ruling Commerce stated "We further find that the window wall kits at issue are distinct from the previously examined curtain wall parts, which the Department found to be inside the scope of the Orders, in that unlike curtain walls, window walls do not envelope or enclose the entire façade of the building."  *See* Appx01674.  *See also* the <u>Ventana Window Walls</u> scope ruling wherein Commerce stated "the Department has concluded in past determinations that window walls and

curtain wall units share some physical characteristics, but window walls, once assembled, compose a finished product, while curtain walls units do not, but instead remain parts of curtain walls, which are expressly included in the scope of the *Orders*.  Unlike curtain walls, which are composed of interlocking curtain wall unit parts, window walls do not envelop the side of the building, but instead each window wall is placed directly into the structure of the wall of the building – unattached to other window walls." *See* Appx01723. *See also Shenyang Yuanda Aluminum Indus. Eng'g. Co. v. United States,* 961 F. Supp. 2d 1291, 1298 (Ct. Int'l Trade 2014) noting "{I}t is apparent that the Orders separately and intentionally distinguish windows from curtain wall units, and that the 'finished merchandise' exception does not encompass curtain wall units."

Second, [             ] declarations fail because substitutability is not the applicable legal standard.  Plaintiff's "substitution" argument was explicitly considered and emphatically rejected by Commerce:

> The petitioner's emphasis, however, was on the possibility that Reflection's window wall systems could be substituted for curtain walls as a means to circumvent the *Orders*. The petitioner argued that, by changing the design for the building from a curtain wall façade to one which accepted inserted window wall units, the designer and owner could substitute Reflection's window wall systems for curtain walls. Disregarding Reflection's responses and accepting *arguendo* the petitioner's contention on its face, we do not find it compelling. That a building's designer and owner could change the design of the building from using subject merchandise to using non-subject merchandise <u>has no bearing on the question</u> of whether the latter actually constitutes non-subject merchandise before us in this scope ruling.

*See* Appx01607 (Emphasis added).

In short, Plaintiff's claim that Commerce's determination directly conflicts with the Department's established practice in prior scope rulings involving aluminum extrusions was correctly rejected by Commerce.  A review of Plaintiff's argument confirms that it is largely premised on the unfounded and dismissed claim that Reflection's window wall units are "similar to the curtain wall units that Commerce has previously found to be within the scope of the

33

Orders….." *See id.* As such, Plaintiff's argument is contrary to the facts on the record and contrary to the finding of Commerce as to the nature of the window wall units at issue.

## VI.    CONCLUSION

For the reasons set forth above, the Plaintiff's Motion should be denied and the determination of the Department of Commerce regarding the Reflection imports at issues should be affirmed.

Dated: March 1, 2022                              Respectfully submitted,

                                                  _____
                                                  Robert D. Stang, Esq.
                                                  Jeffrey S. Neeley, Esq.

                                                  **HUSCH BLACKWELL LLP**
                                                  750 17th Street, NW
                                                  Washington, DC 20006
                                                  (202) 378-2334
                                                  robert.stang@huschblackwell.com
                                                  jeffrey.neeley@huschblackwell.com

                                                  *Counsel for Reflection Window + Wall, LLC*

NON-CONFIDENTIAL VERSION

**Ct. No. 21-00253**

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Relection Window + Wall, LLC Memorandum In Opposition to Rule 56.2 Motion for Judgment on the Agency Record, as computed by Husch Blackwell's word processing system (Microsoft Word), is 11,782 words.

/s/ Jeffrey S. Neeley
(Signature of Attorney)

Jeffrey S. Neeley
(Name of Attorney)

Reflection Window + Wall, LLC
(Representative Of)

March 1, 2022
(Date)