IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| _____ ) | |
| ALUMINUM EXTRUSION FAIR TRADE ) COMMITTEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 21-00253 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| REFLECTION WINDOW + WALL, LLC, ) | |
| ) | |
| Defendant-Intervenor. ) | |
| _____) | |

**DEFENDANT'S PUBLIC RESPONSE TO PLAINTIFF'S**
**<u>RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD</u>**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:                          ANN C. MOTTO
LESLIE M. LEWIS                      Trial Attorney
Attorney                             Commercial Litigation Branch
Office of the Chief Counsel          U.S. Department of Justice
  for Trade Enforcement and Compliance   Civil Division
U.S. Department of Commerce          P.O. Box 480
Washington, D.C.                     Ben Franklin Station
                                     Washington, D.C. 20044
                                     Tel: (202) 353-7968
                                     Fax: (202) 305-2062
                                     Email: ann.c.motto@usdoj.gov

March 1, 2022                        *Attorneys for Defendant United States*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

STATEMENT PURSUANT TO RULE 56.2 ...........................................................................2

I.      Administrative Determination Under Review ...................................................... 2

II.      Issue Presented For Review ................................................................................2

STATEMENT OF FACTS ......................................................................................................2

I.      The Antidumping And Countervailing Duty Orders ............................................2

II.      Commerce's Prior Scope Rulings Involving Window Wall Products And The
        Federal Circuit's Interpretation Of The "Finished Goods Kit" Exclusion Pursuant
        To The Orders ....................................................................................................4

        A.  The Original Antidumping And Countervailing Duty Investigations
            Resulting In Commerce's Final Scope Of The Orders ...................................4

        B.  Geodesic Domes Kits Scope Ruling .............................................................5

        C.  Meridian Trim Kits Scope Ruling .................................................................5

        D.  Window Wall Kits Scope Rulings .................................................................7

III.     Reflection Window Wall Scope Proceeding.........................................................8

SUMMARY OF THE ARGUMENT .................................................................................... 14

ARGUMENT ...................................................................................................................... 15

I.      Legal Standards................................................................................................. 15

        A.  Standard Of Review ................................................................................... 15

        B.  Legal Framework For Scope Rulings ......................................................... 16

II.      Commerce Reasonably Determined That Four Series Of Reflection's Window
        Wall System Kits Constitute "Finished Goods Kits" Excluded From The Scope
        Of The Orders ................................................................................................. 18

        A.  Commerce's Determination That Four Series Of Reflection's Window Wall
            System Kits Satisfy The "Finished Goods Kit" Exclusion Is Consistent With
            The Orders' Plain Language ....................................................................... 18

B.  Commerce's Determination That Four Series Of Reflection's Window
    Wall System Kits Satisfy The "Finished Goods Kit" Exclusion Is
    Supported By Substantial Evidence And In Accordance With Law ..........................22

III.    Plaintiff's Remaining Arguments Lack Merit ....................................................35

CONCLUSION..........................................................................................................43

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Am. Silicon Techs. v. United States*,
    261 F.3d 1371 (Fed. Cir. 2001) ................................................................. 15

*Arcelormittal Stainless Belg. N.V. v. United States*,
    694 F.3d 82 (Fed. Cir. 2012) .................................................................... 16

*Comm. for Fair Beam Imps. v. United States*,
    477 F. Supp. 2d 1313 (2007), *aff'd*, 260 F. App'x 302 (Fed. Cir. 2008) ................................ 31

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197 (1938) ............................................................................ 15

*Crawfish Processors All. v. United States*,
    483 F.3d 1358 (Fed. Cir. 2007) ................................................................. 15

*Dong-A Steel Co. v. United States*,
    475 F. Supp. 3d 1317 (Ct. Int'l Trade 2020) ............................................... 32-33

*Encino Motorcars, LLC v. Navarro*,
    138 S. Ct. 1134 (2018) ......................................................................... 21

*Fujitsu Gen. Ltd. v. United States*,
    88 F.3d 1034 (Fed. Cir. 1996) .................................................................. 15

*Glob. Commodity Grp. LLC v. United States*,
    709 F.3d 1134 (Fed. Cir. 2013) ................................................................. 16

*Goldlink Indus. Co. v. United States*,
    431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ................................................. 16

*Jacobi Carbons AB v. United States*,
    422 F. Supp. 3d 1318 (Ct. Int'l Trade 2019) ................................................. 31

*King Supply Co. v. United States*,
    674 F.3d 1343 (Fed. Cir. 2012) ....................................................... 16, 28, 29

*Meridian Prods., LLC v. United States*,
    851 F.3d 1375 (Fed. Cir. 2017) ........................................................... passim

*Meridian Prods., LLC v. United States,*
   890 F.3d 1272 (Fed. Cir. 2018) .................................................................. 21

*Mid Continent Nail Corp. v. United States,*
   725 F.3d 1295 (Fed. Cir. 2013) .................................................................. 16

*Nucor Corp. v. United States,*
   594 F. Supp. 2d 1320 (Ct. Int'l Trade 2008), *aff'd*, 601 F.3d 1291 (Fed. Cir. 2010) ............... 23

*Perfectus Aluminum, Inc. v. United States,*
   391 F. Supp. 1341 (Ct. Int'l Trade 2019), *aff'd*, 836 F. App'x 883 (Fed. Cir. 2020) .............. 17

*Russ Berrie & Co. v. United States,*
   57 F. Supp. 2d 1184 (Ct. Int'l Trade 1999) ................................................... 21, 22

*Sandvik Steel Co. v. United States,*
   164 F.3d 596 (Fed. Cir. 1998) .................................................................. 16

*Sango Int'l L.P. v. United States,*
   484 F.3d 1371 (Fed. Cir. 2007) ................................................................ 15

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States,*
   961 F. Supp. 2d 1291 (Ct. Int'l Trade 2014) .................................................. 38

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States,*
   776 F.3d 1351 (Fed. Cir. 2015) ................................................................ 38

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States,*
   279 F. Supp. 3d 1209 (Ct. Int'l Trade 2017) ............................................... 38, 39

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States,*
   918 F.3d 1355 (Fed. Cir. 2019) ........................................................ 38, 39, 41

*Tak Fat Trading Co. v. United States,*
   396 F.3d 1378 (Fed. Cir. 2005) ................................................................ 17

*Whirlpool Corp. v. United States,*
   890 F.3d 1302 (Fed. Cir. 2018) ............................................................ 16, 17

## **Statutes**

19 U.S.C. 1516a .................................................................................. 15

**Regulations**

19 C.F.R. § 351.225 (Apr. 1, 2021 ed.) .................................................................. passim

**Other Authorities**

*Aluminum Extrusions from the People's Republic of China*,
   76 Fed. Reg. 30,650 (Dep't of Commerce May 26, 2011)................................ passim

*Aluminum Extrusions from the People's Republic of China*,
   76 Fed. Reg. 30,653 (Dep't of Commerce May 26, 2011)........................................ 2

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing
   Duty Laws*, 86 Fed. Reg. 52,300 (Dep't of Commerce Sept. 20, 2021).................................. 14

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE

_____
                                                          )
ALUMINUM EXTRUSION FAIR TRADE              )
COMMITTEE,                                                )
                                                          )
                    Plaintiff,                            )
                                                          )
            v.                                            )          Court No. 21-00253
                                                          )
UNITED STATES,                                            )
                                                          )
                    Defendant,                            )
                                                          )
            and                                           )
                                                          )
REFLECTION WINDOW + WALL, LLC,             )
                                                          )
                    Defendant-Intervenor.                 )
_____  )

**DEFENDANT'S PUBLIC RESPONSE TO PLAINTIFF'S**
**RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade,

defendant, the United States, respectfully submits this response in opposition to the motion for

judgment upon the agency record submitted by plaintiff, Aluminum Extrusion Fair Trade

Committee (plaintiff or AEFTC).  Plaintiff challenges the final scope ruling by the United States

Department of Commerce (Commerce), finding that four series of window wall system kits

imported by Reflection Window + Wall, LLC (Reflection) are excluded from the scope of the

antidumping and countervailing duty orders on aluminum extrusions from the People's Republic

of China.  As demonstrated below, Commerce's determination that four series of window wall

system kits imported by Reflection are excluded from the scope of the orders is supported by

substantial evidence and otherwise in accordance with law.  Accordingly, the United States

respectfully requests that this Court sustain Commerce's scope ruling and deny the plaintiff's

motion.

## STATEMENT PURSUANT TO RULE 56.2

### I.  Administrative Determination Under Review

In May 2011, Commerce issued antidumping and countervailing duty orders on aluminum extrusions from China.  *See Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 30,650 (Dep't of Commerce May 26, 2011) (antidumping duty order) (AD Order); *Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 30,653 (Dep't of Commerce May 26, 2011) (countervailing duty order) (CVD Order) (collectively, the *Orders*).

The administrative determination under review is Commerce's final scope ruling on four series of Reflection's window wall systems pursuant to the *Orders*.  *See* Appx01584-01609, *Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China: Final Scope Ruling Reflection Window + Wall, LLC's Window Wall System Kits* (Dep't of Commerce Apr. 26, 2021) (Final Scope Ruling) and Appx01610-01736, Attachments (relevant prior scope memoranda).

### II.   Issue Presented For Review

Whether Commerce's determination that four series of window wall system kits imported by Reflection constitute "finished goods kits" excluded from the scope of the *Orders* is supported by substantial evidence and in accordance with law.

## STATEMENT OF FACTS

### I.  The Antidumping And Countervailing Duty Orders

In May 2011, Commerce issued the antidumping and countervailing duty orders on aluminum extrusions from China.  The scope of the *Orders* includes, in relevant part, "aluminum extrusions which are shapes and forms, produced by an extrusion process, made from aluminum

alloys having metallic elements corresponding to the alloy series designations published by The Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary equivalents or other certifying body equivalents)." *Orders*, 76 Fed. Reg. at 30,650.

The scope language states: "Aluminum extrusions are produced and imported in a wide variety of shapes and forms, including, but not limited to, hollow profiles, other solid profiles, pipes, tubes, bars, and rods." *Id*. The scope language further provides:

> Subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to, window frames, door frames, solar panels, curtain walls, or furniture. Such parts that otherwise meet the definition of aluminum extrusions are included in the scope. The scope includes the aluminum extrusion components that are attached (*e.g.*, by welding or fasteners) to form subassemblies, *i.e.*, partially assembled merchandise *unless imported as part of the finished goods 'kit' defined further below*. The scope does not include the non-aluminum extrusion components of subassemblies or subject kits.

*Id*. at 30,650-51 (emphasis added).

Accordingly, the scope of the *Orders* contains an exclusion for "finished goods kits" that contain aluminum extrusions from China that enter the United States unassembled. Specifically, the scope defines a finished goods kit as:

> {A} packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled "as is" into a finished product. An imported product will not be considered a "finished goods kit" and therefore excluded from the scope of the {*Orders*} merely by including fasteners such as screws, bolts, etc. in the packaging with an aluminum extrusion product.

*Id*. at 30,651. The scope of the *Orders* also contains an exclusion for finished, assembled merchandise:

> The scope excludes finished merchandise containing aluminum

> extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels.

*Id*.

## II. Commerce's Prior Scope Rulings Involving Window Wall Products And The Federal Circuit's Interpretation Of The "Finished Goods Kit" Exclusion Pursuant To The Orders

As Commerce explained in the Final Scope Ruling in this case, it has previously issued scope rulings involving window wall products and the "finished goods kit" exclusion pursuant to the *Orders*. Appx01592-01595; *see* Appx01610-01736. Commerce placed these prior scope rulings on the record in this case. *See* Appx01610. Additionally, Commerce's interpretation of the "finished goods kit" exclusion has been upheld by the United States Court of Appeals for the Federal Circuit. *See Meridian Prods., LLC v. United States*, 851 F.3d 1375 (Fed. Cir. 2017); Appx01594. Because they provide relevant background for this case, we briefly discuss these prior scope rulings and the *Meridian* case below.

### A. The Original Antidumping And Countervailing Duty Investigations Resulting In Commerce's Final Scope Of The Orders

Commerce first articulated the parameters of the "finished goods kit" exclusion pursuant to the *Orders* in the original AD and CVD investigations. *See* Appx01592; Appx01620-01634 (Investigation Preliminary Scope Memorandum). In the preliminary scope memorandum, Commerce found that it was unable to determine whether importer, Nexxt Show's, unassembled pavilion kits included all of the necessary materials to assemble the finished product. Appx01632. However, Commerce stated that "{i}f at the time of importation, however, the kits do contain all the necessary parts to fully assemble a final finished good then they would be excluded from the scope of these proceedings." *Id.*; *see* Appx01592. As a result, Commerce

4

included the "finished goods kit" exclusion in the final scope language. *Orders*, 76 Fed. Reg. at 30,650-51.

**B. <u>Geodesic Domes Kits Scope Ruling</u>**

In the Geodesic Domes Kits scope ruling, Commerce found that geodesic structure kits consisting of extruded aluminum poles, nuts, bolts, washers and assembly instructions did not satisfy the terms of the "finished goods kit" exclusion. Appx01644-01646 (Geodesic Domes Scope Ruling). Commerce reasoned that the extruded aluminum poles contained in the kit required no further fabrication for assembly and once assembled could be considered a finished good. Appx01646. However, based on the *Orders*' scope language that a product will not meet the "finished goods kit" exclusion "merely by including fasteners such as screws, bolts, etc. in the packaging with an aluminum extrusions product," Commerce concluded that the geodesic domes kits did not satisfy the "finished goods kit" exclusion because the kits "consist{ed} solely of extruded aluminum tubes and fasteners{.}" *Id.*; *see Orders*, 76 Fed. Reg. at 30,651. Non-extruded aluminum components contained in a kit with subject aluminum extrusions must be more than mere fasteners to qualify for the exclusion. *See id*.

**C. <u>Meridian Trim Kits Scope Ruling</u>**

As stated above, Commerce's interpretation of the "finished goods kit" exclusion has been upheld by the Federal Circuit. In a line of cases involving refrigerator/freezer trim kits, the Federal Circuit interpreted the *Orders*' language pertaining to the "finished goods kit" exclusion. *See Meridian*, 851 F.3d at 1383-84; Appx01594. First, "a finished goods kit must contain more than only aluminum extrusion parts necessary for final assembly." *Meridian,* 851 F.3d at 1384 (citing *Orders*, 76 Fed. Reg. at 30,651) (describing the finished goods as those "*containing* aluminum extrusions" packaged in a kit with a "combination of *parts*" (emphasis in original)).

In addition, "{q}ualifying language further narrows the exclusion by reinforcing that the 'mere{}' addition of fasteners will not bring a kit with only aluminum extrusions outside the scope of the Orders." *Id*. (citing *Orders*, 76 Fed. Reg. at 30,651). Finally, "the component parts of the kit relevant to the analysis are those parts in a 'packaged combination of parts' that are 'necessary . . . to fully assemble a final finished good,' regardless of additional materials that may be included in a kit's packaging, but which are not otherwise included in the final assembled product." *Id*. (citing *Orders*, 76 Fed. Reg. at 30,651). Therefore, to qualify for the "finished goods kit" exclusion, a product must contain (1) non-extrusion components that are not mere fasteners, and (2) all parts necessary to assemble a fully finished good at the time of entry into the United States. *See id.*

In the administrative scope segment underlying the *Meridian* decision, importer Meridian asked Commerce to find that its trim kits were excluded from the scope of the *Orders*. *See* Appx01594; Appx01654 (Meridian Refrigerator/Freezer Trim Kits Scope Ruling). However, based on Meridian's product description in its scope request, Commerce found that, aside from an assembly tool, fasteners, and an instruction booklet, the trim kits consisted entirely of aluminum extrusions. Appx01664. As Commerce explained, products that meet the initial requirements for inclusion into the finished goods kit exclusion may nonetheless fall within the scope of the *Orders* if Commerce finds that "they consist of solely extruded aluminum products." *Id.* Accordingly, consistent with the Geodesic Domes Kits scope ruling, Commerce determined that the trim kits did not meet the "finished goods kit" exclusion. *Id*. And the Federal Circuit affirmed Commerce's scope ruling. *Meridian*, 851 F.3d at 1384 (reversing and vacating the U.S Court of International Trade's decision remanding Commerce's scope ruling).

D. **Window Wall Kits Scope Rulings**

This case concerns Commerce's final scope ruling finding that four series of Reflection's window wall system kits are excluded from the scope of the *Orders*.  In two scope rulings involving window wall kits, Commerce found that window wall kits were excluded from the scope of the *Orders* under the "finished goods kit" exclusion.  *See* Appx01666-01675 (NR Windows Window Wall Kits Scope Ruling); Appx01714-01723 (Ventana Window Walls Scope Ruling).  As a result of these scope rulings, Commerce has identified certain characteristics of a window wall product distinct from curtain walls and curtain wall units.

First, in the NR Windows Window Wall Kits scope ruling, Commerce determined that window wall kits imported by NR Windows satisfied the "finished goods kit" exclusion because the kits contained "all of the necessary parts to be fully assembled, including the glass panes." Appx01674.  Notably, Commerce found that the window wall products at issue were distinct from curtain wall parts, which Commerce previously found were within the express scope language of the *Orders*, "in that unlike curtain walls, window walls do not envelop or enclose the entire façade of the building." *Id.*; *see* Appx01594.  "Rather, when inserted into the opening of a building, window walls leave significant areas of the building façade uncovered." Appx01675. And "unlike curtain walls, window walls are not specifically identified as subject merchandise in the scope of the *Orders*." *Id.*  Commerce's findings were consistent with record evidence which established that the American Architectural Manufacturers Association (AAMA) distinguishes between window walls and curtain walls:  window walls are defined as "fenestration systems" and curtain walls are defined as "exterior cladding." *Id.*

Second, in the Ventana Window Walls scope ruling, Commerce determined that customized window wall structures imported by Ventana were also excluded from the *Orders*'

scope under the "finished goods kit" exclusion.  *See* Appx01722-01723.  Upon reviewing the list of components included in the window wall kits as described in Ventana's scope ruling request, Commerce found that the packaged combination contains, at the time of importation, all the parts required to assemble a finished window wall, including the glass pane.  Appx01722.  Consistent with the NR Windows Window Wall Kit scope ruling, Commerce found significant that window walls do not envelop the façade of the building, "but instead each window is placed directly into the structure of the wall of the building – unattached to other window walls."  Appx01723.  Commerce stated that although window wall units and curtain wall units share some physical characteristics, "window walls, once assembled, compose a finished product, while curtain wall units do not, but instead remain parts of curtain walls, which are expressly included in the scope of the *Orders*.  *Id*.  Again, Commerce explained, "when inserted into the opening of a building, window walls leave significant areas of the building façade uncovered."  *Id*.

### III.  Reflection Window Wall Scope Proceeding

On August 7, 2019, Reflection, a United States corporation and domestic importer of customized window wall products, submitted an application requesting that Commerce issue a scope ruling that certain of its window wall system kits are outside the scope of the *Orders*.  *See* Appx01000-01059, Letter, "Aluminum Extrusions from the People's Republic of China: Request for Scope Ruling on Certain Window Wall System Kits" (Scope Ruling Request).  In its request, Reflection stated that it is an "architectural building enclosure company specializing in the engineering, pre-construction, and project management of façade construction" and that it is "focused exclusively on custom designed window wall systems{.}"  Appx01001.  Reflection specified that it "does not inventory or warehouse units or spare parts for later use" and that "{t}he foreign manufacturer produces, assembles and packs the window wall system kits

8

according to Reflection Windows' precise specifications and engineering." *Id.* Reflection

emphasized that its kits, as imported, are project-specific and contain "the exact components and

quantities needed to complete a window wall system for a specific project." Appx01003. Thus,

according to Reflection, "each imported window wall system kit is a fully finished (albeit

unassembled) window wall system that is delivered to the project site and installed 'as is.'"

Appx01001.

On September 23, 2019, Commerce rejected Reflection's August 7, 2019 submission

after determining that the request was missing information necessary for Commerce to make a

scope ruling. *See* Appx01096-01101, Letter, "Aluminum Extrusions from the People's Republic

of China: Request for Information Regarding Reflection Window + Wall, LLC's Scope Inquiry

on Window Wall System Kits. Accordingly, Commerce issued a supplemental questionnaire to

Reflection requesting additional information, including a chart identifying each individual part of

the kit and example packing lists identifying the product kit components. Appx01098.[1]

On January 9, 2020, Reflection refiled its scope ruling request with additional

information. *See* Appx01110-01160, Letter, "Aluminum Extrusions from the People's Republic

of China: Request for Scope Ruling on Certain Window Wall System Kits Qualifying as a

Finished Goods Kit" (First Supplemental Response).

On March 11, 2020, Commerce rejected Reflection's January 9, 2020 submission after

determining it was missing certain necessary information and again issued a supplemental

---

[1] Reflection's original scope ruling application requested that all of its window wall
system kits be excluded from the scope of the *Orders. See* Appx01008-01009. Commerce
issued supplemental questionnaires in order to get a specific description of Reflection's products.
*See* Appx01098. As will be explained below, the only products that Reflection defined with
specificity were four series of its window wall systems and, thus, Commerce's final
determination excludes those four series, not all of Reflection's window wall systems.

questionnaire to Reflection.  *See* Appx01180-01185, Letter, "Aluminum Extrusions from the People's Republic of China: Request for Information Regarding Reflection Window + Wall, LLC's Scope Inquiry on Window Wall System Kits."  Commerce explained that it was "unclear whether Reflection included all of the additional information requested in" Commerce's supplemental questionnaire and, as a result, Commerce requested further information from Reflection.  Appx01180.

On March 16, 2020, Reflection refiled its scope ruling request along with supplemental questionnaire responses.  *See* Appx01186-01212, Letter, "Aluminum Extrusions from the People's Republic of China -- Request for Scope Ruling on Certain Window Wall System Kits Supplementary Response" (Second Supplemental Response).

On March 31, 2020, AEFTC submitted comments on Reflection's March 16, 2020, submission.  *See* Appx01221-01251, Letter, "Aluminum Extrusions from the People's Republic of China: Comments on Reflection Window and Wall, LLC's Scope Ruling Request".  On April 9, 2020, Reflection filed a rebuttal to AEFTC's comments.  *See* Appx01258-01278, Letter, "Aluminum Extrusions from the People's Republic of China: Rebuttal to {AEFTC}'s Comments" (Reflection First Rebuttal).

On April 28, 2020, Commerce rejected Reflection's March 16, 2020 submission, determining that "{i}t remains unclear exactly what products are included in Reflection's request for a scope ruling."  *See* Appx01281, Letter, "Aluminum Extrusions from the People's Republic of China: Request for Information Regarding Reflection Window + Wall, LLC's Scope Inquiry on Window Wall System Kits".  In the questionnaire, Commerce asked Reflection to, among other things, "provide a complete list of each discreet product (including the product series)" for which Reflection requested a scope ruling, as well as detailed explanations and lists of all

product variations within those series.  Appx01281-01282.

On May 11, 2020, Reflection refiled its scope ruling request with supplemental

questionnaire responses including a list of the product series subject to Reflection's request:

series RWW-8000, series RWW-9000, series RWW-9500, and series RWW-12000.[2]  *See*

Appx01301, Letter, "Responses to questions identified in Attachment I to the Department of

Commerce's letter of April 28, 2020 concerning Reflection Window's scope ruling request

specific to certain window wall systems" (Third Supplemental Response).  Consistent with the

AAMA's definition of window walls, Reflection described its four series of window wall

systems as "a single product; specifically, a thermally broken, butt glazed window wall system,

which is a non-load bearing fenestration system provided in combination assemblies and

composite units, including transparent vision panels and/or opaque glass or metal panels, which

span from the top of a floor slab to the underside of the next higher floor slab."  Appx01302.

Each series is "designed with a different window wall mullion depth and/or receptor system

depth."  Appx01301.  Reflection specified that its window wall products are not "exterior

cladding" which envelops or encloses the entire façade of a building.  Appx01318.  Reflection

asserted that "{w}hen a window wall system is fully installed within an opening in a building{,}

the system performs independently of other window wall systems in the building."  *Id*.

To summarize, Reflection described its products as completed—although unassembled—

window wall systems which incorporate primary components, and depending on the specific

custom design, a number of accessory components to install the completed product at the project

---

[2] Reflection requested a scope ruling on a fifth window wall system, series RWW-7000.
*See* Appx01301.  However, Reflection stated that RWW-7000 is in the design phase, and
therefore, not currently in commercial production.  *Id*.  Accordingly, Commerce determined that
the series RWW-7000 system is not the proper subject of a scope inquiry, and plaintiff does not
challenge this determination.  Appx01584, Appx01608.

site.  *See* Appx01317.  Primary components required to assemble Reflection's completed window wall system—each of which incorporates an aluminum extrusion part—include panels, head and sill receptors, jamb receptors and slab covers.[3]  Appx01319.  Reflection asserted that because its window wall systems are designed and engineered for a specific project, "the quantities of primary components and accessory components in each window wall system kit in each entry are the exact quantities necessary to assemble the window wall system kits covered by the subject entry."  Appx01320.

On July 13, 2020, AEFTC submitted comments.  *See* Appx01478-01516, Letter, "Aluminum Extrusions from the People's Republic of China: Comments on Reflection Window and Wall, LLC's Scope Ruling Request".  On July 22, 2020, Reflection filed a rebuttal to AEFTC's comments.  *See* Appx01517-01539, Letter, "Aluminum Extrusions from the People's Republic of China: Rebuttal to Petitioner's Comments of July 13, 2020," (Reflection Second Rebuttal).

On April 26, 2021, Commerce issued its final scope ruling in which it determined that Reflection's series RWW-8000, series RWW-9000, series RWW-9500, and series RWW-12000 window wall system kits are excluded from the scope of the *Orders*.  *See* Appx01584, Appx01608.  Consistent with 19 C.F.R. § 351.225(d) and (k)(1),[4] based on the language of the

---

[3] Reflection acknowledged that all shipments of window wall systems include panels, head receptors, and sill receptors, but that jamb receptors and slab covers may not be part of a particular window wall system depending on the design, and, as such, may not be included in a shipment.  *See* Appx01319; *see also* Appx01604.  However, jamb receptors and slab covers constitute primary components to assemble the specific four series of window wall systems as described by Reflection in its scope ruling request.  Appx01302-01304; Appx01590-01592.  Thus, Commerce's Final Scope Ruling applies to only the four series of Reflection's window wall system kits that include slab covers in the shipment.  *See* Appx01590-01592.

[4] Citations herein correspond with the April 1, 2021, edition of Commerce's regulations at 19 C.F.R. § 351.225, *et seq*.  In September 2021, Commerce published amendments to certain

12

*Orders* and the description of the products contained in Reflection's application for a scope ruling request and supplemental responses, as well as Commerce's previous scope rulings, Commerce determined that Reflection's window wall system kits were excluded from the scope of the *Orders* under the "finished goods kits" exclusion.  Appx01602-01608.  Because Reflection's application and the section 351.225(k)(1) factors were dispositive, Commerce did not consider the criteria under 19 C.F.R. § 351.225(k)(2).  *See* 19 C.F.R. § 351.225(d) (explaining that if Commerce can determine whether a product is included within the scope of an order "based solely upon the application and the descriptions of the merchandise referred to in paragraph (k)(1) of this section," Commerce "will issue a final ruling as to whether the product is included with order{.}").

Commerce found that the four series of window wall system kits constitute excluded "finished goods kits" because the entries contain, at the time of importation, all necessary parts for the end-user to fully assemble the completed window wall system and no further finishing or fabrication is required.  Appx01603-01604.  Commerce also found, consistent with the Geodesic Domes Kits scope ruling and *Meridian*, that Reflection's window wall system kits "consist of both aluminum extrusions and non-extruded aluminum components that go beyond mere fasteners."  Appx01606.  Specifically, the evidence Reflection submitted included a chart showing the composition of each individual part in the kits.  *Id.*  The chart identified several subcomponents "which are not aluminum at all (and numerous non-fastener components)."  *Id.*

---

of its scope regulations.  *See* Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws, 86 Fed. Reg. 52,300 (Dep't of Commerce Sept. 20, 2021).  The scope regulations as amended, however, do not apply to this case because Reflection's Scope Ruling Request was filed prior to November 4, 2021, when the amended regulations became effective.  For the Court's convenience, we have attached the April 2021 edition of Commerce's regulations at Addendum 1 of this brief.

Moreover, although Reflection's window wall systems may enter the United States in separate containers or crates, they still satisfy the "finished goods kit" exclusion because all necessary components to assemble the completed window wall system enter in the same entry, as demonstrated by entry documentation.  Appx01605-01606.

Following the publication of the Final Scope Ruling, plaintiff brought this action to challenge Commerce's scope determination.

## SUMMARY OF THE ARGUMENT

Commerce's determination that four series of Reflection's window wall system kits are excluded from the *Orders*' scope under the "finished goods kit" exclusion is supported by substantial evidence and in accordance with law.  Commerce reasonably determined that the window wall system kits constitute a packaged combination of parts containing, at the time of importation, all the necessary parts to fully assemble a completed window wall system and require no further finishing or fabrication.  Substantial record evidence—in the form of Reflection's scope ruling request and supplemental questionnaire responses and comments, the plain language of the *Orders*, and prior scope rulings related to window wall products—supports Commerce's determination.

Importantly, because Reflection's window wall systems are not dependent on other systems and do not compose or enclose the entire façade of a building but are inserted between slabs to cover an aperture from floor to ceiling, Commerce reasonably found that Reflection's window wall systems are distinct from curtain wall units, which interlock to form a complete curtain wall.  Thus, Commerce's determination that Reflection's window wall systems are excluded "finished goods kits" is reasonable and consistent with prior scope rulings.

14

AEFTC improperly asks the Court to re-weigh the record evidence that Commerce addressed and analyzed in its Final Scope Ruling. And many of AEFTC's arguments are explicitly addressed by the specific product description to which Commerce's Final Scope Ruling applies. Should Reflection import a window wall product that does not align with the product description, as outlined in Commerce's Final Scope Ruling, the exclusion otherwise granted pursuant to Commerce's determination simply would not apply. AEFTC's complaint should be dismissed.

## ARGUMENT

I. **Legal Standards**

A. **Standard Of Review**

The Court may review Commerce's Final Scope Ruling to determine "whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order." 19 U.S.C. § 1516a(a)(2)(B)(vi); *see Meridian*, 851 F. 3d at 1379; 19 C.F.R. § 351.225. This Court "must uphold a scope ruling unless {it finds the ruling} to be 'unsupported by substantial evidence on the record or otherwise not in accordance with law.'" *Sango Int'l L.P. v. United States*, 484 F.3d 1371, 1378 (Fed. Cir. 2007) (quoting 19 U.S.C. § 1516a(b)(1)(B)). "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Crawfish Processors All. v. United States*, 483 F.3d 1358, 1361 (Fed. Cir. 2007) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"Even if it is possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence." *Am. Silicon Techs. v. United States*, 261 F.3d 1371, 1376 (Fed. Cir. 2001) (citing *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1044 (Fed. Cir. 1996)). "{T}he court

may not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) (citations and internal quotations omitted) (second alteration in original). The Court grants "'significant deference to Commerce's interpretation of a scope order,' so long as Commerce's interpretation is not 'contrary to the order's terms,' and does not 'change the scope of the order.'" *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300 (Fed. Cir. 2013) (citing *Glob. Commodity Grp. LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013)). Indeed, a scope ruling involves "a highly fact-intensive and case-specific determination," *King Supply Co. v. United States*, 674 F.3d 1343, 1345 (Fed. Cir. 2012), making it "particularly within the expertise of {Commerce}," *Sandvik Steel Co. v. United States*, 164 F.3d 596, 600 (Fed. Cir. 1998).

### B. Legal Framework For Scope Rulings

Commerce is often called upon to determine whether a certain product is included within the scope of an antidumping or countervailing duty order because Commerce necessarily determines scope language in general terms. *Meridian*, 851 F.3d at 1379; *see* 19 C.F.R. § 351.225(a). The first step in considering whether a product is within the scope of an order is to consider the language of the order itself. *Arcelormittal Stainless Belg. N.V. v. United States*, 694 F.3d 82, 87 (Fed. Cir. 2012); *Meridian*, 851 F.3d at 1381; *Whirlpool Corp. v. United States*, 890 F.3d 1302, 1308 (Fed. Cir. 2018) (*Whirlpool III*). "If the scope is unambiguous, the plain meaning of the Orders' language governs." *Whirlpool III*, 890 F.3d at 1308 (quoting *Meridian*, 851 F.3d at 1381); *see Arcelormittal*, 694 F.3d at 87 ("the first step in a scope ruling proceeding is to determine whether the governing language is in fact ambiguous, and thus requires analysis

16

of the regulatory factors previously outlined").  "The question of whether a product meets the unambiguous scope terms then presents a question of fact reviewed for substantial evidence." *Whirlpool III*, 890 F.3d at 1308 (quoting *Meridian*, 851 F.3d at 1382).

Even if the scope language is unambiguous, Commerce may still support its determination with the sources listed in 19 C.F.R § 351.225(k)(1), including the descriptions of the merchandise contained in the petition,[5] the descriptions of the merchandise contained in the initial investigation pertaining to the order, and prior scope determinations by Commerce and determinations by the International Trade Commission (ITC). [6]  19 C.F.R. § 351.225(d), (k)(1). If Commerce determines that the application and descriptions of the merchandise contained in the (k)(1) sources are dispositive, Commerce issues a final scope ruling as to whether the product falls within the scope of the order.  *See* 19 C.F.R. § 351.225(d); *see also Tak Fat Trading Co. v. United States*, 396 F.3d 1378, 1382 (Fed. Cir. 2005).  Only when the (k)(1) sources are not dispositive will Commerce consider the additional criteria set forth in 19 C.F.R. § 351.225(k)(2): (i) the physical characteristics of the product; (ii) the expectations of the ultimate purchasers; (iii) the ultimate use of the product; (iv) the channels of trade in which the product is sold; and (v) the

---

[5] "Petition" as used in section 351.225(k)(1) refers to the petition submitted by the petitioner in the underlying AD/CVD investigation.

[6] Resort to (k)(1) sources may be unnecessary in certain circumstances because the language of the order is unambiguous.  *See Whirlpool III*, 890 F.3d at 1308 ("If the scope is unambiguous, the plain meaning of the Orders' language governs.").  Nevertheless, Commerce may use (k)(1) sources to support its determination.  In *Perfectus Aluminum, Inc. v. United States*, for example, the Court rejected plaintiff's argument that "reference to the 19 C.F.R. § 351.225(k)(1) factors – and particularly to prior scope rulings – means that Commerce must have determined that the text of the Orders is ambiguous."  *Perfectus Aluminum, Inc. v. United States*, 391 F. Supp. 1341, 1355 (Ct. Int'l Trade 2019), *aff'd*, 836 F. App'x 883 (Fed. Cir. 2020). The Court observed that "{p}rior to reaching the (k)(1) analysis, Commerce had determined that the plain language of the Orders sufficed to place the products at issue within the scope," that "Commerce's subsequent (k)(1) analysis is part of a 'belt-and-suspenders' approach," and that "it would be strange to penalize an agency's analytical thoroughness."  *Id*.

manner in which the product is advertised and displayed.  19 C.F.R. § 351.225(k)(2).  Here,

Commerce made its determination pursuant to sections 351.225(d) and (k)(1) and did not

consider the factors under section 351.225(k)(2).  Appx01602.

## II.    Commerce Reasonably Determined That Four Series Of Reflection's Window Wall System Kits Constitute "Finished Goods Kits" Excluded From The Scope Of The Orders

As we demonstrate below, Commerce reasonably determined that four series of

Reflection's window wall system kits (RWW-8000, RWW-9000, RWW-9500, and RWW-

12000) are excluded from the scope of the *Orders* under the "finished goods kits" exclusion.

Appx01602-01608.  In accordance with sections 351.225(d) and (k)(1), Commerce's

determination is supported by evidence on the record including the description of the window

wall system kits contained in Reflection's scope ruling application, the scope of the *Orders*'

language, and Commerce's previous scope rulings.  *See* 19 C.F.R. § 351.225(d), (k)(1).

Commerce's determination should, therefore, be sustained.[7]

### A. Commerce's Determination That Four Series Of Reflection's Window Wall System Kits Satisfy The "Finished Goods Kit" Exclusion Is Consistent With The Orders' Plain Language

Commerce's determination is consistent with the plain language of the *Orders*.  The

general scope language of the *Orders* covers aluminum extrusions:

> which are shapes and forms, produced by an extrusion process,
> made from aluminum alloys having metallic elements
> corresponding to the alloy series designations published by the
> Aluminum Association commencing with the numbers 1, 3, and 6
> (or proprietary equivalents) or other certifying body equivalents.

---

[7] Commerce did not initiate a formal scope inquiry pursuant to section 351.225(e). *Compare* 19 C.F.R. § 351.225(d) (ruling based upon the application), *with* 19 C.F.R. § 351.225(e) ("If {Commerce} finds that the issue of whether a product is included within the scope of an order … cannot be determined based solely upon the application and the descriptions of the merchandise referred to in paragraph (k)(1) … , {Commerce} will notify by mail all parties … of the initiation of a scope inquiry.").

*Orders*, 76 Fed. Reg. at 30,650.  Reflection's window wall system kits contain components of both aluminum extrusions and non-aluminum extrusions. Appx01602; *see* Appx01003 (acknowledging that each kit includes panels that "incorporate{} aluminum extrusions and non-aluminum extrusion parts.").  Reflection does not dispute that the aluminum extrusion components of its kits are subject to the general scope language of the *Orders*.  Appx01603.  Thus, Commerce found that Reflection's window wall system kits incorporate aluminum extrusions covered by the general scope language of *Orders*.  *Id*.  Accordingly, Commerce analyzed whether Reflection's window wall systems fall within the "finished merchandise" and "finished goods kit" exclusions.  *Id*.

Commerce found that Reflection's window wall systems are not excluded as "finished merchandise" because Reflection's window wall systems are not "fully and permanently assembled and completed at the time of entry." *Id*.[8]  Plaintiff does not challenge this conclusion.

Relevant here, Commerce also found that Reflection's window wall system kits are excluded under the "finished goods kit" exclusion.  As described above, the scope of the *Orders* contains an express exclusion for "finished goods kits."  *Orders*, 76 Fed. Reg. at 30,651; Appx01603.  A "finished goods kit" is defined as:

> {A} packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled "as is" into a finished product.  An imported product will not be considered a "finished goods kit" and therefore excluded from the scope of the {*Orders*} merely by including fasteners such as screws, bolts, etc. in the

---

[8] Commerce did not find it necessary to reach a determination on whether, in the alternative, Reflection's window wall systems constitute "subassemblies" under this exclusion because Commerce found the imported products excluded from the *Orders* under the "finished goods kit" exclusion.  *Id*. (citing Appx01012, Reflection asserting that its products constitute "subassemblies" excluded from the *Orders*).

packaging with an aluminum extrusion product.

*Orders*, 76 Fed. Reg. at 30,651.

Based on the record evidence, Commerce determined that Reflection's kits fall within the language of the "finished goods kit" exclusion because Reflection's window wall system kits constitute "a packaged combination of parts that contains, at the time of importation, all the parts necessary to assemble window wall systems by the end-users in the United States and requires no further finishing or fabrication."  Appx01603.

Additionally, Commerce reasoned that Reflection's window wall system kits entered the United States under the same 7501 Entry Summary form and are not re-packaged after importation before being installed by the end-user.  Appx01606; *see Orders*, 76 Fed. Reg. at 30,651 ("A finished goods kit is understood to mean a packaged combination of parts that contains, *at the time of importation*, all of the necessary parts to *fully assemble* a final finished good. . . .") (emphasis added).

Finally, consistent with the *Orders'* language, prior scope rulings, and *Meridian*, Commerce examined whether Reflection's kits contained non-aluminum extrusion components beyond mere fasteners.  Appx01606; *see Orders*, 76 Fed. Reg. at 30,651 ("An imported product will not be considered a "finished goods kit" and therefore excluded from the scope of the investigation merely by including fasteners such as screws, bolts, etc. in the packaging with an aluminum extrusion product.").  Commerce found that "Reflection's window wall system kits consist of both aluminum extrusions and non-extruded aluminum components that go beyond mere fasteners," including several non-fastener subcomponents that are not aluminum at all. Appx01606; *see Meridian,* 851 F.3d at 1384 (finding that, under the scope language of the exclusion, "a finished goods kit must contain more than only aluminum extrusion parts necessary

20

for final assembly." ).

Thus, four series of Reflection's window wall system kits meet the plain language of the "finished goods kit" exclusion because they contain, at the time of importation, all the necessary parts to fully assemble the finished window wall system, require no further finishing or fabrication, and include with the aluminum extrusion components more than mere fasteners. Appx01602-01606.

Plaintiff asserts throughout its brief that the "finished merchandise" and "finished goods kit" exclusions constitute "*narrow* exclusions to the general scope" and that such exclusions must be "narrowly construed" as exceptions to the remedial *Orders*.  ECF No. 22 (Pl. Br.) at 10 (emphasis added) (citing *Russ Berrie & Co. v. United States*, 57 F. Supp. 2d 1184, 1195 (Ct. Int'l Trade 1999)).  But exclusions that were expressly written into the *Orders*' scope language at the investigation stage are as much a part of the *Orders* as the general scope language.  *See Orders*, 76 Fed. Reg. at 30,650-51.  Nothing in the *Orders*' scope language indicates that its express exclusions, such as for "finished goods kits," should be construed in any particular manner.  All scope language, including any exclusions, must be interpreted fairly and consistent with its terms, in accordance with the plain language of the *Orders*' scope.  *Meridian Prods., LLC v. United States*, 890 F.3d 1272, 1277 (Fed. Cir. 2018) ("{T}he plain language of an antidumping duty order is paramount in determining whether particular products are included within its scope.") (internal quotations omitted)); *Meridian*, 851 F.3d at 1382-83 (affirming Commerce's determination that the unambiguous terms of *the exclusion*, as included in the original scope order, encompassed Meridian's products); *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134 (2018) (holding that because the remedial statute gives "no textual indication" that its express exemptions should be construed narrowly, "there is no reason to give them anything other than a

fair (rather than a narrow) interpretation.") (internal quotations omitted).

On the other hand, "{t}he Court will interpret {} exception{s} promulgated by Commerce *after* the issuance of the Order narrowly to preserve the efficacy of the Order." *Russ Berrie*, 57 F. Supp. 2d at 1194 (emphasis added). The "finished goods kit" exclusion was not added after the issuance of the *Orders*. Thus, AEFTC's claim that the exclusions expressly contained in the *Orders* are "narrow" finds no support in the language of the *Orders* themselves or binding precedent.

### B. Commerce's Determination That Four Series Of Reflection's Window Wall System Kits Satisfy The "Finished Goods Kit" Exclusion Is Supported By Substantial Evidence And In Accordance With Law

Contrary to plaintiff's assertions otherwise, Pl. Br. at 10-18, Commerce's determination is supported by substantial evidence. Commerce explicitly considered evidence that sections 351.225(d) and 351.225(k)(1) contemplate the agency will take into account: the scope of the *Orders*' language, the description of the four series of window wall system kits contained in Reflection's scope ruling application, and Commerce's previous scope rulings. *See* 19 C.F.R. § 351.225(d), (k)(1). As described above, Commerce's determination is consistent with the scope of the *Orders*' language.

Additionally, Commerce appropriately relied on the product description contained in Reflection's application for a scope ruling and (k)(1) descriptions of the merchandise pertaining to the *Orders* at issue. *See* 19 C.F.R. § 351.225(d) (ruling based upon the application and (k)(1) sources); 19 C.F.R. § 351.225(k)(1) (listing (k)(1) sources referenced in subsection (d), which Commerce may consider in its scope ruling pursuant to section 351.225(d), including descriptions of the merchandise and prior scope determinations made pursuant to the *Orders*). Indeed, Reflection provided a substantial amount of information on the record of this scope

segment to support its request.  *See* Appx01001-01059 (Reflection's Scope Ruling Request containing narrative statements and photographs of its window wall systems); Appx01113-01131, Appx01136-01156, Appx80023-80085 (First Supplemental Response containing supplemental narrative statements, documentary and photograph exhibits, charts identifying individual parts of complete window wall kits, and entry documents); Appx01186-01212 (Second Supplemental Response containing additional narrative responses and exhibits for the RWW-8000 series with each component identified in drawing); Appx01298-01353 (Third Supplemental Response containing additional narrative responses and documentary exhibits); Appx01258-01277, Appx80122-80142 (Reflection First Rebuttal containing narrative statements and a declaration).  Reflection also provided documentary, video and photograph exhibits that explain each series of its finished window wall system and installation.  *See* Appx01399-01471 (Third Supplemental Response, Exhibits C – F, containing technical literature, product brochures and instructions for four series of window wall systems).

AEFTC itself references at least six categories of documentary evidence that Reflection submitted on the record which support its request and Commerce's final determination, including Reflection's 7501 Entry forms, commercial invoices, packing lists, bills of lading, technical literature for its four series of window wall systems and three categories of photographs including photographs of window wall systems; photographs of the window wall systems' primary components; and photographs of packed and shrink-wrapped crates containing window wall system components.  Pl. Br. at 14-15.

As it must, Commerce weighed the evidence contained in Reflection's submissions.  *See Nucor Corp. v. United States*, 594 F. Supp. 2d 1320, 1356 (Ct. Int'l Trade 2008) ("It is well-established that it is an agency's domain to weigh the evidence{.}"), *aff'd*, 601 F.3d 1291 (Fed.

Cir. 2010). Generally, Reflection described its products as completed, albeit unassembled, window wall systems which incorporate primary components, and, depending on the specific design, a number of accessory components to install the completed window wall at the project site. *See* Appx01589-01592 (describing each series of Reflection's products in detail); Appx01113 ("Specifically, each imported window wall system kit is a fully finished (albeit unassembled) window wall system that is delivered to the project site and installed 'as is.'"); Appx01300 ("As imported, Reflection Window's window wall systems are shipped as a "finished goods kit{.}").

Commerce identified the record sources that substantiate Reflection's product description. Appx01589-01592 (citing 32 sources from five record submissions to support the product description), Appx01598-01602 (summarizing Reflection's rebuttal comments further describing the product), and Appx01606, n.135 (incorporating product description discussion by reference). Specifically, in response to Commerce's request to "provide a complete list of each discreet product (including the product series)," Reflection described its products as "thermally-broken, four-sided, structurally-glazed (*i.e.*, butt-glazed), imported window wall systems," consistent with the AAMA's definition of a window wall as a "fenestration system provided in combination assemblies and composite units, . . . which span from the top of a floor slab to the underside of the next higher floor slab."[9] Appx01300-01304; *see* Appx01589; Appx01675 (noting that window walls are a discreet product defined by the AAMA).

---

[9] The distinction between window walls and curtain wall units is important because curtain wall units (*i.e.,* "parts for final finished products that are assembled after importation, including … curtain walls") are expressly contained within the scope of the *Orders. See Orders*, 76 Fed. Reg. at 30,650-51. As explained above, in prior scope rulings involving window wall products, Commerce found that window wall products are distinct from curtain wall units. *See* Appx01674-01675. A curtain wall unit does not constitute a finished product because it is a distinct portion of the final finished product, shipped separately to be assembled with other

As Commerce explained, Reflection provided narrative statements and photograph exhibits indicating that for shipments to the United States, primary components are packaged together in crates marked by their specific project number and each crate is tagged with a packing list itemizing each component for the window wall system by package and project number, part number, floor number and sequence for assembly.  Appx01605.  Reflection explained how it separately packaged and labeled each part of its window wall systems in a manner which signifies each is part of the whole product:

> For example, the packing list associated with Entry 988-0842227-7 identifies Package 950-F2-R-27-P-1.  The "950" is the project code (*i.e.*, these window wall system kits are specific to the 950 M GFRC Factory project).  F2 is the specific floor on which this kit will be installed (*i.e.*, the 2nd floor).  R-27-P-1 identifies the crate sequence for the window wall system kits intended for the 2nd floor at the 950 project.  These identifying codes for each window wall system kit are also placed on each individual shrink wrapped kit.

*Id.* (citing Appx01189-01190, Second Supplemental Response; Appx01144-00149, Exhibit B.2 of First Supplemental Response; and Appx01055-01059, Exhibit C of Scope Ruling Request).

Moreover, Reflection explained that its four window wall systems are a "series" that incorporate the same engineering approach and the same materials, but are designed with a different window wall mullion depth and/or receptor system depth.  Appx01301-01302; *see* Appx01589-01592 (describing the physical characteristics of each series).  In each series, Reflection explained that the glass infill in the window wall system is mounted to the front face

---

curtain wall units, to compose a full, completed curtain wall.  *See* Appx01723; Appx01595, 01607.  A curtain wall is suspended from a building and covers the entirety of a building's façade.  Appx01607.  Much of the record evidence discussed in this portion of the Government's brief is intended to demonstrate that substantial evidence supports Commerce's broader determination that four series of Reflection's window wall system kits are distinguishable from curtain wall units, which fall within the express language of the *Orders'* scope.

of the surrounding four-sided metal frame—that is, the window wall system, fully assembled, is

the final finished product.  Appx01301 (describing how "{i}n all four of the . . . series," the

window wall system is mounted); Appx01589.  Reflection specified that its window wall

systems are designed only to span from the top of a floor slab to the underside of the next higher

floor slab.  Appx01302, Appx01305; *see* Appx01589; Appx01675 (noting that window walls

leave significant areas of the building façade uncovered).

Further, Commerce outlined Reflection's description of the components necessary to

assemble its finished window wall systems.  *See* Appx01590-01592 (citing Appx01302-01307,

Third Supplemental Response describing products by series, parts, dimensions, design and

installation, and listing all series product variations).  To show that individual window wall

systems are tantamount to completed products, Reflection identified four major or primary

components required to assemble its completed window wall systems, each of which

incorporates an aluminum extrusion part:  window panels, head and sill receptors, jamb

receptors, and slab covers.[10]  *See* Appx01590-1592, Appx01604-1605; Appx01115, Appx01135-

01143 (Exhibit B.1 of First Supplemental Response containing photographs of unassembled

---

[10] Reflection described the primary components in each of the four series in detail.
Appx01589-01592.  The window panels are "the glass or metal panels within the window wall
frame composing the infill, incorporating aluminum extrusion and non-aluminum extrusion
parts."  Appx01590 (citing Appx001320-01321, Third Supplemental Response).  Head and sill
receptors are the components that "sit in the building above and below the window wall panel
covering one or more panels, incorporating aluminum extrusion and non-aluminum extrusion
parts such as inserted polyamide thermal break struts and chased EDPM synthetic rubber
gaskets."  *Id.* (citing Appx01321-01322, Third Supplemental Response).  Window side jamb
receptors are the components that "sit in the building vertically on each side of the window wall
panel, incorporating aluminum extrusion and non-aluminum extrusion parts such as interior snap
trim, polyamide thermal break struts, and rubber gaskets."  *Id.* (citing Appx01322, Third
Supplemental Response).  "The slab cover is a one-piece aluminum extrusion, pre-drilled at the
factory, incorporating one non-aluminum extrusion part, the rubber gaskets."  *Id.* (citing
Appx01322-01323, Third Supplemental Response).

primary window wall system components); Appx01193-01211 (Third Supplemental Response containing technical diagrams of the four series of Reflection's window wall systems).

Reflection explained that accessory components to install the window wall system may change based on design, but typically include snaps, thermal break struts, gaskets, caps, silicone pads, end dam plates, baffles, splices, receptors, fins, beads, handles, locks and hinges. Appx01116.  Reflection explained that "the quantities of primary components and accessory components in each window wall system kit in each entry are the exact quantities necessary to assemble the window wall system kits covered by the subject entry."  *Id*.  Reflection also provided record evidence that all necessary primary and accessory components required for assembly of each window wall system are included in a complete kit, which enters under a single Customs entry.  *See* Appx80127 (Reflection First Rebuttal explaining that each package corresponds to a single entry and each entry includes a complete window wall system and finished goods kit), Appx80022 (Exhibit A of Reflection's Scope Ruling Request containing entry documents), and Appx80141-80142 (declaration from Reflection Executive VP James J. White stating that all window wall system kits contain all the necessary parts for assembly which enables the finished window wall system to be installed "as-is" into a building).

As Commerce explained in its Final Scope Ruling, Reflection also established with documentary evidence that every component composing the kit, including primary and accessory components for each system, is shipped to and enters the United States in the same entry at the time of importation.  *See* Appx01590 (citing Appx80141-80142, declaration of Mr. White explaining that "{r}egardless of how a window wall system is installed or the nature of the system (individual opening, complete floor, etc.) all primary and secondary parts … for assembly … are packed in complete kits, which in turn are imported under a single Customs entry.");

27

Appx80022 (containing entry documentation [

]); Appx01188-01189 (Second Supplemental Response identifying three sets of entry

documents, including 7501 Entry forms, packing lists and commercial invoices, for the last three

entries of Reflection's window wall system kits demonstrating that Reflection's products contain

all the necessary components for assembly as imported in the same entry);[11] Appx01339,

Appx01348 (Exhibits B.1 and B.2 of First Supplemental Response containing photographs of

unassembled primary window wall system components and crated components in Reflection's

U.S. warehouse).

Additionally, Commerce found that the four series of Reflection's window wall system

kits consist of both aluminum extrusions and non-extruded aluminum components that go

beyond mere fasteners.  Appx01606.  Specifically, as Commerce explained, Reflection's

submissions contained a chart showing at least 53 subcomponents in the kits that are not

aluminum at all and several of which are non-fastener components.  *Id.* (citing Appx01354,

Exhibit C of Third Supplemental Response containing charts).

Thus, Commerce's scope ruling is far from "limited and conclusory."  Pl. Br. at 12.

Commerce's determination cannot be reduced to a two-sentence excerpt and a few footnote

citations.  *Id.* (citing two sentences from Commerce's Final Scope Ruling).  To the contrary,

---

[11] Commerce ultimately excluded only those window wall systems that require slab covers to be assembled—that is, the specific four series of window wall systems defined by Reflection as identified in the Final Scope Ruling.  *See* Appx01604-01605.  The entry documentation cited reflects three entries that do not require slab covers and, therefore, would not be excluded from the scope of Commerce's ruling.  Nonetheless, the entry documentation supports Reflection's statements that each of its kits is shipped with all the necessary components under a single entry.

Commerce's determination is complex and fact-intensive. *See King Supply*, 674 F.3d at 1345 ("{A} scope ruling is a highly fact-intensive and case-specific determination."). And substantial evidence on the record demonstrates that, at the time of importation, Reflection's kits contain (1) non-extrusion components that are not mere fasteners, and (2) all parts necessary to assemble a fully finished good at the time of entry into the United States. *See Meridian,* 851 F.3d at 1384.

Contrary to plaintiff's claims otherwise, Pl. Br. at 12-13, Commerce plainly identified a "final finished good." Commerce identified "window wall systems" consistent with prior scope rulings related to similar window wall products. Appx01604 (stating unequivocally that "this ruling applies to four products specifically as they are defined here: . . . ."); *see* Appx01666 (NR Windows Window Wall Kits Scope Ruling); Appx01714 (Ventana Window Walls Scope Ruling).

In the NR Windows Window Wall Kits scope ruling, Commerce determined that window wall kits containing "all of the necessary parts to be fully assembled" satisfies the "finished goods kit" exclusion. Appx01674. Commerce reasoned that window wall kits were distinct from curtain wall parts "in that unlike curtain walls, window walls do not envelop or enclose the entire façade of the building." *Id.*; Appx01594. "Rather, when inserted into the opening of a building, window walls leave significant areas of the building façade uncovered." Appx01675. Commerce's findings were consistent with record evidence which established that the AAMA distinguishes between window walls and curtain walls: window walls are defined as "fenestration *systems*" and curtain walls are defined as "exterior cladding." *Id.* (emphasis added).

Similarly, in the Ventana Window Walls scope ruling, Commerce determined that customized window wall structures imported by Ventana were excluded from the *Orders*' scope

29

under the "finished goods kit" exclusion. Appx01723; *see* Appx01595. Consistent with the NR Windows Window Wall Kit scope ruling, Commerce found it significant that window walls do not envelop the facade of the building, "but instead each window is placed directly into the structure of the wall of the building – unattached to other window walls." Appx01723. Commerce stated that "window walls, once assembled, compose a finished product, while curtain wall units do not, but instead remain parts of curtain walls, which are expressly included in the scope of the *Orders*." *Id*. Again, Commerce explained, "when inserted into the opening of a building, window walls leave significant areas of the building façade uncovered." *Id*.

In this case, Reflection's products are akin to the window wall products at issue in NR Windows' and Ventana Windows' scope rulings. As explained above, Reflection's kits contain all of the parts necessary to be fully assembled. "{T}he primary components and accessory components in each entry are the exact components and quantities needed to complete a window wall system for a specific project." Appx01320. Further, Reflection explained that its window wall systems are consistent with the AAMA's definition, in that they are fenestration systems, not "exterior cladding" that envelops or encloses the entire façade of a building. Appx01318. Each of the four series "is mounted to the front face of the surrounding four-sided metal frame," Appx01301—that is, they are "placed directly into the structure of the wall of the building – unattached to other window walls," *see* Appx01723; *see also* Appx01128 (explaining that Reflection's window wall systems can be inserted between floor slabs into the specified opening); Appx01607 (explaining that Reflection's window wall systems are inserted into the opening between the top of one floor slab and the underside of the next higher floor slab). Reflection also specified that "{w}hen a window wall system is fully installed within an opening in a building{,} the system performs independently of other window wall systems in the

building." Appx01318. Accordingly, Commerce's determination is consistent with descriptions of window wall products that Commerce has previously examined in scope rulings pursuant to the *Orders*. Commerce did not depart from past practice as AEFTC suggests. *See* Pl. Br. at 20.

AEFTC acknowledges that Reflection submitted "entry documents with 7501 forms, commercial invoices, packing lists, and bills of lading," "technical literature for its four series of window wall systems," and "three categories of photographs." Pl. Br. at 14-15. AEFTC improperly invites the Court to reweigh this evidence, vaguely arguing that (1) Reflection's entry forms "cannot demonstrate that what is imported is all that is needed to actually assemble the final finished good," (2) the technical drawings "do not provide a complete list of the necessary parts and materials or a description of the assembly or installation process for these products," and (3) the photographs fail to "provide any evidence of how Reflection's products are assembled or installed{.}" *Id.* at 14-15. But "it is not the province of the Court to reweigh the evidence before the agency." *Comm. for Fair Beam Imps. v. United States*, 477 F. Supp. 2d 1313, 1326 (2007), *aff'd*, 260 F. App'x 302 (Fed. Cir. 2008). And merely "disagreeing with the evidentiary weight Commerce assigns to pieces of evidence in the record is insufficient to overturn Commerce's determination. *See Jacobi Carbons AB v. United States*, 422 F. Supp. 3d 1318, 1325-26 (Ct. Int'l Trade 2019).

In any event, Reflection's evidentiary arguments are meritless. With respect to the entry forms, Commerce reasoned that "{e}very component composing the kit, including accessory components (or 'all primary and secondary parts and components'), for each unit is shipped to the United States in the same shipment." Appx01590. In support of this conclusion, Commerce cited to Exhibit A of Reflection's Second Supplemental Request which consisted of packing lists identifying "*each component in the kit* by Primary Description and corresponding Secondary

Description, Part No. and applicable part dimensions."  *See* Appx01188 (emphasis added);

Appx80029 ([                                                    ]).  Commerce also explicitly examined how

Reflection separately packaged and labeled each part of its window wall systems in a manner

which signifies each is part of the whole product:

> For example, the packing list associated with Entry 988-0842227-7
> identifies Package 950-F2-R-27-P-1.  The "950" is the project code
> (*i.e.*, these window wall system kits are specific to the 950 M GFRC
> Factory project).  F2 is the specific floor on which this kit will be
> installed (*i.e.*, the 2nd floor).  R-27-P-1 identifies the crate sequence
> for the window wall system kits intended for the 2nd floor at the 950
> project.  These identifying codes for each window wall system kit
> are also placed on each individual shrink wrapped kit.

Appx01605 (citing Appx01189-01190, Second Supplemental Response).  As AEFTC

acknowledges, Reflection also submitted photographs of its window wall systems in addition to

photographs of all primary and packed components.  *See* Pl. Br. at 14-15.  Thus, plaintiff is

simply wrong that Reflection's submissions cannot demonstrate that what is imported is all that

is needed to actually assemble the final finished good.

Plaintiff's arguments with respect to the technical drawings and photographs are similarly

unavailing.  Citing Reflection's submissions, Commerce explained the major components and

assembly of each of Reflection's series window wall systems in detail.  *See* Appx01589-01592.

AEFTC's contention that Reflection failed to "provide a complete list of the necessary parts and

materials or a description of the assembly or installation process for these products" is, again,

contradicted by the record evidence.  *See* Appx80029-80032 (containing the entry documentation

[

                                                    ]).

Plaintiff claims that Commerce disregarded information AEFTC submitted.  Pl. Br. at 16-

18.  As an initial matter, "Commerce … is not required to address every piece of evidence

submitted by participating parties….” *Dong-A Steel Co. v. United States*, 475 F. Supp. 3d 1317, 1343 (Ct. Int'l Trade 2020).  Regardless, Commerce specifically addressed plaintiff's comments throughout its Final Scope Ruling.  For instance, plaintiff claims that Commerce did not respond to its argument that Reflection's imported products require further finishing.  Pl. Br. at 14, 16-17.  However, Commerce addressed plaintiff's contention.  *See* Appx01604, n.127 (“we have repeatedly reviewed the video referenced by the parties and cannot find any support for the petitioner's contention that it demonstrates that there is further finishing, but conclude that it shows the opposite.”).

Commerce also specifically addressed AEFTC's arguments that Reflection's products are not ready to be assembled as-is, and are more akin to curtain walls.  Pl. Br. at 16-17, 20-29.  Commerce disagreed with plaintiff, explaining that “Reflection's window wall systems are distinct from both curtain wall units and curtain walls” because “Reflection's window wall systems are inserted into the opening between the top of one floor slab and the underside of the next higher floor slab, and do not make up the entirety of the building's façade, like a curtain wall{.}” Appx01607.  Importantly, Commerce stated that it took “a cautious approach to this issue by ensuring that the products subject to this scope ruling are defined as designed to fit into the aperture of a wall and not to vertically span a greater distance than from the top of one floor slab to the underside of the next higher floor slab….” *Id.*  In other words, Commerce's final scope determination—which is specifically limited to four series of window wall systems as defined by Reflection in its scope ruling request that include slab covers, have a specific maximum vertical span, and are designed to fit into a wall aperture—is clearly responsive to the information and comments submitted by AEFTC.

AEFTC also claims that Commerce did not address its arguments that Reflection's

products fail to meet the "finished goods kit" exclusion because they are not included in one

entry.  Pl. Br. at 17.  Again, this argument is contradicted by the record evidence and Commerce

explicitly addressed it.  Commerce explained that Reflection's entry documentation (*i.e.*, CBP

7501 Entry forms, commercial invoices and packing lists) demonstrates that all the necessary

components for its imports of window wall systems are covered by a single shipment and in a

single entry.  Appx01590 (citing Appx80022, the entry documentation attached at Exhibit A to

Reflection's First Supplemental Response and Appx01115, explaining that the components "are

covered under a single shipment and a single entry{.}").

   As Commerce stated in the Final Scope Ruling, Commerce has previously determined

that the fact that a product may enter the United States in separate containers does not, in and of

itself, constitute a basis on which to find that it does not qualify for the "finished goods kit"

exclusion.  Appx01605-01606; *see* Appx01724 (Hand-E-Shutters Scope Ruling).  In the Hand-E-

Shutter scope ruling, Commerce determined that shutters kits that entered the United States

distributed between multiple crates, but reported on one 7501 Entry Summary, satisfied the

"finished goods kit" exclusion:

> At the time of importation, the roller shutters are contained in a crate
> labelled with the product name.  The side guides are shipped in
> separate cardboard cartons containing the fasteners and marked with
> brand logo and product content. . . . Information in {the scope ruling
> requestor's supplemental response} also indicates that the crate and
> carton are marked as "Part A" and "Part B," respectively, signifying
> that each is part of the whole product.

Appc01734-01735.

   Similarly, here, Commerce determined that although Reflection's window wall systems

are packaged at the factory in separate containers and crates for shipment, they were

appropriately marked and labeled to indicate the contents contain whole final finished window

wall systems for import in a single entry, and that the parts go together for on-site assembly. Appx01604-01606.  Accordingly, Commerce reasonably determined that Reflection separately packaged and labeled each component of its window wall systems in a manner signifying that each is a part of the whole finished product and that Reflection's window wall systems enter the United States in the same entry and are not re-packaged before being installed by the end-user after importation.  *See* Appx01606; Appx01115 ("As confirmed by the Packing Lists, these unassembled primary components and accessory components are covered under a single shipment and a single entry{.}").

In sum, Commerce's determination is based on substantial evidence, consistent with prior scope rulings, and in accordance with law.  Having found, based on record evidence, that Reflection's window wall system kits satisfy each of the "finished goods kit" requirements, Commerce reasonably determined that Reflection's window wall system kits fall within the exclusion and thus, are not covered by the scope of the *Orders*.  AEFTC disagrees with how Commerce weighed the evidence, but such disagreements are insufficient to overturn Commerce's determination.

## III.   **Plaintiff's Remaining Arguments Lack Merit**

As Commerce explained in its Final Scope Ruling, each of the four series of window wall systems at issue has four major components, one of which is a slab cover.  Appx01590-01592. Plaintiff claims that Commerce failed to respond to its argument that Reflection's products are missing slab covers.  Pl. Br. at 19.  Yet Commerce specifically addressed plaintiff's argument by limiting the scope ruling to four series of window wall system kits that include slab covers.  *See* Appx1604-01605.

In the underlying scope proceeding, Reflection explained that the primary components in its window wall systems consist of panels, receptors, and slab covers.  Appx01115; Appx01303-01304 (narrative responses indicating each of the four series of window wall systems includes a one-piece "extrusion slab cover option{}"); *see, e.g.*, Appx80310 (providing the technical specifications and diagrams for each of the four series of Reflection's window wall systems, including diagrams for slab covers).  However, it acknowledged that, while all shipments of its merchandise include panels, head receptors, and sill receptors, jamb receptors and slab covers may not be part of a particular window wall system depending on the design and, as such, not included in a shipment.  Appx01115.  As Commerce specifically explained, it is incumbent on the requestor, Reflection, to define its products with specificity.  Appx01604.  As a result, Commerce's scope ruling applies to *only* the four series of Reflection's window wall system kits consisting of four major components: (1) window system panels; (2) head and sill receptors; (3) window side jamb receptor; and (4) slab cover.  Appx01604-01605.

If—and only if—at the time of importation, Reflection's window wall systems contain all the necessary parts to fully assemble a final finished window wall system which includes the four primary components, then they are excluded from the scope pursuant to Commerce's scope determination.  *See* Appx01607-01608.  To the extent that Reflection's merchandise is shipped without all necessary components for full assembly of Reflection's four series of window wall systems as described and subject to the scope ruling request, Commerce's scope ruling is inapplicable.  Appx01604.  Plaintiff's concerns about slab covers are a red herring.

Finally, plaintiff's claim that Commerce's determination contradicts prior scope determinations is based on plaintiff's misguided argument that Reflection's products are akin to curtain wall units.  Pl. Br. at 20.  As stated above, Commerce did not rely on its prior scope

rulings involving curtain walls and curtain wall units because those products are distinct from Reflection's window wall systems.  Appx01607.

The scope language of the *Orders* expressly covers aluminum extrusions described, at importation, as parts for finished curtain walls.  *Orders*, 76 Fed. Reg. at 30,651.  A curtain wall, in accordance with Commerce's prior scope proceedings, is a non-weight bearing exterior wall or facade, suspended from the roof top to the ground floor to cover the entirety of a building's facade.  Appx01607.  Curtain wall units are aluminum extrusion frames, with or without glass infill, which are "distinct portions of curtain walls shipped separately to be assembled into a full curtain wall at the building site{.}"  *Id*.  Like pieces of a puzzle, each unit interlocks with other units, which must be assembled with other units to form a curtain wall.

Commerce has repeatedly found that curtain wall units cannot be excluded under the "finished goods kit" exclusion unless all the parts, including the curtain wall units which make up a *complete* curtain wall (*i.e.*, the entirety of a building's façade) were entered into the United States under a single 7501 Customs Entry form.  Appx01607; *see* Appx01676 (NCGMA Curtain Wall Units scope ruling reasoning that parts of curtain walls are not excluded); Appx01709 (Yuanda Complete and Finished Curtain Wall Units scope ruling reasoning that curtain wall units, imported together in shipments of two or more units, are not excluded because they ultimately form a curtain wall).

In both the NCGMA Curtain Wall Units and Yuanda Complete and Finished Curtain Wall Units scope rulings, Commerce found that certain curtain wall units and other parts of curtain wall systems fell within the express scope language of the *Orders*.  Appx-1684 (NCGMA Curtain Wall Units Scope Ruling); Appx-1707-01708 (Yuanda Complete and Finished Curtain Wall Units Scope Ruling).  Because parts for curtain walls were explicitly included in the scope

of the *Orders*, Commerce determined that no exclusions applied. Appx01684. Similarly, in the Yuanda Complete and Finished Curtain Wall Units scope ruling, Commerce found that because a curtain wall unit is covered by the *Orders* as a part for curtain walls, it was not excluded. Appx01707-1711.

The NCGMA Curtain Wall Units scope ruling was sustained by this Court. *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 961 F. Supp. 2d 1291, 1305 (Ct. Int'l Trade 2014) (*Shenyang Yuanda I*). This Court affirmed Commerce's scope ruling because the *Orders* explicitly identify curtain wall units as subject merchandise. *Id*. at 1298. The Federal Circuit affirmed, agreeing with Commerce's finding that curtain wall units are designed to be attached to other units to form a completed curtain wall, and the trial court's finding that an individual curtain wall unit "has no consumptive or practical use because multiple units are required to form the wall of a building." *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d 1351, 1358-59 (Fed. Cir. 2015). The court of appeals also agreed with the trial court that the curtain wall units are "undeniably components that are fastened together to form a completed curtain wall," and thus, "they are 'parts for,' and 'subassemblies' for, completed curtain walls." *Id*. at 1357-58. Finally, in finding that the curtain wall units did not qualify for the "finished merchandise" exclusion, the Federal Circuit held that "a part or subassembly . . . cannot be a finished product." *Id*. at 1358. It affirmed Commerce's determination that, to satisfy the exclusion, finished merchandise must be a completed curtain wall: "{a} single unit does not a curtain wall make, nor is it a finished product." *Id*.

In a more recent decision, the Federal Circuit affirmed Commerce's finding that Yuanda's curtain wall units imported under a supply contract for an entire curtain wall did not fall within the "finished goods kit" exclusion. *See Shenyang Yuanda Aluminum Indus. Eng'g Co. v.*

*United States*, 918 F.3d 1355, 1367-68 (Fed. Cir. 2019) (*Shenyang Yuanda II*); *see also*

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 279 F. Supp. 3d 1209, 1214-15

(Ct. Int'l Trade 2017).  The Federal Circuit agreed with Commerce that a "finished goods kit"

must contain, "at the time of importation," all the pieces needed to assemble the curtain wall

(*i.e.*, the final finished good), which must include all the required curtain wall units and that the

"packaged combination" requirement focuses only on the physical contents of the package at a

particular time, "not on contractual obligations that might link one 'packaged combination' to

another, later-entering one."  *Shenyang Yuanda II*, 918 F.3d at 1367.  The Federal Circuit also

found that the curtain wall units as entered did not meet the "subassembly" requirement that they

be ready for installation as-is, pointing to Commerce's finding that the material imported would

not complete the curtain wall unit because it did not contain hangers, lock panels, shims, and

embeds necessary to piece the curtain wall units together.  *Id*.  And, once the curtain wall units

are hung, the purchaser would need to waterproof the connection between adjacent units and trim

and punch the units to ensure they fit next to each other.  *Id.*

Commerce's determination that Reflection's window wall system kits are excluded from

the scope of the *Orders* as "finished goods kits" does not contradict Commerce's curtain wall

unit scope rulings or case law on the issue.  As Commerce explained in the Final Scope Ruling,

Reflection's window wall systems are distinct from both curtain walls and curtain wall units.

Appx01607.  Each of  Reflection's four series of window wall systems constitute a final finished

good: a custom designed, stand-alone window wall system.  Unlike the finished good of a

completed curtain wall, Reflection's window wall systems are inserted into a wall aperture or

opening in a building between the top of one floor slab and the underside of the next higher floor

slab, and "do not make up the entirety of the building's façade." *Id*.  In the Final Scope Ruling,

Commerce explained:

> We find this difference crucial as to whether a window wall system
> could be considered to be a type of curtain wall, as the protrusion
> of the floor slabs themselves serve to demonstrate that the window
> wall system does not compose the entire façade of the building.

*Id*.  Commerce's ruling only applies to window wall systems designed to fit into the wall

aperture, not systems potentially designed to vertically span a greater distance than from the top

of one floor slab to the underside of the next higher floor slab or systems that span a distance

greater than 15 feet.  *Id*.  These limitations "serve{} to ensure that each of Reflection's window

wall systems subject to this scope ruling is small enough that it cannot connect with other

window wall systems to cover the entirety of a building's façade and compose a type of curtain

wall."  *Id*.

Nevertheless, plaintiff contends that Reflection's window wall systems fail to meet the

"finished goods kit" exclusion requirement for the same reasons as curtain wall units.  Pl. Br. at

24.  Plaintiff's contention is unavailing.  Again, unlike curtain wall units which (as Commerce

and the Federal Circuit have found) are components designed to be attached to other curtain wall

units to form a completed curtain wall, Reflection's window wall systems are not components or

parts to a final finished good.  The window wall system *is* the final finished good.  And

Reflection's window wall systems are not designed to be fastened to other window wall systems

to form a finished good or the entirety of a building's façade.  Reflection's window wall systems

are custom-designed, stand-alone window walls.  As explained above, substantial  record

evidence demonstrates that Reflection's window wall systems are completed, yet unassembled,

stand-alone window walls designed to be individually inserted into a wall aperture of a building.

*See* Appx01002 (Scope Ruling Request stating that "{w}hen a window wall system is fully

installed within an opening in a building the system performs independently of other window

wall systems in the buildings."); Appx01520-01521 (Reflection Second Rebuttal stating that its

window wall systems are "modular stand-alone units").

Because Commerce found that Reflection's window wall systems constitute final finished

goods, Reflection's products do not fail to meet the "finished good kit" exclusion in the same

manner as curtain wall units in the NCGMA Curtain Wall Units scope ruling.  Reflection's

window wall system kits contain, at importation, all the necessary components to assemble the

final finished good in a packaged combination, under the same CBP 7501 Entry Form complete

with commercial invoice and packing list, as opposed to multiple shipments of curtain wall units

subject to an ongoing supply contract for an entire completed curtain wall.  *See Shenyang*

*Yuanda II*, 918 F.3d at 1367.

To the extent that plaintiff contends that some type of window wall *could* substitute a

curtain wall, Commerce issued a scope ruling based on a particular product as described by

Reflection in its scope ruling request and as supported by record evidence.  Commerce does not

issue scope rulings on hypothetical products and their potential uses.  *See* 19 C.F.R.

§ 351.225(c)(1) (requiring that the interested party requestor of a scope ruling include in its

scope ruling application a detailed description of the requested product); § 351.225(d) (providing

for a scope ruling based on the application).  Reflection provided a detailed description of the

four particular series of window wall systems subject to its request.  Reflection described its

window wall systems as stand-alone structures, not dependent on an adjacent unit.

Still, AEFTC argues that Commerce should have addressed its argument that:

> similar to curtain walls, window walls *can* interlock and cover
> large portions of the exterior of the building; both are dependent on
> the units on either side and *potentially* above and below them to
> work structurally or be considered weather tight; and window

> walls are *generally* assembled, attached, and sealed in the field,
> with numerous parts required for this process, such as mullion and
> mullion parts, insulating materials and other connector materials.

Pl. Br. at 25 (emphasis added).  Again, plaintiff's contention is based on a product other than the

product described in Reflection's scope ruling request.  There is no evidence on the record

suggesting that Reflection's window wall systems are interlocking or are dependent on other

window wall systems.  And Commerce ensured that Reflection's window wall systems cannot

connect with other window wall systems to cover the entirety of a building's façade because the

scope ruling applies *only* to Reflection's window wall systems which are described as designed

to fit into the aperture of a wall and not to vertically span a greater distance than from floor to

ceiling or a distance greater than 15 feet.  Appx01607.  Commerce is not required to address

whether products *other than* those particular products at-issue in the scope ruling request fall

within the scope of the *Orders*.  Therefore, evidence demonstrating the similarities between

curtain walls and products other than those at-issue in Reflection's scope ruling request is not

relevant to this scope proceeding.  Neither is evidence that a product *might* substitute for subject

merchandise or *can* be used in a particular way.

However, as explained above, Commerce specifically explained why Reflection's

window wall systems are different from curtain walls and curtain wall units.  Commerce

determined that Reflection's window wall systems are distinct from curtain walls because they

do not make up the entirety of a building's façade.  *Id*.  Instead, they are inserted into the

aperture of a wall or opening in a building "between the top of one floor slab and the underside

of the next higher floor slab."  *Id*.  And Commerce addressed plaintiff's contention that

Reflection's window wall systems could substitute for a curtain wall:

> That a building's designer and owner could change the design of the
> building from using subject merchandise to using non-subject

merchandise has no bearing on the question of whether the latter actually constitutes non-subject merchandise before us in this scope ruling.

*Id*. Commerce's analysis is entirely consistent with its regulations, prior scope rulings, and

Federal Circuit precedent.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny plaintiff's motion for

judgment on the agency record and sustain Commerce's final scope determination.

|  |  |
|---|---|
|  | Respectfully Submitted, |
|  | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General |
|  | PATRICIA M. McCARTHY<br>Director |
|  | /s/ Reginald T. Blades, Jr.<br>REGINALD T. BLADES, JR.<br>Assistant Director |
| OF COUNSEL:<br>LESLIE M. LEWIS<br>Attorney<br>Office of the Chief Counsel<br>  for Trade Enforcement and Compliance<br>U.S. Department of Commerce<br>Washington, D.C. | /s/ Ann C. Motto<br>ANN C. MOTTO<br>Trial Attorney<br>Commercial Litigation Branch<br>U.S. Department of Justice<br>Civil Division<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, D.C. 20044<br>Tel: (202) 353-7968<br>Fax: (202) 305-2062<br>Email: ann.c.motto@usdoj.gov |
| March 1, 2022 | *Attorneys for Defendant United States* |

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this motion complies with the Court's type-volume limitation rules. According to the word count calculated by the word processing system with which the motion was prepared, the public version of the motion contains a total of 12,829 words.

/s/ Ann C. Motto

March 1, 2022

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE

_____
                                              )
ALUMINUM EXTRUSION FAIR TRADE                 )
COMMITTEE,                                    )
                                              )
   Plaintiff,                  )
                                              )
 v.                                      )  Court No. 21-00253
                                              )
UNITED STATES,                                )
                                              )
   Defendant,                   )
                                              )
 and                                     )
                                              )
REFLECTION WINDOW + WALL, LLC,                )
                                              )
   Defendant-Intervenor.        )
_____)

## **ORDER**

  Upon consideration of plaintiff's motion for judgment on the agency record, defendant's and defendant-intervenor's responses thereto, plaintiff's reply, the administrative record, and all other pertinent papers, it is hereby

  ORDERED that plaintiff's motion is DENIED; and it is further

  ORDERED that the Department of Commerce's determination is sustained; and it is further

  ORDERED that judgment is entered in favor of the United States.


Dated: _____     _____

New York, New York         Judge