NON-CONFIDENTIAL VERSION

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

---

**ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,**

                **Plaintiff,**

      **v.**

**UNITED STATES,**

                **Defendant,**

      **and**

**REFLECTION WINDOW + WALL, LLC,**

                **Defendant-Intervenor.**

---

**Before:  Hon. Stephen A. Vaden, Judge**

**Court No. 21-00253**

**NON-CONFIDENTIAL VERSION**

**Business Proprietary Information Removed from Pages: 6, 7, and 10**

---

## ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE'S REPLY BRIEF

Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Elizabeth S. Lee, Esq.
Claire M. Webster, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Aluminum Extrusions Fair Trade Committee*

Dated:  April 18, 2022

## <u>TABLE OF CONTENTS</u>

                                                                               **Page**

I.      INTRODUCTION ........................................................................................ 1

II.     ARGUMENT .............................................................................................. 1

        A.      Commerce's Determination that Reflection's Imported Products
                Meet the "Finished Goods Kit" Exclusion Requirements is
                Unsupported by Substantial Evidence .................................................3

                1.      Commerce Failed to Consider Evidence That Reflection's
                        Imports of Window Wall System Components Are Not
                        Assembled As Is Into Finished Products ......................................4

                2.      Commerce Failed to Address the Issue of Whether
                        Reflection's Imported Products Include All Necessary Parts.....................9

                3.      Conclusion ............................................................................11

        B.      Commerce's Determination Directly Conflicts with its Established
                Practice in Prior Scope Rulings Under the Same Orders........................11

III.    CONCLUSION........................................................................................... 17

Ct. No. 21-00253                                    NON-CONFIDENTIAL VERSION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baroque Timber Indus. (Zhongshan) Co. v. United States*,
   971 F. Supp. 2d 1333 (Ct. Int'l Trade 2014) .............................................................2

*CS Wind Vietnam Co. v. United States*,
   832 F.3d 1367 (Fed. Cir. 2016)..............................................................................1

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983)..................................................................................................1

*Shanghai Foreign Trade Enters. Co. v. United States*,
   28 CIT 480, 318 F. Supp. 2d 1339 (2004) ...............................................................2

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*,
   146 F. Supp. 3d 1331 (Ct. Int'l Trade 2016) ........................................................15

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*,
   181 F. Supp. 3d 1348 (Ct. Int'l Trade 2016) ........................................................15

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*,
   918 F.3d 1355 (Fed. Cir. 2019)........................................................................8, 15

*Yantai Oriental Juice Co. v. United States*,
   26 CIT 605 (2002) ...................................................................................................2

**Administrative Materials**

*Aluminum Extrusions from the People's Republic of China*,
   76 Fed. Reg. 30,650 (Dep't Commerce May 26, 2011) ......................................1, 3

*Aluminum Extrusions From the People's Republic of China*,
   76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011) ......................................1, 3

## I.   <u>INTRODUCTION</u>

On behalf of Plaintiff Aluminum Extrusions Fair Trade Committee ("AEFTC"), we respectfully submit the following reply to the response briefs filed by Defendant United States ("Government") and Defendant-Intervenor Reflection Window + Wall, LLC ("Reflection").  *See* Def.'s Conf. Resp. to Pl.'s Rule 56.2 Mot. for J. Upon the Agency R. (Mar. 1, 2022), ECF No. 28 ("Government Br."); Reflection Window + Wall, LLC's Mem. in Opp'n to Pl.'s Rule 56.2 Mot. for J. on the Agency R. (Mar. 1, 2022), ECF No. 26 ("Reflection Br.").

## II.   <u>ARGUMENT</u>

This appeal arises from the U.S. Department of Commerce's ("Commerce") final scope ruling pursuant to the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China regarding Reflection's window wall system kits.  *See* Appx01584-01609; *see also Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 30,650 (Dep't Commerce May 26, 2011) (antidumping duty order) ("AD Order"); *Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011) (countervailing duty order) ("CVD Order") (collectively, the "Orders").

The standard of review applicable to its action requires Commerce to support its determinations with substantial record evidence and for those determinations to be otherwise in accordance with law.  This standard requires the agency to take into account "whatever in the record fairly detracts" from the evidence adduced in support of the agency's conclusion.  *CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1373 (Fed. Cir. 2016) (citing *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997)).  In addition, the substantial evidence standard requires that the agency grapple with all "important aspect{s} of the problem" before it, *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), and

also that the agency "provide a 'rational connection between the facts found and the choice made'" and "'articulate a satisfactory explanation for its action.'"  *Baroque Timber Indus. (Zhongshan) Co. v. United States*, 971 F. Supp. 2d 1333, 1339-40 (Ct. Int'l Trade 2014) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) and *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013)).  Thus, an agency must do more than offer conclusory statements of its findings.  *See, e.g.*, *Shanghai Foreign Trade Enters. Co. v. United States*, 28 CIT 480, 488, 318 F. Supp. 2d 1339, 1346 (2004) (rejecting conclusory agency explanation as inconsistent with the substantial evidence standard); *Yantai Oriental Juice Co. v. United States*, 26 CIT 605, 611 (2002) (same).

In its opening brief, AEFTC explained that Commerce's determination that Reflection's imported products meet the "finished goods kit" exclusion requirements is unsupported by substantial evidence.  *See* Aluminum Extrusions Fair Trade Committee's Rule 56.2 Mot. for J. on the Agency R. at 10-20 (Nov. 23, 2021), ECF No. 22 ("AEFTC Br.").  AEFTC also explained that Commerce's determination directly conflicts with its established practice in prior scope rulings under these Orders.  The agency failed to provide a reasonable explanation for its decision, rendering its determination arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.  *See id.* at 20-29.  The Government's and Reflection's arguments to the contrary are unpersuasive, as explained below.

Ct. No. 21-00253                                    NON-CONFIDENTIAL VERSION

A.   **Commerce's Determination that Reflection's Imported Products Meet the "Finished Goods Kit" Exclusion Requirements is Unsupported by Substantial Evidence**

Commerce's determination that Reflection's extruded aluminum products meet the requirements of the narrow exclusion in the scope of the Orders for "finished goods kits" is unsupported by substantial evidence.[1]

The exclusion in the scope is as follows:

> The scope also excludes finished goods containing aluminum extrusions that are entered unassembled in a "finished goods kit." A finished goods kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled "as is" into a finished product. An imported product will not be considered a "finished goods kit" and therefore excluded from the scope of the investigation merely by including fasteners such as screws, bolts, *etc.* in the packaging with an aluminum extrusion product . . . .

AD Order, 76 Fed. Reg. at 30,651; CVD Order, 76 Fed. Reg. at 30,654.

Commerce offered conclusory statements in the final scope ruling with respect to key requirements for the "finished goods kit" exclusion, without explaining how the record information supports its conclusion. The agency also erroneously relied on certain record information. AEFTC detailed numerous problems with the information that Reflection submitted, which AEFTC reiterates below. *See* AEFTC Br. at 13-15. AEFTC also submitted material evidence contradicting Reflection's claims. *See id.* at 16-20. Commerce did not address evidence detracting from its conclusion in its determination – critical evidence relating to the express terms of the exclusion at

---

[1]     The Government asserts that there is no support in the scope language or binding precedent for AEFTC's claim that scope exclusions should be narrowly construed, distinguishing exclusions contained in an order and exclusions promulgated after an order is issued. *See* Government Br. at 21-22. The scope exclusion at issue removes from the coverage of the Orders merchandise that otherwise is covered by the general scope language. It is axiomatic that such scope exclusions should be construed narrowly. Otherwise, the domestic industry would be deprived of the full extent of the trade relief that it was granted.

issue.  Thus, the agency failed to grapple with all important aspects of the problem and did not take into account evidence detracting from the information it relied on in making its determination. In addition, the agency erroneously relied on certain record information, and, in doing so, failed to provide a rational connection between the facts found and the choice made.  Accordingly, the agency's determination fails to meet the standard of review.  The Government and Reflection fail to demonstrate otherwise.  In fact, even now, the defense has no response to some of the most critical issues that AEFTC raised, rendering their arguments unpersuasive.

> **1.    Commerce Failed to Consider Evidence That Reflection's Imports of Window Wall System Components Are Not Assembled As Is Into Finished Products**

The Government and Reflection each argue that Commerce relied on a substantial volume of information in finding Reflection's imported products to meet the "finished goods kit" requirements.  *See generally* Government Br.; Reflection Br.  However, the volume of information submitted does not equate to relevance or persuasiveness.  Nor does simply providing a list of record information substitute for an explanation of how such information supports the agency's determination.

The record information that the Government and Reflection rely on do not actually support Commerce's determination – that Reflection's imported products are assembled as is into final finished goods.  Some even indicate the opposite of what the defense claims.  For instance, the Government contends that photographs that Reflection submitted support Commerce's determination.  *See* Government Br. at 23; AEFTC Br. at 15.   Reflection submitted select photographs of certain window wall units.  Appx01027-01031.  There is no description or labeling in these photographs of what components are shown.  Nor is there any description or illustration of how those components were installed.  Because these photographs do not actually demonstrate

the assembly or installation process, they cannot serve as evidence that no further finishing or fabrication or additional parts are required to fully assemble Reflection's imported products into final finished goods as is. The photographs showing the types of primary components in Reflection's window wall systems similarly do not show how Reflection's imported products are assembled or installed. Appx01032-01054, Appx80064-80072 (Appx01339-01347).

Reflection also submitted select photographs of packed and shrink-wrapped crates allegedly containing its imported window wall system components in warehouses. *See* Appx01055-01059, Appx80073-80078 (Appx01348-01353). Again, these photographs do not show the assembly or installation process for Reflection's imported products. What they do show, however, and as Reflection itself explained, is that the company's window wall systems include detailed sequencing to ensure that each section and component is installed in the proper order. *See* Appx80360 (Appx01489). Reflection explained that it imports its products in crates, which are inventoried based on a crate identification mark identifying the project, building floor, and floor sequence for the components in the crate, and that these crates are moved from the U.S. warehouse to the project site in accordance with the construction schedule and moved to specific floors for installation. *See* Appx80010 (Appx01120). The pictures show that the components are held in crates with like parts together, again with a mark identifying the project, floor, and floor sequence. Reflection also explained that each of its window wall system components (panels; head receptors and sill receptors; side jamb receptors; and slab covers) have a singular identification mark for a specific location in the building, including a reference to floor location and individual sequence number on that floor. Appx80006-80009 (Appx01116-01119). AEFTC argued that this demonstrates that there is no other sequence in which Reflection's window wall components can be installed. Appx80360 (Appx01489). Each package (which, as discussed below, Reflection

**Business Proprietary Information Has Been Deleted**

argued is individually a "finished goods kit") is designed to fit in one particular location in a building and is therefore reliant on the window wall units and other structures of a project to its left and right. *Id.* Commerce did not respond to this specific argument. *See* Appx01603-01604. The Government also did not respond to this specific argument.

While Reflection offers a response, it is unpersuasive. Reflection explains that its window wall units are almost always free of defects and installed in order, on a floor-by-floor basis, but that because defective units can occur, its products are engineered so that if necessary, installation can continue until the corrected or repaired unit is received. *See* Reflection Br. at 21-22. Reflection then concludes that the fact that its window wall systems can be installed out of sequence demonstrates that each unit is a stand-alone module. *See id.* To the contrary, Reflection only confirms that there is an installation process encompassing all of the units, while individual units may be replaced if necessary, indicating that each unit is not assembled as is into a final finished good by itself. *See id.*

The Government and Reflection also claim that the entry documentation that Reflection submitted, including 7501 forms and packing lists, support Commerce's determination – specifically, that this documentation confirms that all of the necessary components for the final finished good are covered by a single entry, as required to be excluded as a "finished goods kit." *See* Government Br. at 23, 34; Reflection Br. at 21. Reflection submitted three sets of entry documents to Commerce, claiming that each individual package number in the packing lists included with each entry constitutes an individual window wall system. *See* Appx80003-80004 (Appx01113-01114). Reflection also explained that the packing lists and entry documents that it provided with its scope ruling request involve the company's [                    ], *i.e.*, [

               ]. Appx80129 (Appx01265). In other words, Reflection [

6

**Business Proprietary Information
Has Been Deleted**

].  Rather, [

].[2]  *See* Appx80022-80063 (Appx01132-01134).

AEFTC is unaware of whether Reflection [

].  Thus, AEFTC argued that the individual packages [

], and [

].  Appx80363 (Appx01492).  Again, Commerce did not address this issue in its

determination.  The Government and Reflection still do not address this issue.  Their reliance on

this information is flawed.

Tellingly, the Government cites the following language and states that Reflection explained

how it separately packaged and labeled each part of its window wall systems in a manner which

signifies that <u>each is part of the whole product</u>:

> For example, the packing list associated with Entry 988-084227-7 identifies
> Package 950-F2-R-27-P-1.  The "950" is the project code (*i.e.*, these window wall
> system kits are specific to the 950 M GFRC Factory project).  F2 is the specific
> floor on which this kit will be installed (*i.e.*, the 2nd floor).  R-27-P-1 identifies the
> crate sequence for the window wall system kits intended for the 2nd floor at the
> 950 project.  These identifying codes for each window wall system kit are also
> placed on each individual shrink wrapped kit.

Government Br. at 25 (internal citations omitted).  But the individual package in Reflection's

description above is what the company is claiming is a finished goods kit.  *See* Appx01189 ("The

individual kits are identified by 'Package No.' on the Packing Lists").  This information thus

---

[2]        The [                              ] included with [
                        ]" and the [                              ] included with [
                                                      ]."  Appx80024, Appx80045,
Appx80056 (Appx01134).  However, Reflection itself explained that [
                                                      ].  Appx80129 (Appx01265).  In
addition, [
                        ]."  Appx80023, Appx80044, Appx80055 (Appx01134).

demonstrates the opposite of what the Government seeks to argue. Reflection's description demonstrates, in fact, that its imported "kits" are only one part of the whole product, much like the imports of curtain wall units that Commerce and the courts have found to not meet the requirements of the "finished goods kit" exclusion. *See Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 918 F.3d 1355, 1358 (Fed. Cir. 2019); AEFTC Br. at 22-24.

The Government also relies on the technical literature for Reflection's four series of window wall systems. Government Br. at 23. Again, these drawings do not provide a description of the assembly or installation process for these products. *See* Appx01190, Appx01193-01211, Appx80275-80348 (Appx01398-01471). AEFTC also notes that the Government's reliance on the technical literature is problematic for additional reasons. The technical drawings indicate that each "series" of Reflection's window wall includes a collection of window wall sections, across multiple floors. *See* Appx80276 (Appx01378), Appx80295 (Appx01418), Appx80312 (Appx01435), Appx80333 (Appx01456). But Reflection argues that a package of window wall components for one part of one floor of a project constituted an individual kit, as noted above. Thus, AEFTC assumes that Reflection is contending that a smaller collection of window wall system components than what is included in the entire series is a "finished goods kit." Thus, the Government is relying on technical literature for a <u>series</u> to make a conclusion about a smaller <u>collection of parts</u>.

AEFTC recognizes that Reflection provided declarations from an executive of its company to support its claims, stating, for instance, that Reflection's shipments of window wall system kits contain all the necessary parts to fully assemble finished window wall systems with no further finishing or fabrication, enabling the products to be installed as is into a building. *See* Government Br. at 27; Reflection Br. at 19-20; Appx80140-80142 (Appx01275-01277). However, as the end-

user, *see* Appx01606, Reflection could have submitted schematics for the specific building projects associated with the imported products or installation instructions, that clearly detail the installation process, that would have allowed Commerce to evaluate whether or not any further finishing or fabrication or additional parts are required to assemble the final finished good.  As the party requesting a scope exclusion, Reflection had the burden of providing adequate evidence to substantiate its claims but failed to do so.  Given the problems that AEFTC highlighted with respect to the information that Reflection submitted as well as the conflicting evidence that AEFTC submitted, Commerce's reliance on Reflection's submissions, without further probing, renders the agency's determination unsupported by substantial evidence.

### 2.   Commerce Failed to Address the Issue of Whether Reflection's Imported Products Include All Necessary Parts

With respect to AEFTC's argument that Reflection's imports are missing a necessary part – slab covers – the Government's response misses the point.  The Government dismisses AEFTC's argument, claiming that Commerce excluded only those window wall systems that require slab covers to be assembled.  *See* Government Br. at 28 n.11; *see also id.* at 35-36.  But then the Government states that the entry documentation that Commerce relied on reflect three entries that do not require slab covers.  *See id.* at 28 n.11.  The Government notes that these entries would, therefore, not be excluded from the scope of Commerce's determination.  Based on the Government's earlier statement, AEFTC understands this to mean that the three entries reflected in the entry documentation would not be excluded from the scope of the Orders.  *See id.* Nonetheless, the Government claims that the entry documentation supports Reflection's statements that each of its kits is shipped with all the necessary components under a single entry. *See id.* That Commerce so heavily relied on entry documentation that the Government claims is

not for the specific products covered by the scope ruling further renders the agency's determination unsupported by substantial evidence.

In addition, AEFTC reiterates its arguments on this issue.  In responding to AEFTC's arguments during the scope proceeding, Reflection explained that the packing lists and entry documents that it provided involved the company's [                        ] and that the window wall system for this project does not include slab covers, and that [



]. *See* Appx80129-80130 (Appx01265-01266).  The packing lists and entry documents that Reflection provided, [                                        ].  *See* Appx80022-80063 (Appx01132-01134).  Nor do they [

].  *See id.*  In confirming that [




]. *See* Appx80359 (Appx01488).  In other words, the entry documentation [

] – regardless of whether or not they are for products covered by the determination.

Reflection, for its part, contends that it submitted entry documents specific to shipments of goods covered by its scope ruling request.  Reflection Br. at 2.  The fact that the agency and the

recipient of the scope ruling have conflicting views about the precise products covered by the ruling undermines the argument that such determination is supported by substantial evidence.

### 3.   Conclusion

As demonstrated above, there are serious limitations with a substantial amount of the record information that the Government and Reflection claim support Commerce's determination. Commerce's reliance on such information, in addition to the agency's failure to address material evidence and arguments detracting from its conclusion – information that AEFTC presented to the agency in the scope proceeding, render its determination unsupported by substantial evidence.

### B.   Commerce's Determination Directly Conflicts with its Established Practice in Prior Scope Rulings Under the Same Orders

As detailed in AEFTC's opening brief, Commerce also did not adequately address the arguments and evidence that AEFTC submitted regarding the similarities between Reflection's products and curtain wall units – critical similarities that demonstrate that Reflection's imports of window wall system components also cannot be excluded as "finished goods kits."  *See* AEFTC Br. at 24-29.  By failing to consider evidence that fairly detracted from its conclusion and failing to grapple with all important aspects of the problem, Commerce failed to provide a reasonable explanation for treating similar products differently.  For this reason, the agency's determination was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.  The Government and Reflection continue to miss the point by emphasizing that window walls are technically different products from curtain walls.  In addition, while the Government offers certain post-hoc rationalizations, these arguments rely on Commerce's flawed conclusion that Reflection's imported products are assembled as is into final finished goods, and, thus, do not cure the agency's failure.

The Government and Reflection opine that window walls are different products from curtain walls, noting, for instance, that a window wall is a discrete product defined as a fenestration system provided in combination assemblies and composite units that span from the top of a floor slab to the underside of the next higher floor slabs, *see* Government Br. at 24; Reflection Br. at 22-24, that unlike curtain walls, window walls do not envelope or enclose the entire façade of a building, Government Br. at 30, 40, 42; Reflection Br. at 22-24, and that window walls are inserted into a wall aperture or opening in a building between the floor slabs.  Government Br. at 30, 39-40, 42;Reflection Br. at 22-24.  But nothing about these facts demonstrate that it is appropriate to find that a collection of window wall components for part of one floor of an entire building is, once assembled, a final finished good.

The defense's arguments regarding AEFTC's contention that window walls could substitute for curtain walls also do not resolve the issue.  AEFTC provided a wide range of information in the scope proceeding to demonstrate the similarities between window walls and curtain walls, but clearly argued that Reflection's products fail to meet the "finished goods kit" exclusion requirements in the same manner as curtain wall units.  *See* Appx80364 (Appx01493), Appx80100-80101 (Appx01234-01235).  The Government's claim that Commerce explained that the fact that a building's designer and owner could change the design of the building from using subject merchandise to using non-subject merchandise has no bearing on the question of whether the latter constitutes non-subject merchandise and again fails to address the issue.  *See* Government Br. at 42-43.

Reflection's arguments on this issue are unpersuasive for the same reason.  *See* Reflection Br. at 32-33.  Reflection's own submissions demonstrate the similarities between window walls and curtain walls.  For instance, Reflection initially described itself as "an

architectural building enclosure company specializing in the engineering, pre-construction, and project management of façade construction," and explained that it designs, imports, and distributes fully complete custom designed window wall systems.  *See* Appx80003 (Appx01317).  After Commerce requested information from Reflection regarding certain projects shown on the company's website, *see* Appx01283-01284, Appx01288-01297, Reflection acknowledged that certain images therein identify "products other than window wall systems" and asserted that such images are consistent with the fact that it is "engaged in the engineering, pre-construction, and project management of façade construction, <u>which includes curtain walls</u>, façade component materials, railings, shutters and storefronts <u>in addition to window wall systems</u>."  Appx80152 (Appx01307) (emphasis added).

While the Government also emphasizes that parts for curtain walls are expressly included in the scope of the Orders, Government Br. at 36-37, the fact that parts for window walls are not explicitly mentioned in the scope does not mean such parts are excluded from the scope. Commerce found that the extruded aluminum parts of Reflection's window wall system kits are covered by the general scope of the Orders.  *See* Appx01602-01603.  Such finding is not in dispute. And AEFTC provided evidence indicating that Reflection's imported products are meaningfully similar to the curtain wall units previously examined, such that these products also fail to meet the "finished goods kit" exclusion, which Commerce failed to adequately consider.  *See* AEFTC Br. at 24-29.

The Government now responds to AEFTC's argument that Reflection's products fail to meet the "finished goods kit" exclusion requirements for the same reason as curtain wall units. *See* Government Br. at 40-42.  Again, in the final scope ruling, Commerce narrowed the AEFTC's argument with respect to curtain wall units to the following: (1) Reflection's window wall systems

essentially are a type of curtain wall, and (2) Reflection's window wall systems can be substituted for curtain walls. *See* Appx01606-01607. Thus, the Government's response now amounts to post-hoc rationalization that cannot serve as the basis for sustaining the agency's determination. Furthermore, the Government relies on Commerce's conclusions regarding the condition of Reflection's imported products that are flawed, as demonstrated above. The Government proffers, for instance, that Reflection's window wall systems are not components or parts to a final finished good; are not designed to be fastened to other window wall systems to form a finished good or the entirety of a building's façade; and contain, at importation, all necessary components to assemble the final finished good in a packaged combination, under the same CBP 7501 Entry Form. Government Br. at 40-41. The Government argues that because Commerce found that Reflection's window wall systems constitute final finished goods, these products do not fail to meet the "finished goods kit" exclusion requirements in the same manner as curtain wall units. *Id.* at 41. But, as explained above, Commerce's conclusion that Reflection's imported products meet the "finished goods kit" exclusion requirements is unsupported by substantial evidence. Thus, the Government's reliance on the above findings is flawed, and such claims do not provide a reasonable explanation for treating similar products differently.

Commerce also did not respond to evidence that AEFTC submitted demonstrating that Reflection's imported products are more like curtain wall units than the window wall products that Commerce previously examined. *See* AEFTC Br. at 27-29. The Government also does not respond to this specific argument. In one of the agency's remand redeterminations pursuant to an appeal of Commerce's scope ruling finding curtain wall units not excludable as "finished goods

kits,"[3] in responding to arguments by certain parties that the curtain wall units at issue should be excluded as "finished goods kits" like the window wall products that Commerce previously examined, the agency explained that "when {Commerce} found that the {finished goods kit} exclusion applied to window walls, it applied to self-contained window walls which are imported into the United States as a kit and can be fully assembled upon importation into the structure of the building," noting that these parties were describing "window walls" differently – "products which are better described for our purposes as window wall building projects (*i.e.*, a collection of window walls, floor slabs, and other parts of the side of a building's structure)."[4] *See* Appx80378-80379 (Appx01501-01502). Commerce also explained that:

> The window wall kits thus far analyzed by {Commerce} include all the necessary parts at the time of importation to make a finished window wall, which is a modular stand-alone unit that fits within a building's discrete aperture, similar to a window, and is imported in a single entry . . . . {W}indow walls fill a hole in a wall or structure, generally are placed between floor slabs, have physical differences between the window and the existing building structure (*i.e.*, the load of the window wall is carried by the floor slabs of the building), and are considered complete or finished after they are installed into a discrete opening in a structure. Furthermore, window walls may be secured without consideration of interlocking or installation of other components.

*See* Appx80386-80387 (Appx01509-01510).

---

[3]      In this second remand redetermination, while Commerce conducted further analysis, the agency ruled, under protest, that the curtain wall units were excluded from the scope of the Orders. This Court remanded a third time, and Commerce found – as it had initially – that the curtain wall units are not excluded as "finished goods kits," which was ultimately upheld. *See Shenyang Yuanda*, 918 F.3d at 1362-63.

[4]      In this Court's opinion that Commerce's second remand redetermination responded to, this Court held that Commerce drew an arbitrary distinction between window walls and curtain walls. *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 146 F. Supp. 3d 1331, 1353 (Ct. Int'l Trade 2016). Regarding this aspect of Commerce's second remand redetermination, the Court noted that the agency provided an explanation of the distinction that it has drawn between curtain wall and window wall units, and that because the reasonableness of this explanation was not challenged, such explanation is affirmed. *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 181 F. Supp. 3d 1348, 1351 n.4 (Ct. Int'l Trade 2016).

AEFTC argued that Reflection's products are like the "window wall building projects" described above, *i.e.*, more like curtain wall units than the window wall products that Commerce previously found to meet the "finished goods kit" exclusion requirements. AEFTC acknowledged Commerce's prior scope rulings involving window wall products. *See* Appx80096-80097 (Appx01230-01231), Appx80352-80354 (Appx01481-01483); *see also* Appx01714, Appx01666. However, in those proceedings, Commerce found the products at issue to meet the requirements of the "finished goods kit" exclusion, not that there is a categorical exclusion for window wall products. *See* Appx01673-01675, Appx01722-01723. AEFTC also explained that the prior scope rulings were largely based on information exclusively submitted by the importer requesting the scope exclusion, without being probed, and thus, the records in those proceedings were not as fully developed as in this case. *See generally* Appx01666-01675, Appx01714-01723; *see also* Appx80097 (Appx01231), Appx80354 (Appx01483). Indeed, none of these prior scope rulings were examined by the courts. In the scope proceeding here, there was significantly more analysis put forward than before and more probing of the product at issue. Each scope request must stand on its own merits, and this proceeding was no exception. Here, there was a substantial amount of evidence on the record indicating that Reflection's imported window wall system components do not meet the requirements of the "finished goods kit" exclusion. Because Commerce failed to address material information indicating that a different conclusion is warranted here, its determination was unreasonable. The defense's continued arguments relying on the prior scope rulings on window wall products are unpersuasive because they fail to acknowledge these distinctions. *See* Government Br. at 29-30; Reflection Br. at 32-33.

Ct. No. 21-00253                                           NON-CONFIDENTIAL VERSION

## III.    <u>CONCLUSION</u>

For the reasons detailed above and in its opening brief, AEFTC respectfully requests that the Court find that Commerce's final scope ruling excluding Reflection's imports of window wall system components from the scope of the Orders is unsupported by substantial evidence and not in accordance with law.  AEFTC requests that the Court remand this determination to Commerce for further consideration in accordance with the discussion above.

Respectfully submitted,

*/s/ Robert E. DeFrancesco, III*
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Elizabeth S. Lee, Esq.
Claire M. Webster, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Aluminum Extrusions Fair Trade Committee*

Dated:  April 18, 2022

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Aluminum Extrusion Fair Trade Committee's Reply Brief, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2021), is 5,037 words.

<u>*/s/ Robert E. DeFrancesco, III*</u>
(Signature of Attorney)

<u>Robert E. DeFrancesco, III</u>
(Name of Attorney)

<u>Aluminum Extrusions Fair Trade Committee</u>
(Representative Of)

<u>April 18, 2022</u>
(Date)