IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **ALUMINUM EXTRUSIONS FAIR TRADE COMMITEE,** <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES,** <br><br> Defendant, <br><br> and <br><br> **REFLECTION WINDOW + WALL, LLC,** <br><br> Defendant-Intervenor. | Before:  Hon. Stephen A. Vaden, Judge <br><br> Court No. 21-00253 <br><br> <u>PUBLIC DOCUMENT</u> |

## LETTER BRIEF OF DEFENDANT-INTERVENOR REFLECTION WINDOW + WALL, LLC

Jeffrey S. Neeley, Esq.
Robert Stang, Esq.

HUSCH BLACKWELL LLP
1801 Pennsylvania Avenue, Suite 1000
Washington, DC 20006
(202) 719-7000

*Counsel for Reflection Window + Wall, LLC*

**Dated:  August 25, 2022**

## **TABLE OF CONTENTS**

I. INTRODUCTION. ............................................................................................................... 1

II. THE CASE LAW. .............................................................................................................. 1

III. COMMERCE'S DETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE WITHOUT INCLUSION IN THE RECORD OF A FORM 7501 ENTRY SUMMARY FOR PRODUCTS FOUND TO BE EXCLUDED. ................................................................................ 2

 A. A Form 7501 Entry Summary is not a document required under the Commerce regulations to issue a scope ruling.  Record information corroborated Reflection's statements that its business model requires that all components in a window wall system kit must be included in a single shipment and covered under a single Customs entry.................................. 2

 B. The record includes substantial evidence other than the Form 7501s, which specifically address slab covers........................................................................................................... 3

 C. The Entry Summary (Form 7501) alone does not list any of the individual components in a window wall system. ....................................................................................................... 7

IV. CONCLUSION................................................................................................................... 9

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

Consol. Edison Co. v. NLRB,
  305 U.S. 197 (1938)........................................................................................................... 1
DuPont Teijin Films USA v. United States,
  407 F.3d 1211 (Fed. Cir. 2005).......................................................................................... 1
*Nippon Steel Corp. v. United States*,
  458 F.3d 1345 (Fed. Cir. 2006).......................................................................................... 2
*Universal Camera Corp. v. NLRB*,
  340 U.S. 474 (1951)........................................................................................................... 2

**Regulations**

19 CFR § 351.225(c)................................................................................................................ 2

**Letter Brief of Defendant-Intervenor Reflection Window + Wall, LLC**

I.      INTRODUCTION.

On behalf of Defendant-Intervenor Reflection Window + Wall, LLC ("Reflection" or "Reflection Window"), we respectfully submit the following brief in response to the Court's Minute Order issued on August 11, 2022. That Minute Order stated that the parties are to file a "Letter Brief, of no more than ten double-spaced pages, containing any legal argument or citation to record evidence it believes the Court should consider on the issue of whether Commerce's determination can be supported by substantial evidence without inclusion in the record of a 7501 Entry Form for any of the already-imported products Commerce has excluded." This Letter Brief is timely filed in response to the Minute Order.

Below we set forth a brief description of the legal standards on substantial evidence and decisions by Federal Courts where the decision of the agency below will be upheld when the record evidence is sufficient to meet the substantial evidence standard, even if more information could have been placed on the record. Most importantly, we review the evidence on the record that supports our contention that, even without a Form 7501 on the record for a window wall system with slab covers, the decision of Commerce to exclude only products with slab covers is supported by substantial evidence on the record.

II.     THE CASE LAW.

The basic case law on substantial evidence is well known to the Court and will not be repeated here. The Federal Circuit has provided the definition of "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). This Court elaborated on the standard

1

in <u>Elwood City Forge Company et al. v. United States</u>, Slip Op. 22-66 (June14, 2022) at 14-15:

"Reviewing agency determinations, findings, or conclusions for substantial evidence, the Court assesses whether the agency action is reasonable given the record as a whole. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006); Court No. 1:21-00073 see also *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951) ('The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.')."

### III. COMMERCE'S DETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE WITHOUT INCLUSION IN THE RECORD OF A FORM 7501 ENTRY SUMMARY FOR PRODUCTS FOUND TO BE EXCLUDED.

**A. A Form 7501 Entry Summary is not a document required under the Commerce regulations to issue a scope ruling. Record information corroborated Reflection's statements that its business model requires that all components in a window wall system kit must be included in a single shipment and covered under a single Customs entry.**

The Commerce regulations require a detailed description of the product and a statement of the interested party's position in order to issue a scope ruling, including a summary of the reasons for the interested party's conclusion, citations to applicable statutory authorities, and "[a]ny factual information supporting the party's position." 19 CFR § 351.225(c). The regulations do not require, or even reference, an Entry Summary (CBP Form 7501) or any of the associated entry documents (commercial invoice, packing list, bill of lading, etc.) supporting the Entry Summary in order to issue a scope ruling. Thus, the fact that the evidence presented in support of the subject scope ruling request included three Form 7501s involving window wall systems without a particular component (slab covers) required under Commerce's final ruling on window wall systems is not a fatal omission.

Although the three Form 7501s that Reflection submitted to Commerce were for window wall systems without slab covers, the entries in question were nonetheless submitted as typical

2

Reflection Window entries; that is, entries for shipments wherein all of the components and parts forming the window wall system kits were included on the same shipment and on the same Form 7501. Consequently, the three Form 7501s and supporting entry documents submitted to Commerce verified Reflection Window's narrative and statements that its business model <u>required</u> that all elements of the kit be included in a single shipment, for the simple reason that packing and entering the goods in any other manner would fail to comport with economic necessity and efficiency at the customer-end and lead to confusion and delays. Appx80130 – 80131. In other words, customers required all parts and components to be shipped in a single kit so that the window wall units could easily be installed at the job site. The record establishes that: "Reflection Windows' business model *requires* that the company import all parts needed to fully assemble a final finished good (the window wall system installed into the building)." Appx80013.

As explained by Reflection's counsel in the August 11, 2022, hearing, at the time of the submission of the Form 7501s that are on the record, the issue before Commerce at that point in the case was whether *all* window wall systems within the particular series (with slab covers and without slab covers) should be excluded. Thus, no distinction was made between those sub-categories of the series with slab covers, and those did not have slab covers. The issue being examined was rather whether Reflection's narrative statements about its business model were credible. In that regard, the three Form 7501s submitted to Commerce corroborated and verified Reflection Window's statements concerning its business model.

> **B.    The record includes substantial evidence other than the Form 7501s, which specifically address slab covers.**

Commerce's letter of April 28, 2020, issued to Reflection ("Third Supplemental Questionnaire") posed 29 questions, many of which were specifically designed to identify the exact products subject to the scope ruling request and the individual components of each product.

3

Appx01279 – 01284.  For example, Question 1 asked for "a complete list of each discrete product … for which you are requesting a scope ruling."  Question 2 requested "product brochures, online product listings, and/or relevant technical literature specific to each individual product…" "in order for this information to be considered as part of [Reflection window's] scope ruling request…."  Questions 4, 5, 6, and 7 asked for "all product variations" within each of the subject window wall series.  Appx01281 – 01282.

Reflection answered fully each question in the Third Supplemental Questionnaire.  For example, with respect to Question 2, Reflection provided technical literature and schematics for the RWW-8000, RWW-9000, RWW-9500 and RWW-12000 series.  Appx01398 – 01471.  The schematics clearly identified each component for each series, including drawings of the slab covers for the RWW-8000 series (Appx01415-01416); drawings of the slab covers for the RWW-9000 series (Appx01421 "Slab Edge Condition With Extruded Cover and Appx01432 – 01433); drawings of the slab covers for the RWW-9500 series (Appx01438 "Slab Edge Condition With Flush extruded Cover and Appx01451 – 01454); and drawings of the slab covers for the RWW-12000 series (Appx01459 "Slab Edge Construction With Extruded Cover").  The schematics also identified the placement of the slab covers in each window wall system.  As such, the schematics for each series of window wall systems clearly identified on the record each component of the window wall system series (including slab covers) as well as the placement of each component within the window wall system (*i.e.,* the final finished good).  The entry documents already submitted also established that consistent with Reflection's business model requires that all components were entered at the same time under a single Form 7501.

The identification of the slab covers in the schematics is consistent with other information provided in response to Commerce's Third Supplemental Questionnaire.  For example, in response

4

to the Third Supplemental Questionnaire (questions 4 – 7) requesting "all product variations" of the window wall systems Reflection confirmed that variations for each window wall series included "1-pcf extrusion slab cover options" (Appx.01302 – 01304) thereby indicating that variations of its window wall systems could include designs with slab covers or without slab covers (in which case the goods would be imported with or without slab covers accordingly).

The information provided in in response to the Third Supplemental Questionnaire was also consistent with key narratives provided to Commerce concerning Reflection's business model, which was the underlying issue behind the need for entry documents, including the Form 7501s. Specifically, Reflection stated on several occasions that its business model required that all components be included in the same shipment and that any other method of shipping the goods would "fail to comport with economic reality." Appx80131.

As noted by James White (Reflection Window's Executive Vice-President of Manufacturing & Engineering) in his Declaration signed under penalty of perjury (Appx01538):

> Regardless of how a Reflection Window window wall system is installed, all primary and secondary parts and components for assembly of the window walls systems are packed in complete kits, which in turn are imported under a single Customs entry. Consequently, shipments of Reflection Window's window wall system kits contain all of the necessary parts to fully assemble the finished window wall systems with no further finishing or fabrication….

Mr. White's Declaration is in support of the statement contained in Reflection's ruling request of January 9, 2020. It is further bolstered by the Form 7501s and other documents, regarding a sub-series that did not happen to have slab covers, all of which established that Reflection's packing and shipping requirements, which required all components to be included in a single shipment and covered under a single form 7501, were essential to the success of Reflection's business model. Appx01115 – 01116. In that regard, the narrative on the record establishes that irrespective of whether slab covers are part of a particular window wall system

5

"the imported components *must* be sufficient to assemble a finished window wall system, which rules out any further finishing or fabrication. If a single part was missing then Reflection Window would not know that fact until the goods were delivered to the project site and unpacked." Appx01327. "As such, Reflection Windows' business model *requires* that the company import all parts needed to fully assemble a final finished good…." Appx01327. The logic of this requirement is obvious: If even a single part in the shipment was missing or misplaced, the result would be missing parts or parts associated with the wrong window wall system; logic and reasoning that apply equally to window wall system sub-series with or without slab covers.

The record evidence, then, s*pecifically identifies* slab covers as primary components for some sales in the series RWW-8000, RWW-9000, RWW-9500 and RWW-12000 window wall systems. It provides technical drawings of those slab covers. It identifies the placement of the slab covers in the window wall systems. It establishes that window wall systems under these four series may or may not be designed with slab covers and further establishes that Reflection's business model requires that all parts (including all primary components) *must* be packed in complete kits imported under a single Customs entry.

Commerce cited to Reflection's narratives and schematics when issuing its scope ruling and confirmed that this information "indicates that Reflection's window wall system kits contain all of the parts necessary for the end-user to fully assemble the window wall system, are fully fabricated, and require no further finishing or fabrication prior to being assembled." (Appx01603 – 01604) Commerce's scope ruling specifically cites to the evidence on the record supporting its conclusion that when a window wall system series is designed with a slab cover, the slab cover is packed and imported with all other components required to fully assemble the window wall system. This indicates that based on all of the information on the record, including the supporting entry

documents, Commerce accepted that Reflection's narrative concerning its business model was credible. Commerce based its decision on all of the information on the record (the record as a whole as required by caselaw), showing that all components required to fully assemble Reflection's window wall systems are covered in a single shipment and a single Customs entry.

    **C.    The Entry Summary (Form 7501) alone does not list any of the individual components in a window wall system.**

The Entry Summary (Form 7501) standing alone will not identify whether any particular shipment contained a slab cover or any other component in the window wall system. As such, focusing on a Form 7501 to the exclusion of other entry documents and information will not assist in an analysis concerning the subject window wall systems. Rather, the Form 7501 will merely identify the tariff classification for the goods (Subheading 7610.10.0010, HTSUS specific to certain "windows and their frames" imported as part of certain "Aluminum structures … prepared for use in structures"); the value of the goods, the country of origin of the goods, various duties and fees owing and other high level entry data. See Appx80023, Appx80044, Appx80055.

The entry documents supporting the Form 7501, including the packing list and bill of lading, identify with specificity each component in each window wall system. The Court will see that the three packing lists provided to Commerce (for the three most recent entries requested by Commerce) in support of the three Form 7501s (Appx80225 – 80040, Appx80046 – 80051, Appx80057 – 80061) identify with specificity each component by its primary and secondary description. The packing lists tie each component to a particular project, a particular window wall system kit, and particular sequencing for placement therein. The packing lists also tie each component to a shipping container number, which in turn ties to the bill of lading, and subsequently to the Form 7501. For example, we note the packing list submitted in support of Entry 988-0842228-5 referencing specific packages of parts (panels, head receptors, sill receptors, jamb

receptors) packed in Container Nos. ECMU4571480 and FSCU7139240 (Appx80046 – 80051). These container numbers are identified in the bill of lading (House Bill No. MIQOSHA009944) (Appx80052), which in turn is referenced on the Form 7501. These entry documents identify each component in the subject shipment and provide evidence corroborating Reflection's narrative concerning its business model (*i.e.,* that all of the necessary components for a particular window wall system are by necessity contained in a single shipment covered under a single entry). Thus, the three full packages of entry documents submitted (not merely the Form 7501s) support the statements made on the record regarding all imports, whether including slab covers or not.

Significantly, the evidence on the record further establishes that the package numbers identified in the packing list are placed on the kits as actually packed and crated. See Appx80074 – 80076. As such, it is the entire entry package, including the packing lists and bills of lading as well as photos of the packed and crated window wall systems, that supports the narrative identified above, which is that Reflection's business model requires that each component in the window wall system must be packaged in a kit contained in a single shipment and identified under a single Form 7501. Commerce agreed with Reflection's position and the scope ruling specifically cites to "packing lists," "entry summaries," and "photographs" in support of its conclusion that "Reflection's window wall system kits contain all of the parts necessary for the end-user to fully assemble the window wall system, are fully fabricated, and require no further finishing or fabrication prior to being assembled." Appx01603 – 01604.

In short, Commerce understood from the outset of this scope ruling request that some Reflection window wall systems include slab covers and some Reflection window wall systems do not include slab covers, but chose to limit its scope ruling to window wall systems that include slab covers. Nevertheless, in either instance the entry packages submitted, along with the

8

photographs, schematic drawings and the narrative description of Reflection's business model, provided substantial record evidence to support Commerce's conclusion that in fact, as imported, the company's window wall system kits that were excluded from the scope of the Order contain all of the necessary parts to fully assemble the final finished product and that the kits are covered under a single Form 7501.

## IV.    CONCLUSION

When the record evidence supporting the subject scope ruling is viewed as a whole, it plainly qualifies as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 407 F.3d at1215.  Consequently, for the reasons set forth above, the Court should conclude that the scope determination being challenged in this case is supported by substantial evidence on the record, and thus it is not necessary for the Court to remand the case to Commerce for put additional information on the record.

                                            Respectfully submitted,

                                            Husch Blackwell  LLP

                                            Jeffrey S. Neeley
                                            Robert D. Stang