**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| |
|---|
| **ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,**<br><br>      **Plaintiff,**<br><br>  **v.**<br><br>**UNITED STATES,**<br><br>      **Defendant,**<br><br>   **and**<br><br>**REFLECTION WINDOW + WALL, LLC,**<br><br>      **Defendant-Intervenor.** |

**Before: Hon. Stephen Alexander Vaden, Judge**

**Court No. 21-00253**

<u>**LETTER BRIEF OF ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE**</u>

Plaintiff Aluminum Extrusions Fair Trade Committee ("AEFTC") provides this letter brief in response to the Court's minute order issued on August 11, 2022.  Min. Order (Aug. 11, 2022), ECF No. 39 ("Minute Order").  The U.S. Department of Commerce's ("Commerce") reliance on the entry documentation that Reflection Window + Wall LLC ("Reflection") submitted to conclude that Reflection's imports of window wall system components met the requirements of the "finished goods kit" exclusion in the scope of the orders was erroneous for multiple reasons.  The Government's and Reflection's claims that a 7501 entry form is not required for Commerce to issue a scope ruling are misguided.  Commerce itself required that Reflection submit entry documentation and relied on such information in making its determination.  Commerce simply erroneously relied on such documentation, rendering its scope ruling unsupported by substantial evidence.  Commerce's reliance on the entry documentation that Reflection submitted was also erroneous because the documentation did not demonstrate that all necessary parts are included at the time of importation.  And there is no other documentary evidence on the record that provides

Ct. No. 21-00253

substantial evidence that Reflection's imported products meet the requirements of the "finished goods kit" exclusion.

Even if Reflection submitted a 7501 entry form for the products that are actually the subject of the scope ruling, Commerce's determination would still be unsupported by substantial evidence. Commerce did not conduct the necessary analysis, consistent with the analytical approach of the agency and the Court of Appeals for the Federal Circuit ("Federal Circuit") in the curtain wall unit cases, to actually evaluate whether or not any further finishing or fabrication or additional parts would be necessary to fully assemble the final finished good. Commerce did not conduct such analysis in the underlying scope proceeding to determine whether the express requirements of the "finished goods kit" exclusion were met and, thus, the agency's scope ruling that Reflection's imported products can be excluded is unsupported by substantial evidence.

I.      **COMMERCE INCORRECTLY RELIED ON REFLECTION'S ENTRY DOCUMENTATION FOR A DIFFERENT PRODUCT**

As an initial matter, the Government's and Reflection's arguments that Commerce is not required to consider a 7501 entry form to issue a scope ruling misses the point. Def.'s Letter Br. Resp. to Ct.'s Aug. 11, 2022 Min. Order (Sept. 8, 2022), ECF No. 42 at 7-10 ("Government Letter"); Letter Br. of Def.-Int. Reflection Window + Wall, LLC (Aug. 25, 2022), ECF No. 41 at 2 ("Reflection Letter"). Whether or not Commerce was required to do so, the agency required Reflection to submit 7501 entry packages, Appx01098, and relied on this factual information to conclude that Reflection's imported products meet the requirements of the "finished goods kit" exclusion, albeit erroneously. Appx01590, Appx01606. The Government and Reflection both cite Commerce's regulations that state that a party requesting a scope ruling must include in such application, to the extent reasonably available, a detailed description of the product and the

Ct. No. 21-00253

interested party's position as to whether the product is within the scope of an order including, among other information, "factual information supporting {its} position."  Government Letter at 7-8 (citing 19 C.F.R. § 351.225(c) *et seq.*); Reflection Letter at 2 (citing 19 C.F.R. § 351.225(c)). In prior scope rulings under these Orders (a (k)(1) source)), Commerce has routinely relied on this type of factual information (7501 entry documentation) to assess whether certain requirements of the "finished goods kit" exclusion are met.  *See* Appx01593, Appx01596, Appx01605-01607.

The Government's argument that a 7501 entry form is not a (k)(1) factor also misses the point.  Government Letter at 8-10.  As the Government states, Commerce made its determination based on the scope ruling application and the (k)(1) factors, which include "descriptions of the merchandise contained in the petition, the initial investigation, and the determination of the Secretary (including prior scope determinations) and the Commission."  *Id.* at 8 (citing 19 C.F.R. § 351.225(k)(1)); *see also* Appx01602.  Plainly, the (k)(1) sources are legal sources that Commerce may consider in evaluating whether the product as described meets the plain meaning of the scope. The (k)(1) factors do not provide a list of the types of factual information that the agency must consider in evaluating whether the requested product is, in fact, described properly and would satisfy any exclusion in the scope.  In other words, Reflection asked that Commerce determine that its window walls be excluded from the scope because they meet the definition of a "finished goods kit."  Under its prior scope determinations (which is a (k)(1) factor), Commerce has relied on the products identified in a 7501 form to answer the question in the plain language of the scope as to whether all the necessary parts are present to assemble the finished goods kit.  *See, e.g.*, Appx01593, Appx01596.  Thus, the fact that 7501 forms are not specified in the (k)(1) factors itself is inapposite.

3

Ct. No. 21-00253

For this reason also, the Government's argument that requiring a 7501 entry form is inconsistent with *Perfectus Aluminum, Inc. v. United States* because the Federal Circuit held in that case that if Commerce finds the (k)(1) sources dispositive, the regulations require that the agency issue a final scope ruling without taking further steps, such as initiating a formal inquiry, is wholly irrelevant.  Government Letter at 9.  No party has argued that Commerce should have initiated a formal inquiry.  Commerce chose to require 7501 entry documentation and relied on such factual information in making its determination.  The problem is simply that the agency's conclusion does not actually follow from the documentation.

Lastly, the Government's assertion that a product need not have been imported to be the subject of a scope ruling also misses the point.  *Id.* at 9-10.  In such cases, there would still need to be substantial evidence that each of the "finished goods kit" exclusion requirements are met.  Here, the 7501 entry documentation that Commerce relied on did not provide such substantial evidence and, thus, the agency was incorrect in its conclusion that this specific documentation demonstrated that the exclusion requirements were met.  *See* Appx01607.  Nor was there other documentary evidence adequate to support the agency's determination.

## II.   THE ENTRY DOCUMENTATION AND OTHER RECORD EVIDENCE DEMONSTRATE THAT REFLECTION'S IMPORTED PRODUCTS DO NOT QUALIFY AS "FINISHED GOODS KITS"

Regardless of which products are covered by the entry documentation that Commerce relied on, this documentation demonstrates that the "finished goods kit" exclusion requirements are not met.  The Government and Reflection are wrong that even if for the incorrect products, the entry documentation demonstrate that Reflection's imported products meet the exclusion requirements.  *See* Government Letter at 4-5; Reflection Letter at 2-3.  In addition, the Government

4

Ct. No. 21-00253

and Reflection are incorrect that the record includes substantial evidence other than the 7501 entry forms that demonstrate that the exclusion requirements are met. *See* Government Letter at 4-7; Reflection Letter at 3-7. The record demonstrates the opposite conclusion.

AEFTC first notes that the Government's assertion that the record contains uncontradicted evidence that Reflection's imported products contain, at the time of importation, all the necessary parts to fully assemble a final finished good is untrue. Government Letter at 2. That Commerce may have refused to address evidence detracting from its conclusion does not mean that there was no contradicting evidence. Again, AEFTC highlighted a substantial amount of information (including information submitted by AEFTC as well as Reflection) indicating that Reflection's imported products cannot be assembled as is into finished products. *See* Pl.'s Rule 56.2 Mot. for J. on the Agency R. (Nov. 23, 2021), ECF No. 22 at 16-17 ("AEFTC Opening Brief").

The Government's and Reflection's arguments that the entry documentation for the incorrect products nonetheless demonstrate that Reflection's products at importation include, in a single entry, all of the necessary parts are also untrue. Government Letter at 4-5; Reflection Letter at 2-3. The entry documentation that Reflection submitted, and Commerce relied on, are missing slab covers, as the Government and Reflection concede. Def.'s Resp. to Pl.'s Rule 56.2 Mot. for J. on the Agency R. (Mar. 1, 2022), ECF No. 28 at 28 n.11; Reflection Letter at 2. Reflection identified slab covers as a primary component. Thus, the fact that slab covers are missing from the entry documentation means that Commerce could not conclude from such documentation that all necessary parts to fully assemble a final finished good were included at the time of importation, an express requirement of the "finished goods kit" exclusion. Commerce's reliance on the entry documentation to conclude that the exclusion requirements were met thus renders the agency's

Ct. No. 21-00253

determination unsupported by substantial evidence.  And again, as discussed in AEFTC's prior briefs, Reflection's argument that the window wall system for the project associated with the entry documentation does not include slab covers does not resolve the issue.  *See* AEFTC Opening Brief at 19-20; Pl.'s Reply Br. (Apr. 18, 2022), ECF No. 33 at 10 ("AEFTC Reply Brief").

Reflection's claim that a 7501 entry form alone does not list individual components and that focusing on the form to the exclusion of other entry documents and information does not assist the analysis is also misleading.  Reflection Letter at 7-8.  As Reflection recognizes, the documents supporting the 7501 entry form, including the packing list and bill of lading, specify the individual components.  *Id.* at 7.  But if the window wall systems associated with the entry documentation that Reflection submitted are ones without slab covers, as Reflection contends, *id.* at 2, then these accompanying documents would also not include slab covers.  Thus, they would equally fail to provide evidence that Reflection's imported products include all necessary components at the time of importation.  AEFTC also notes that Reflection submitted a chart identifying "each part of the assembled goods kits in each of the above entries," which appears to be in reference to the three sets of entry documentation that Reflection submitted.  Appx01113-01114, Appx01119.  This chart also did not list slab covers, again demonstrating that Reflection's imported products did not include a part that the company itself identified as a primary component.  Appx01150-01156.

The Government and Reflection also incorrectly claim that Commerce's determination is supported by substantial evidence even without the entry documentation.  In doing so, the parties again rely on record evidence that AEFTC already explained do not support the agency's conclusions or actually demonstrate the opposite conclusions.  For instance, the Government and Reflection again rely on the product literature that Reflection submitted, arguing that this

Ct. No. 21-00253

documentation shows slab covers.  Government Letter at 5-6; Reflection Letter at 4.  In addition to the problems with the Government's reliance on this documentation that AEFTC previously discussed, AEFTC Reply Brief at 8, the defense's reliance on the product literature illustrates precisely the problem with their arguments.  The fact that slab covers are shown in Reflection's product brochures only further confirms that slab covers are a necessary component.  The fact that they are shown in the brochures does not demonstrate that such slab covers are included in a packaged combination of parts, along with all other necessary components to fully assemble a final finished good, at the time of importation.  In fact, taken together, it demonstrates precisely the opposite conclusion – the slab covers are a necessary component but when asked to provide evidence that they were included with the entry and were included in the packing list, the slab covers were not there.  In other words, the absence of any reference to slab covers in either the entry form, packing list, or bill of lading can only lead to the conclusion that a key component is missing from the product when it entered the United States and therefore cannot satisfy the finished good kit exclusion.  The Government is incorrect in arguing that the product literature provides evidence that slab covers are included in Reflection's imports.  Government Letter at 5.  The entry documentation that Commerce actually relied on did not include any slab covers.  The product brochure is a promotional document that is provided to customers to show what the finished product will look like.  It is not conclusive proof of what was actually imported from China.

Similarly, the Government again relies on the photographs of unassembled window wall system components and crated components, asserting that they serve as evidence that slab covers have been imported into the United States.  *Id.*  Again, AEFTC previously highlighted the problems with Commerce's reliance on this documentation.  AEFTC Reply Brief at 4-5.  However, the

Ct. No. 21-00253

question is not whether slab covers, or any other necessary parts, were imported into the United States.  The question is whether all necessary parts to fully assemble a final finished good were imported as a "packaged combination" of parts on the same entry, as required by the "finished goods kit" exclusion.  There is no documentary evidence on the record demonstrating that this is the case.  Moreover, the pictures do not show the country of origin of the slab covers.  *See* Appx01350.  The entry documentation does not include slab covers.  Therefore, it is clear that a portion of the product was imported from China, but it is not clear that the slab covers were also imported from China.  And, even if Reflection may have imported slab covers for some of its projects in the past, there is no evidence on the record that such slab covers were part of a packaged combination of parts with all necessary parts, as required by the "finished goods kit" exclusion, and can be fully assembled as is into a final finished good with just the imported components.

Again, AEFTC recognizes that Reflection provided declarations from an executive of its company to support its claims, stating, for instance, that Reflection's shipments of window wall system kits contain all the necessary parts to fully assemble finished window wall systems with no further finishing or fabrication, enabling the products to be installed as is into a building.  AEFTC Reply Brief at 8.  However, as the end-user, Reflection could have submitted schematics for the specific building projects associated with the imported products or installation instructions, that clearly detail the installation process, that would have allowed Commerce to evaluate whether or not any further finishing or fabrication or additional parts are required to assemble the final finished good.  *Id.* at 8-9.  Given the problems that AEFTC highlighted with respect to the information that Reflection submitted, as well as the conflicting evidence that AEFTC submitted, Commerce's reliance on Reflection's submissions, without further probing, renders the agency's

Ct. No. 21-00253

determination unsupported by substantial evidence. *Id.* at 9. Moreover, there is direct record evidence submitted by Reflection that directly contradicts the assertions it is making regarding the presence of all the necessary parts to fully assemble the finished window wall system.

For this reason, that Reflection stated that its business model requires the company to import all necessary parts on a single entry and the assertation that the documentation that Reflection did submit supports Reflection's description of its business model and method of product importation generally is inapposite. Government Letter at 4-5; Reflection Letter at 8. Reflection's word cannot substitute for documentary evidence, and the documentation that Reflection did submit does not demonstrate that all necessary parts to fully assemble a final finished good are imported as a packaged combination of parts.

## III.   A 7501 ENTRY FORM FOR THE SPECIFIC PRODUCTS COVERED BY THE SCOPE RULING WOULD NOT CURE COMMERCE'S FAILURE

Even if Reflection had submitted entry documentation for the actual products at issue in Commerce's scope ruling, the agency's determination still would not have been supported by substantial evidence. Again, Reflection's products are similar to the curtain wall units that Commerce has found to be not excludable as "finished goods kits," as upheld by the courts. AEFTC Opening Brief at 20-29; AEFTC Reply Brief at 11-16. The curtain wall unit proceedings provide the analytical framework for evaluating whether products like these may be excluded from the scope. Unlike in those proceedings, Commerce failed to do the necessary analysis to evaluate whether Reflection's imported window wall system components are assembled as is into finished products, without any further finishing or fabrication or additional parts.

Again, Reflection could have submitted schematics for the specific building projects associated with the imported products or installation instructions, that clearly detail the installation

Ct. No. 21-00253

process, that would have allowed Commerce to actually evaluate whether or not any further finishing or fabrication or additional parts are required to assemble the final finished good. Reflection did not submit such information and Commerce chose not to request such information, despite the contradicting evidence that AEFTC highlighted.  Entry documentation, by definition, only shows what is imported and thus cannot serve as evidence that what is imported is all that is needed to actually assemble the finished good at the project site.  And the other documentary evidence that Reflection submitted similarly did not provide evidence of how the products were actually installed at the job site, as AEFTC previously highlighted.  AEFTC Reply Brief at 4-9.

## IV.    **CONCLUSION**

For the reasons discussed above, and in AEFTC's prior briefs, AEFTC respectfully requests that the Court find that Commerce's final scope ruling excluding Reflection's imports of window wall system components from the scope of the Orders is unsupported by substantial evidence and not in accordance with law.

\*      \*      \*

Respectfully submitted,

*/s/ Robert E. DeFrancesco, III*
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Elizabeth S. Lee, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to Plaintiff Aluminum Extrusions Fair Trade Committee*

Dated: September 22, 2022