## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE, *Plaintiff,* v. UNITED STATES, *Defendant,* and REFLECTION WINDOW + WALL, LLC, *Defendant-Intervenor.* | Before: Stephen Alexander Vaden, Judge Court No. 1:21-cv-00253 |

## OPINION AND ORDER

[Affirming Commerce's final scope ruling.]

Dated: January 18, 2023

*Robert E. DeFrancesco*, Wiley Rein LLP, of Washington, DC, for Plaintiff Aluminum Extrusions Fair Trade Committee. With him on the brief were *Alan H. Price*, *Elizabeth S. Lee*, and *Claire M. Webster*.

*Augustus Golden*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States. With him on the brief were *Ann C. Motto*, Trial Attorney, Commercial Litigation Branch, *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *Reginald T. Blades, Jr.*, Assistant Director, Commercial Litigation Branch, and *Leslie M. Lewis*, Of Counsel, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

*Robert D. Stang*, Husch Blackwell LLP, of Washington, DC, for Defendant-Intervenor Reflection Window + Wall, LLC. With him on the brief was *Jeffrey S. Neeley*.

**Vaden, Judge:** Plaintiff Aluminum Extrusions Fair Trade Committee (the Committee) challenges Defendant United States Department of Commerce's (Commerce) final scope ruling determining that Defendant-Intervenor Reflection Window + Wall, LLC's (Reflection) window wall system kits were outside the scope of the antidumping and countervailing duty orders on aluminum extrusions from China. Compl. ¶ 1, ECF No. 9; *Final Scope Ruling on Reflection Window + Wall, LLC's Window Wall System Kits* (Reflection Scope Ruling) at 1, 25, J.A. at 1,584, 1,608, ECF No. 35; *see also Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (Dep't of Com. May 26, 2011); *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (Dep't of Com. May 26, 2011) (together, the Orders). Before the Court is the Committee's Motion for Judgment on the Agency Record, arguing that Commerce's determination that certain Reflection products are excluded from the Orders as finished goods kits is unsupported by substantial evidence and conflicts with Commerce's established practice in prior scope rulings. Pl.'s Mot. for J. on the Agency R. (Pl.'s Mot.) at 1–2, ECF No. 23. For the reasons set forth below, the Court **AFFIRMS** Commerce's decision.

## BACKGROUND

Reflection is a designer, importer, and distributor of "non-load bearing fenestration system[s] provided in combination assemblies and composite units, including transparent vision panels and/or opaque glass or metal panels, which span

from the top of a floor slab to the underside of the next higher floor slab." *Request for Scope Ruling on Certain Window Wall System Kits* (Initial Scope Request) at 2–3, J.A. at 1,001–02, ECF No. 35. In layman's terms, Reflection produces portions of the exterior façades of high-rise buildings. Reflection's products are custom-made to individual projects; it does not inventory or warehouse its products for later use or sell the products for generic commercial use as window wall systems. *Id.* at 2.

At issue here are Reflection's imports of its series RWW-8000, RWW-9000, RWW-9500, and RWW-12000 window wall system kits. Reflection Scope Ruling at 6–9, J.A. at 1,589–92, ECF No. 35. The parties agree that Reflection's products are covered within the general scope language of the Orders and are not finished merchandise but disagree about whether Reflection's products can be excluded as finished goods kits. *Id.* at 20; *see, e.g.*, Pl.'s Mot. at 10, ECF No. 23; Def.'s Resp. to Pl.'s Mot. (Def.'s Resp.) at 19, ECF No. 29. *See generally* Def.-Int.'s Resp. to Pl.'s Mot. (Def.-Int.'s Resp.), ECF No. 27. In its final scope ruling, Commerce found that Reflection's products "contain, at the time of importation, all of the necessary parts to fully assemble a final finished good . . . [and] contain non-aluminum extruded parts beyond mere fasteners" so that the products are finished goods kits excluded from the Orders' scope. Reflection Scope Ruling at 25, J.A. at 1,608, ECF No. 35. The Committee appeals this decision, asking that the Court hold unlawful Commerce's determination as unsupported by substantial evidence. Pl.'s Mot. at 9, ECF No. 23; *see also* 19 U.S.C. § 1516a(b)(1)(B)(i).

## A. Relevant Scope Proceedings

Commerce issued the Orders on aluminum extrusions from China on May 26,

2011. 76 Fed. Reg. 30,650; 76 Fed. Reg. 30,653. The Orders read, in pertinent part:

> Subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to, window frames, door frames, solar panels, curtain walls, or furniture. Such parts that otherwise meet the definition of aluminum extrusions are included in the scope. The scope includes the aluminum extrusion components that are attached (*e.g.*, by welding or fasteners) to form subassemblies, *i.e.*, partially assembled merchandise unless imported as part of the finished goods 'kit' defined further below. The scope does not include the non-aluminum extrusion components of subassemblies or subject kits.

76 Fed. Reg. at 30,650–51. The Orders also contain exclusions to the scope. The

exclusion language explains:

> The scope also excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels. The scope also excludes finished goods containing aluminum extrusions that are entered unassembled in a "finished goods kit." A finished goods kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled "as is" into a finished product. An imported product will not be considered a "finished goods kit" and therefore excluded from the scope of the Orders merely by including fasteners such as screws, bolts, *etc.* in the packaging with an aluminum extrusion product.

*Id.* at 30,651. Commerce has explained its interpretation of the Orders' scope in several rulings. It discussed seven prior scope rulings in its determination here. Reflection Scope Ruling at 10–13, J.A. at 1,593–96, ECF No. 35.

Commerce's prior scope rulings confirm that a product must contain more than just extruded aluminum, fasteners, and extraneous materials like an instruction booklet to qualify for the finished goods kit exclusion. In the Geodesic Domes Kits Scope Ruling, Commerce found that a product that contained only "extruded aluminum poles and fasteners" was not excludable as a finished goods kit because the exclusion requires more than "merely . . . including fasteners." *Final Scope Ruling on J.A. Hancock Co., Inc.'s Geodesic Structures* at 7, J.A. at 1,646, ECF No. 35. In the Meridian Trim Kits Scope Ruling, Commerce denied an exclusion for a product that included only extruded aluminum, fasteners, and an instruction manual. *Final Scope Ruling on Refrigerator/Freezer Trim Kits* at 11, J.A. at 1,664, ECF No. 35; *see also Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1385 (Fed. Cir. 2017).

Commerce's prior scope rulings also evince its interpretation that, although products must enter the country together to qualify for the finished goods kit exclusion, this does not mean they must enter in a single container. In the IAP Enclosure Systems Window Kits Scope Ruling, Commerce excluded window kits from the scope — even when they enter in multiple containers — as long as the containers listed on a single 7501 Entry Summary Form contained "all the parts, including the

glass panels, necessary to assemble a finished window or windows." *Final Scope Ruling on Window Kits* at 4–6, J.A. at 1,651–53, ECF No. 35; *see also Final Scope Ruling on Hand-E-Shutter Kits* at 12, J.A. at 1,735, ECF No. 35.

Commerce examined a "window wall kit" in the NR Windows Wall Kit Scope Ruling. *Final Scope Ruling on Finished Window Kits* at 1, J.A. at 1,666, ECF No. 35. There, Commerce decided that window walls were distinct from curtain walls — parts for which are explicitly included in the Orders' scope — because window walls "do not completely cover the façades of buildings." *Id.* at 10. NR's window wall kits entered the country in "multiple containers and cartons that enter under a single [7501 Entry Summary Form]." *Id.* at 9. Thus, Commerce found them to be finished goods kits excluded from the Orders' scope. *Id.* at 9–10. Similarly, in the Ventana Window Wall Kits Scope Ruling, Commerce excluded from the Orders' scope certain window wall kits under the theory that (1) they could be inserted as standalone units unattached to other window walls and (2) they are distinct from curtain walls because they "leave significant areas of the building uncovered." *Final Scope Ruling on Ventana's Window Wall Kits* at 10, J.A. at 1,723, ECF No. 35.

Commerce has considered curtain wall products — a kind of exterior cladding distinct from window walls — twice before and included them in the Orders' scope on both occasions. The first was the Northern California Glass Management Association curtain wall ruling, where Commerce found that the plain language of the Orders covered the products at issue as "parts for . . . curtain walls." *Final Scope Ruling on*

*Curtain Wall Units and Other Parts of a Curtain Wall System* at 9, J.A. at 1,684, ECF

No. 35.  The second was when Commerce considered Shenyang Yuanda's curtain wall

units.  *Final Scope Ruling on Curtain Wall Units That Are Produced and Imported*

*Pursuant to a Contract to Supply a Curtain Wall*, J.A. at 1,686–713, ECF No. 35; *see*

*Shenyang Yuanda Aluminum Indus. Eng'g Co., Ltd. v. United States*, 776 F.3d 1351

(Fed. Cir. 2015) (*Shenyang Yuanda I*); *Shenyang Yuanda Aluminum Indus. Eng'g*

*Co., Ltd. v. United States*, 918 F.3d 1355 (Fed. Cir. 2019) (*Shenyang Yuanda II*).

There, the Court of Appeals for the Federal Circuit affirmed Commerce's

determination finding the curtain wall units at issue within the Orders' scope.

*Shenyang Yuanda II*, 918 F.3d at 1358.

## B. The Scope Ruling in Question

On August 7, 2019, Commerce received a scope ruling request from Reflection,

asking that it find Reflection's window wall system kits outside the Orders' scope.

Initial Scope Request at 1, J.A. at 1,000, ECF No. 35.  On April 26, 2021, after a long

back-and-forth of supplemental questionnaires, comments from Reflection and the

Committee, and an *ex parte* videoconference, Commerce issued its final scope ruling

finding certain Reflection products excluded from the Orders under the finished goods

kit exclusion.   Reflection Scope Ruling at 1–2, J.A. at 1,584–85, ECF No. 35

(documenting Reflection's four requests for scope rulings, three responses to

supplemental questionnaires, and the Committee's two sets of comments on the

second and third responses).

As part of its ruling that Reflection's products were excluded, Commerce made several findings. *Id.* at 20–24. First, Commerce found Reflection's products to be aluminum extrusions within the Orders' general scope. *Id.* at 20. Next, Commerce found Reflection's products were not finished merchandise — a distinct category from finished goods kits — and declined to consider whether Reflection's products were "subassemblies," finding such a determination was "unnecessary to this ruling." *Id.* Commerce then determined that, although Reflection's products enter the United States in separate containers, they appear on a single 7501 Entry Summary Form and contain "non-aluminum extrusion components beyond mere fasteners." *Id.* at 22–23. Finally, Commerce distinguished Reflection's window wall system kits from curtain wall units on the bases that (1) the "window wall systems are inserted into the opening between the top of one floor slab and the underside of the next higher floor slab," and (2) Reflection's window wall systems "do not make up the entirety of the building's façade." *Id.* at 24. With these conclusions, Commerce found Reflection's products to be finished goods kits excluded from the Orders' scope. *Id.* at 20–21. Commerce found as a fact that "each of Reflection's window wall system kits is a packaged combination of parts that contains, at the time of importation, all the parts necessary to assemble window wall systems by the end-users in the United States and requires no further finishing or fabrication." *Id.* at 20.

Commerce narrowed the exclusion from that originally requested by Reflection. Commerce decided to take "a cautious approach" in response to some of

the Committee's criticisms and excluded only products that (1) are "designed to fit into the aperture of a wall," (2) are designed "not to vertically span a greater distance than from the top of one floor slab to the underside of the next higher floor slab," (3) span no greater than fifteen feet vertically, and (4) contain slab covers. *Id.* at 21–24. Commerce also included what amounted to a warning for Reflection before listing the necessary characteristics of excluded products: "It is incumbent upon Reflection to define its products with specificity. Hence, this ruling applies to the four products specifically as they are defined here." *Id.* at 21. Commerce then defined what it was excluding, giving a list of major components, dimensions, and design elements for each of the four excluded product series. *Id.* at 21–22. In other words, should future products deviate in any way from the specification of this ruling, they will not benefit from the exclusion. *See id.*

### C. The Present Case

The Committee filed its Complaint with the Court on June 25, 2021. Compl. ¶ 11, ECF No. 9. The Complaint alleges that Commerce's determination that Reflection's products are finished goods kits outside the Orders' scope is unsupported by substantial evidence on the record and otherwise not in accordance with law. *Id.* ¶¶ 21–22. The Committee argues that Commerce's determination is unsupported by substantial evidence because: (1) There is insufficient evidence in the record to find that Reflection's window wall system kits are finished goods kits; (2) Commerce failed to appropriately consider evidence the Committee presented that detracts from

Commerce's conclusion; and (3) Commerce's determination conflicts with its established practice in previous scope rulings pertaining to the Orders by treating window wall systems differently from curtain wall units. *Id.* ¶¶ 21–26. The Committee filed a Motion for Judgment on the Agency Record on November 11, 2021; Commerce and Reflection filed responses on March 1, 2022; and the Committee filed its reply on April 19, 2022. Pl.'s Mot., ECF No. 23; Def.'s Resp., ECF No. 29; Def.-Int.'s Resp., ECF No. 27; Pl.'s Reply, ECF No. 32.

At oral argument, the Court confirmed with the parties that Reflection had not submitted a 7501 Entry Summary Form for any of the products Commerce had excluded. Tr. 6:3–7:2, ECF No. 45. Counsel for Reflection offered an explanation for this seemingly strange state of affairs: Reflection had initially requested a broader scope exclusion than Commerce granted; and when Commerce requested that Reflection provide it with the last three entry forms, Reflection complied literally. *Id.* 64:22–67:18. This resulted in Reflection's submitting 7501 Entry Summary Forms that were for products that Commerce did not actually exclude.

Having clarified these facts, the Court ordered the parties to file supplemental briefs on whether the determination could be sustained without a 7501 Entry Summary Form for the products at issue. *Id.* 103:13–105:12. Reflection filed its letter brief on August 25, 2022, arguing that there is substantial evidence in the record without considering the 7501 Entry Summary Forms. Def.-Int.'s Letter Br., ECF No. 41. Commerce filed its letter brief on September 8, 2022, arguing that it can and does

exclude products without 7501 Entry Summary Forms.  Def.'s Letter Br. at 10, ECF

No. 42.  The Committee filed its letter brief on September 22, 2022, contending that

the lack of 7501 Entry Summary Forms for the excluded products prevents the

decision from being supported by substantial evidence.  Pl.'s Letter Br. at 1, ECF No.

44.  With supplemental briefing completed, the questions before the Court are ripe

for resolution.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over Plaintiff's challenge to the Scope Ruling under

19 U.S.C. § 1516a(a)(2)(B)(vi) and 28 U.S.C. § 1581(c), which grant the Court

authority to review actions contesting scope determinations described in an

antidumping order.  The Court must sustain Commerce's "determinations, findings,

or conclusions" unless they are "unsupported by substantial evidence on the record,

or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  If they are

unsupported by substantial evidence or not in accordance with the law, the Court

must "hold unlawful any determination, finding, or conclusion found."  *Id.*  "[T]he

question is not whether the Court would have reached the same decision on the same

record[;] rather, it is whether the administrative record as a whole permits

Commerce's conclusion."  *See New American Keg v. United States*, No. 20-00008, 2021

WL 1206153, at *6 (CIT Mar. 23, 2021).

Reviewing agency determinations, findings, or conclusions for substantial

evidence, the Court assesses whether the agency action is reasonable given the record

as a whole. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."). The Federal Circuit has described "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *DuPont Teijin Films USA v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## DISCUSSION

### I.    Summary

A "finished goods kit" is something like IKEA furniture:  It ships unassembled but with all the necessary parts to assemble the finished product without the end user doing more than putting it together with the included fasteners and adhesives. The Committee challenges Commerce's conclusion that Reflection's submitted window wall system kits are "finished good kits" entitled to exclusion from the scope of the Orders.  The Committee's central argument is that Reflection's products must be treated like the curtain wall units in prior scope rulings.  The Committee asserts that, had Commerce fairly considered the record, it could not reasonably have found that each window wall system is a finished good.  According to the Committee, Commerce must find that the only possible finished good is a completed window wall for an entire building, as is the case with curtain walls.  The Committee argues that, to reach its conclusion, Commerce misunderstood how Reflection's products are used,

failed to critically probe how Reflection's products are packaged, and improperly ignored record evidence that detracted from its ruling. Finally, the Committee claims the lack of a 7501 Entry Summary Form for the excluded products precludes Commerce's decision from being supported by substantial evidence.

Commerce responds with three primary arguments. First, it properly considered and weighed the evidence in the record and responded to the Committee's arguments in detail. It found that Reflection's window wall systems are each final finished goods unlike curtain wall units, and it is inappropriate for the Court to re-weigh the evidence. Second, Commerce's decision is consistent with its prior scope rulings because it found Reflection's products are distinct from the curtain wall units at issue in those prior decisions. Third, a 7501 Entry Summary Form is not required for a scope ruling.

Reflection joins Commerce and supports its argument in three ways. First, Commerce granted a narrower exclusion than Reflection requested, demonstrating Commerce listened to and incorporated the Committee's contentions. Second, Commerce distinguished Reflection's products from prior decisions about curtain walls through detailed use of the record evidence Reflection submitted. Third, Commerce used the submitted 7501 Entry Summary Forms for other similar products to show that Reflection's pattern and practice of business is to ship its products with all necessary parts as a "packaged combination" to be assembled as-is with no further finishing or fabrication required.

The Court begins by analyzing the challenged "finished goods kit" exclusion. Then the Court discusses each of the Committee's arguments. The Court finds Commerce responded to the arguments the Committee made, and the choices Commerce made are reasonable and supported by the record as a whole. Commerce distinguished Reflection's window wall systems from curtain wall units. Thus, Commerce's decision is not in conflict with prior scope rulings; and because its decision aligns with the text of the Orders, it does not modify or contradict them. Commerce's use of the 7501 Entry Summary Forms in the record is appropriate, and a completed 7501 Entry Summary Form for the product at issue is not required for a scope ruling. Therefore, the Court concludes that Commerce's determination is supported by substantial evidence. The Committee's Motion for Judgment on the Agency Record will be **DENIED**, and Commerce's scope ruling is **AFFIRMED**.

## II.    The "Finished Goods Kit" Exclusion

All parties agree that Reflection's products are within the general language of the Orders. The heart of this case is instead a disagreement over the "finished goods kit" exclusion. The Orders define a "finished goods kit" as "a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled 'as is' into a finished product." 76 Fed. Reg. at 30,651.

"[W]hether the unambiguous terms of a scope control the inquiry . . . is a question of law that [the Court] reviews de novo." *Meridian Prods.*, 851 F.3d at 1382. "[W]hether a product meets the unambiguous scope terms presents a question of fact reviewed for substantial evidence." *Id.* The Federal Circuit has held that "in light of its terms and Commerce's prior scope rulings, the [finished goods kit] exclusion's terms are unambiguous and, therefore, control the inquiry." *Id.* at 1384. By the unambiguous terms of the scope, an excluded kit must (1) be a final finished good once assembled; (2) be assembled "as is," without any further finishing, fabrication, or additional parts; and (3) enter as an unassembled, packaged combination of parts. These unambiguous terms of the scope — combined with prior scope rulings interpreting the Orders — control the inquiry and dispute here.[1] *See id.* The Court turns next to the question of fact, which is reviewed under the substantial evidence standard: Whether Reflection's products meet the unambiguous scope terms.

### III.     Reflection's Window Wall Systems Are Finished Goods Unlike Shenyang Yuanda's Curtain Wall Units

To qualify as finished goods kits, Reflection's window wall system kits must be assembled into a final finished good. The Committee asserts that they are not because Reflection's products are principally used in tandem with each other to provide most of a building's exterior façade. Pl.'s Mot. at 16, ECF No. 23. The

---

[1] Although this language is sufficient here, other language in the Orders could be relevant in other disputes over the finished goods kit exclusion. *See Meridian Prods.*, 851 F.3d at 1383 (contemplating language concerning the inclusion of fasteners not at issue here). Plaintiff does not challenge Commerce's interpretation that a "packaged combination" means that all necessary parts enter on a single 7501 Entry Form — rather than in a single package.

Committee argues that this makes Reflection's products akin to curtain walls, for which the Federal Circuit has held that the only final finished good is the entire curtain wall. *Id.*; *see Shenyang Yuanda II*, 918 F.3d at 1367. Commerce disagrees and asserts it found that Reflection's products are distinct from curtain wall products because a single window wall system has a consumptive use, works independently from other systems, and a series of window walls cannot cover a building's entire façade like a curtain wall does. Def.'s Resp. at 16, ECF No. 29; Def.-Int.'s Resp. at 21, ECF No. 27. Because Reflection's window wall systems have individual, consumptive uses and cannot cover a building's entire façade, Commerce's determination that each is a final finished good is supported by substantial evidence.

### A. Shenyang Yuanda's Curtain Wall Units

A final finished good must be useful for something on its own. *See Shenyang Yuanda I*, 776 F.3d at 1358; *see also Shenyang Yuanda II*, 918 F.3d at 1367. In *Shenyang Yuanda I*, the Federal Circuit considered whether curtain wall units were appropriately classed as finished merchandise. 776 F.3d at 1358. Shenyang Yuanda imported curtain wall units that had to be attached together in order to assemble the entire exterior curtain wall of a building. *Id.* Shenyang Yuanda conceded during litigation that "absolutely no one purchases for consumption a single curtain wall piece or unit." *Id.* The Federal Circuit held that concession meant an individual curtain wall unit could not be a final finished good, agreeing with the CIT's finding that "an individual curtain wall unit 'has no consumptive or practical use because

multiple units are required to form the wall of a building.'" *Id.* (quoting *Shenyang Yuanda Aluminum Indus. Eng'g Co., Ltd. v. United States*, 961 F. Supp. 2d 1291, 1298–99 (CIT 2014)). "A single unit does not a curtain wall make, nor is it a finished product." *Id.* For curtain wall units, the only finished good is the entire curtain wall. *Shenyang Yuanda II*, 918 F.3d at 1367.

Shenyang Yuanda returned to the Federal Circuit four years later, presenting a different argument. *Id.* It now argued that it was importing an entire curtain wall — albeit in several shipments linked together by a contract — and that this meant it was importing a finished goods kit. *Id.* Commerce determined that the finished goods kit exclusion required that "all of the necessary curtain wall units are imported at the same time." *Id.* The Federal Circuit agreed that the finished goods kit exclusion "focuses only on the physical contents of the 'packaged combination' at a particular time, not on contractual obligations that might link one 'packaged combination' to another, later-entering one." *Id.* The Federal Circuit therefore affirmed Commerce's determination that Shenyang Yuanda's products were still not finished goods kits within the Orders' meaning.

## B. Reflection's Window Wall Systems

The Committee argues that Reflection's window walls are just like Shenyang Yuanda's curtain walls. The Committee claims (1) Reflection's products, like the curtain wall units in *Shenyang Yuanda I*, are useless individually and must be installed in an interlocking sequence and that (2) as in *Shenyang Yuanda II*,

Reflection had multiple shipments destined for the same building project. Thus, the Committee argues that the same result is required here: Commerce must find that the only final finished good is the entire window wall. But the Committee is mistaken. Commerce effectively distinguished Reflection's products from Shenyang Yuanda's curtain wall units. Reflection's window wall systems have an individual, consumptive use; they can be installed in no particular order; they cannot cover a building's entire façade; and they serve different functions from a curtain wall. As they do not cover the building's entire façade, there is no set minimum number of units to purchase: One unit could theoretically suffice. Because each window wall system is a finished good, each shipment of window wall systems contains multiple finished goods.

The Committee argues that one window wall system, like one curtain wall unit, cannot be a finished good. However, it is possible to purchase just one window wall system and install it. *See* Tr. 49:5–8, 19–23, ECF No. 45 (Court: "[I]s it possible to buy just one, what you term, window system?" Government: "Oh, it certainly is."); Reflection Scope Ruling at 24, J.A. at 1,607, ECF No. 35 (noting that the exclusion was designed to ensure that the window wall systems "cannot connect with other window wall systems"); Declaration of James White of Reflection, J.A. at 80,414, ECF No. 34 ("Each window wall system installed in a building is a modular stand-alone unit.") Unlike curtain wall units, Reflection's window wall systems have an individual, consumptive use. *Cf. Shenyang Yuanda I*, 776 F.3d at 1358. The Orders

confirm that "finished merchandise . . . such as finished windows with glass," are excluded from the scope if entered "fully and permanently assembled." 76 Fed. Reg. at 30,651. A window wall system is a final finished good in the same sense as a window with glass — they are both inserted into an aperture in a building to provide insulation and a view. *See* Reflection Scope Ruling at 21–22, J.A. at 1,604–05, ECF No. 35. Curtain wall units are attached to the outside of a building *and* to other curtain wall units to form a complete curtain wall that envelops the building. One window wall system — like one standard window — has a function alone; one curtain wall unit does not.

The Committee argues that Reflection's window wall systems are like Shenyang Yuanda's curtain wall units because they work together by interlocking and are shipped with an intended installation sequence. Pl.'s Mot. at 16–17, ECF No. 23; *see also Shenyang Yuanda I*, 776 F.3d at 1358. Commerce found just the opposite, *i.e.*, that Reflection's window wall systems do not depend on each other to function. *See* Reflection Scope Ruling at 16–24, J.A. at 1,599–607, ECF No. 35. Commerce went a step further and limited the exclusion to systems spanning less than fifteen vertical feet, ensuring that Reflection's products do not interlock to create a building's entire façade. *Id.* at 24. Commerce also found that an *intended* installation sequence is just a sensible business practice, not a requirement for the product's use. *Id.*; *see also* Tr. 8:17–20, ECF No. 45 (The Court: "Although it might be inefficient and not make logical sense to do so, would it be possible to install the window wall systems in any

order that you wish?"  Counsel for Reflection:  "The answer is yes, Your Honor.").

That degree of independence — rather than interdependence, as with Shenyang

Yuanda's curtain wall units — makes Reflection's products finished goods.

Commerce further accentuated this distinction by adding requirements to the

exclusion it granted Reflection.  Commerce required that excluded products include

slab covers, span no more than fifteen vertical feet, and fit into the space between the

top of one floor slab and the bottom of the next.  Commerce added these requirements

to ensure Reflection's products "cannot connect with other window wall systems to

cover the entirety of a building's façade and compose a type of curtain wall."

Reflection Scope Ruling at 24, J.A. at 1,607, ECF No. 35.  Because Reflection's

products do not have to connect to each other, building features not possible with

curtain walls become options.  Committee Comments on Reflection's Scope Ruling

Request at Ex. 1 n.207 (July 13, 2020), J.A. at 1,510, ECF No. 35 (noting in remand

redetermination that "window walls frequently include doors, windows, and

balconies, and are used for store fronts, 'whereas curtain walls are not'"); *see* Tr. 18:9–

19:16, ECF No. 45 (discussing the Court's understanding that window wall systems

allow the creation of balconies or other access to the outside, which is not possible

with curtain walls, and hearing no dispute from the Committee).  These added

requirements — requirements that Reflection neither suggested nor wanted and that

disqualified some of their products from the exclusion — emphasize and enhance the

distinction Commerce drew between curtain wall units and the excluded window wall systems.

Reflection sent multiple shipments destined for the same building project, each containing multiple window wall systems. *See* 7501 Entry Summary Forms, J.A. at 80,023–56, ECF No. 34. The Committee claims that this is further evidence that Reflection's products are not each final finished goods, like the curtain wall contract in *Shenyang Yuanda II*. The Committee is correct that each shipment was not, alone, the entire building project. Pl.'s Mot. at 18 n.3, ECF No. 22. But that does not prevent its constituent parts — individual window wall systems — from each being a final finished good. Finished windows with glass are specifically referenced by the Orders as finished merchandise.[2] 76 Fed. Reg. at 30,651 ("The scope also excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass . . . .") What Reflection does is akin to taking on a contract to provide one hundred windows for a building and shipping them in two bundles of fifty windows.

---

[2] Despite internal linguistic variation in the Orders between the words "products," "goods," and "merchandise," the Orders contemplate that a finished goods kit will be assembled into "merchandise." *See, e.g.*, 76 Fed. Reg. at 30,651 ("The scope includes the aluminum extrusion components that are attached (*e.g.*, by welding or fasteners) to form subassemblies, *i.e.*, partially assembled merchandise unless imported as part of the finished goods 'kit' defined further below.") The Orders also appear to treat the words "goods" and "merchandise" identically: "Subject extrusions may be identified with reference to their end use, such as fence posts, electrical conduits, door thresholds, carpet trim, or heat sinks (that do not meet the finished heat sink exclusionary language below). Such goods are subject merchandise if they otherwise meet the scope definition, regardless of whether they are ready for use at the time of importation." *Id.*

Each bundle is fifty finished goods.  The two bundles together are not one single finished good.

The situation in *Shenyang Yuanda* was different because — continuing the analogy — fifty curtain wall units are not fifty final finished goods.  That shipment is just half a curtain wall.  A curtain wall is like an outer cage that encircles a building.  If a company shipped a dog cage in two shipments of three metal panels each, those would add up to one finished good:  the entire dog cage.  There is no individual, consumptive use for each metal panel; and three of them are no more useful than one.  The metal panels are entirely dependent on one another for their function.  Shenyang Yuanda's curtain wall units are the same.  Until there are enough of them for an entire curtain wall, they are useless.  Window wall systems are individually useful and work independently from each other.  That is sufficient for Commerce to find each to be a final finished good.

## IV.    Substantial Evidence Supports Commerce's Determination That Reflection's Products Are Finished Goods Kits

Although each of Reflection's products — once fully assembled — is a finished good, to qualify for the exclusion it must also enter as "a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled 'as is' into a finished product."  76 Fed. Reg. at 30,651; *see Meridian Prods.*, 851 F.3d at 1383.  Commerce found that Reflection's products do and thus are finished goods kits excluded from the Orders.

The Committee argues that Reflection's products do not qualify as finished goods kits because (1) Reflection's products do not contain all the necessary parts to assemble the window wall system; (2) Commerce's decision conflicts with its prior decisions construing the finished goods kit exclusion and contradicts the Orders; (3) Commerce improperly ignored record evidence the Committee presented that detracts from Commerce's conclusion; and (4) Commerce improperly relied on 7501 Entry Summary Forms Reflection submitted for products that are not excluded by the scope ruling.  Pl.'s Mot. at 9–10, ECF No. 23; Pl.'s Letter Br., ECF No. 43. Commerce responds that (1) it conducted a thorough analysis of the record data, specifications, and declarations to ensure that Reflection's products do contain all necessary parts on entry; (2) its decision is consistent with prior scope rulings and the Orders because Reflection's products are not curtain walls or curtain wall units but window wall systems; (3) it did respond to the Committee's evidence and arguments but disagreed; and (4) 7501 Entry Summary Forms are not required for a scope ruling.  Def.'s Resp. at 22–35, ECF No. 29, *see* Def.'s Letter Br., ECF No. 42. Reflection responds that (1) it submitted voluminous record information about how its products are packaged and assembled; (2) Commerce distinguished its products from both curtain walls and curtain wall units such that this decision is consistent with prior scope rulings and the Orders; (3) the Committee's argument is a request for the Court to impermissibly re-weigh the evidence; and (4) Commerce properly considered the 7501 Entry Summary Forms in the record as showing Reflection's

ordinary business practice of shipping its products with all necessary components. Def.-Int's Resp. at 18–28, ECF No. 27; *see* Def.-Int.'s Letter Br., ECF No. 41. Because there is substantial evidence on the record that Reflection's products enter as unassembled, stand-alone finished goods that contain all necessary parts, the Court upholds Commerce's determination.

### A. Commerce Found Reflection's Products Contain All Necessary Parts and Require No Further Finishing or Fabrication

Each kit "must contain[], at the time of importation, all of the necessary parts . . . to be assembled 'as is.'" 76 Fed. Reg. at 30,651. The Committee argues that Reflection failed to demonstrate that its products contain all necessary parts. Pl.'s Mot. at 13–15, ECF No. 23. Commerce replies that it examined Reflection's submissions and found them credible, and it only exempted products that match the granted exclusion. Def.'s Resp. at 22–35, ECF No. 29. Reflection reiterates the information it submitted to Commerce, including a sworn statement, detailed annotated images, and entry documents. Def.-Int.'s Resp. at 24–25, ECF No. 27. Commerce found "that the evidence on the record shows that each of Reflection's window wall system kits is a packaged combination of parts that contains, at the time of importation, all the parts necessary to assemble window wall systems by the end-users in the United States and requires no further finishing or fabrication." Reflection Scope Ruling at 20, J.A. at 1,604, ECF No. 35. Deciding complex technical questions about window wall systems is well within Commerce's expertise so that the Court provides it appropriate deference on the technical questions involved. *See*

*Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1039 (Fed. Cir. 1996) (noting that the Court provides greater deference to Commerce's technical expertise than to its interpretation of ambiguous statutory language). Reflection submitted sufficient information to provide substantial evidentiary support for Commerce's finding. *See* 19 U.S.C. § 1516a(b)(1)(B)(i).

Commerce lists several categories of record evidence it used in reaching its determination. Reflection Scope Ruling at 20–21, J.A. at 1,604–05, ECF No. 35 (listing narrative statements, product instructions, packing lists, entry summaries, photographs, schematics, questionnaire responses, and a short video). The narrative statement Commerce references is a sworn statement by James White of Reflection, stating that Reflection includes all necessary primary and secondary components in its shipments. Declaration of James J. White, J.A. at 80,141–42, ECF No. 34. Commerce cites this declaration in its scope ruling when it finds that "[e]very component composing the kit, including accessory components (or 'all primary and secondary parts and components'), for each unit is shipped to the United States in the same shipment." Reflection Scope Ruling at 7, J.A. at 1,591, ECF No. 35. In response to the Committee's contentions that the secondary components were not present on the packing lists, Reflection cited annotated images it submitted. *See* J.A. at 1,134–39, ECF No. 35; J.A. at 80,130, 80,141, ECF No. 34. Those images show that the secondary components are incorporated into Reflection's products at the factory before importation. *Id.*; *see also* Def.-Int's Resp. at 25, ECF No. 26.

The Committee submitted contrary record evidence in a separate declaration. *See* Declaration, J.A. at 80,119–21, ECF No. 34. As Commerce summarized, Reflection and its declarant claimed that the Committee's declarant (1) improperly conflated window walls and curtain walls; (2) conceded that Reflection's window wall systems could be installed out of order; (3) incorrectly claimed that window walls and curtain walls could be used interchangeably for the same projects; (4) incorrectly claimed that both curtain walls and window walls span floor-to-floor, when window walls span floor-to-ceiling; and (5) made outlandish claims about how the declarant would provide window walls instead of curtain walls to a buyer after winning a bid to construct a building using a curtain wall. Reflection Scope Ruling at 16–19, J.A. at 1,600–02, ECF No. 35. Having laid out the conflicting declarations, Commerce sided with Reflection on each of the issues discussed. *See id.* at 23–25; *see also Fujitsu Gen.*, 88 F.3d at 1039 (noting the deference Commerce receives when resolving technical questions). The Committee presented other contrary arguments; for instance, that a short video Reflection had submitted showed that Reflection's products require further finishing or fabrication. *Id.* at 21 n.127. Commerce "repeatedly reviewed the video referenced by the parties and cannot find any support for the petitioner's contention that it demonstrates that there is further finishing, but conclude[s] that it shows the opposite." *Id.*

The Committee also contends that Reflection's submitted technical literature does not "provide a complete list of the necessary parts and materials or a description

of the assembly or installation process for these products." Pl.'s Mot. at 14, ECF No. 23.  The Committee argues that Commerce should have asked for technical literature specific to the custom projects Reflection is seeking to have excluded.  *Id.* at 15.  The included literature is clearly labeled:  RWW-8000, J.A. at 1,399–1,416, ECF No. 35; RWW-9000, J.A. at 1,418–1,433, ECF No. 35; RWW-9500, J.A. at 1,435–1,454, ECF No. 35; RWW-12000, J.A. at 1,456–1,471, ECF No. 35.  The literature contains detailed images of the listed product series.  Those are the product series Commerce excluded here.  Consulting technical, graphical illustrations of the product series at issue is a reasonable choice by Commerce.

The idea underlying the Committee's contentions in these arguments is that Commerce should have believed its evidence and testimony instead of Reflection's and that the Committee's evidence and testimony are stronger and made a better case.  However, "it is not the province of the Court to reweigh the evidence before the agency."  *Comm. for Fair Beam Imports v. United States*, 477 F. Supp. 2d 1313, 1326 (CIT 2007), *aff'd without opinion*, 260 F. App'x 302 (Fed. Cir. 2008).  Commerce examined the Committee's evidence, noted its points of disagreement, and explained why it chose to credit Reflection's evidence instead.  Substantial evidence supports Commerce's conclusion.

## B. This Scope Ruling Is Consistent with Prior Rulings and Does Not Contradict the Orders

Across a decade of scope rulings, Commerce has consistently excluded window wall systems as finished goods kits but refused to exclude curtain wall units.

Commerce's basis for doing so is simple. Window walls do not cover a building's entire façade. Curtain walls do. The Committee argues that Commerce "reached a determination that directly conflicts with its established practice in prior scope rulings under these orders" and that, because this record contains "significantly more analysis put forward than before and [is] more probing of the product at issue," Commerce could only reasonably find that Reflection's products are akin to curtain wall units. Pl.'s Mot. at 2, 27, ECF No. 23. Commerce replies, and Reflection agrees, that the exclusion is consistent "with prior scope rulings related to similar window wall products" and with the plain text of the Orders. Def.'s Resp. at 29, ECF No. 29; Def.-Int.'s Resp. at 3, ECF No. 27. The Court agrees with Commerce that the scope ruling does not contravene Commerce's past scope rulings or the Orders.

Although the Orders have spawned much litigation, Commerce has been consistent in its interpretation of them. Three separate times, Commerce has issued scope rulings excluding windows and window wall products from the Orders. In the IAP Enclosures Scope Ruling, Commerce excluded window kits containing a variable number of panes placed in apertures in building façades. *Final Scope Ruling on Window Kits*, J.A. at 1,648–53, ECF No. 35. In the NR Windows Scope Ruling, Commerce excluded window wall kits and distinguished them from curtain wall units because NR's window wall kits did not envelop or enclose a building's entire façade. *Final Scope Ruling on Finished Window Kits*, J.A. at 1,666–75, ECF No. 35. In the Ventana Scope Ruling, Commerce excluded window wall kits and distinguished them

from curtain wall units because Ventana's window wall kits (1) could be inserted as standalone units and (2) did not cover a building's entire façade. *Final Scope Ruling on Ventana's Window Wall Kits*, J.A. at 1,714–23, ECF No. 35.

By contrast, Commerce has issued scope rulings including curtain wall units in the Orders' scope on two separate occasions. The first time, Commerce included curtain wall units in the scope because the plain language of the Orders included "parts for . . . curtain walls," and that is what Commerce found the curtain wall units were. *Final Scope Ruling on Curtain Wall Units and Other Parts of a Curtain Wall System*, J.A. at 1,676–85, ECF No. 35; *accord Shenyang Yuanda I*, 776 F.3d at 1356–58 (affirming the same reasoning for including Shenyang Yuanda's curtain wall units in the scope). The second time, Commerce declined to find that Shenyang Yuanda's curtain wall units were finished goods kits because (1) they were individually useless and (2) the finished goods kit exclusion could not be satisfied by contractually linking one packaged combination to a later-entering one. *Final Scope Ruling on Curtain Wall Units That Are Produced and Imported Pursuant to a Contract to Supply a Curtain Wall*, J.A. at 1,686–713, ECF No. 35; *see Shenyang Yuanda II*, 918 F.3d at 1367 (affirming Commerce's scope ruling).

Although the Committee is correct that the record of this proceeding is more developed than that of prior window wall kit scope rulings, that fact counsels in favor of the lawfulness of Commerce's scope ruling. Commerce used the extensive record to distinguish Reflection's window wall system kits from the curtain wall units in

prior rulings, as discussed in Section III of this opinion.  Because Commerce reasonably found that Reflection's window wall systems each constitute a final finished good by distinguishing them from curtain wall units, this scope ruling is consistent with Commerce's prior scope rulings.

The Committee also argues that Commerce unlawfully modified the Orders. Commerce has discretion in interpreting the Orders; but it may not change them, and it did not do so here. *See Global Commodity Group LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013); *see also Shenyang Yuanda II*, 918 F.3d at 1362–63 (demonstrating the deference the Court of International Trade owes to Commerce's interpretation of the Orders).  The plain text of the Orders excludes finished goods kits.  Because Commerce demonstrated with substantial evidence that Reflection's window wall systems are finished goods that enter unassembled with all necessary parts to be assembled "as-is" with no further finishing or fabrication required — the exact definition of finished goods kits — Commerce has not modified the Orders.  *See* 76 Fed. Reg. at 30,651; *see also ante* 24–27.  Commerce's scope ruling is consistent with its prior scope rulings and with the Orders.

## C. Commerce Responded Fully to the Committee's Other Arguments

Commerce responded to the Committee's detailed critiques of the scope ruling and specifically limited the ruling to avoid providing an overly broad exclusion.  The Committee contends that Commerce "failed to consider evidence that fairly detracts from its conclusion and also failed to grapple with all important aspects of the

problem." Pl.'s Mot. at 11, ECF No. 23.  Commerce replies that it did respond to all

arguments that fairly detracted from its conclusion.  *See* Def.'s Resp. at 22–35, ECF

No. 29.  Although Commerce must consider "whatever in the record fairly detracts"

from its conclusion and must grapple with all "important aspect[s] of the problem," it

is "not required to address every piece of evidence submitted by participating parties

. . . ."  *CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1373 (Fed. Cir. 2016)

(citing *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997)) (first

quote); *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43

(1983) (second quote); *Dong-A Steel Co. v. United States*, 475 F. Supp. 3d 1317, 1343

(CIT 2020) (third quote).  Commerce responded to all the evidence and arguments

that fairly detracted from its conclusion.  As such, its determination is supported by

substantial evidence.

The simplest analysis available to the Court is to walk through the

Committee's contentions and review how Commerce replied.  To begin, the

Committee argues that Commerce failed to define the final finished good with

sufficient specificity.  *See* Pl.'s Mot. at 12–13, ECF No. 23.  Commerce answered this

critique in two steps in its final ruling.  First, Commerce cited the American

Architectural Manufacturing Association's definition of a window wall system: "[A]

non-load bearing fenestration system provided in combination assemblies and

composite units, including transparent vision panels and/or opaque glass or metal

panels, which span from the top of a floor slab to the underside of the next higher

floor slab." Reflection Scope Ruling at 6, J.A. at 1,589, ECF No. 35. Then Commerce

wrote a detailed, bulleted list of exactly what products are excluded. *Id.* at 21–22.

For the sake of brevity, the Court excerpts the first one:

> The Series RWW-8000 window wall system, consisting of
> four major components: (1) the window system panels; (2)
> the head receptors and sill receptors; (3) the window side
> jamb receptors; and (4) the slab cover. It is a thermally
> broken, butt glazed system manufactured with a 4 inch
> (102 mm) deep structural mullion and a 4.5 inch (114 mm)
> deep receptor system. It includes glass, integral louver, or
> metal infill. It has a one-piece extrusion slab cover. It
> incorporates glass thicknesses ranging from 0.94 inch (24
> mm) to 1.77 inches (45mm). It is designed to fit into the
> aperture of a wall and does not vertically span a greater
> distance than from the top of one floor slab to the underside
> of the next higher floor slab, and such distance is no greater
> than 15 feet (4.57 m).

*Id.* at 21. The Committee asserts that this is insufficient to explain what Commerce

"was defining as the 'window wall system.'" Pl.'s Mot. at 13, ECF No. 23. The Court

recognizes the Committee's contention as stemming from the custom-designed nature

of Reflection's product. A custom-designed product is hard to describe with exact

precision; Commerce could not describe the weight of one system, how many panes

come in one system, or whether one system would be used to create a balcony.

Instead, Commerce cited a commonly used industry definition of a window wall

system provided by Reflection in its scope ruling request. Reflection Scope Ruling at

6, J.A. at 1,589, ECF No. 35. Commerce then provided a list of necessary components,

dimensions, and design elements to define the excluded product series. *Id.* at 21.

These specified details are the kind of product contemplated by the definition of a

window wall system cited by Commerce in the product description. *See id.* at 6.

Commerce then added specifics to the definition that Reflection did not want added,

including a cap in the vertical span of fifteen feet and a requirement that the products

must contain slab covers. *See* Def.-Int's Letter Br. at 2–6, ECF No. 41. These added

limitations narrowed the exclusion Commerce granted and demonstrate that

Commerce sought to define the excluded products so as not to read the finished goods

kit exclusion too broadly. *Cf.* Pl.'s Mot. at 10, ECF No. 23 (arguing that scope

exclusions should be construed narrowly). Indeed, the narrowed language prevented

several products Reflection submitted from being excluded from the Orders' scope.

*See* 7501 Entry Summary Forms, J.A. at 80,023–56, ECF No. 34.

     The Committee repeatedly says that Commerce should have requested further

information about the products Reflection imported. *See, e.g.,* Pl.'s Mot. at 15, ECF

No. 23. But what Reflection sought — and Commerce granted — was an exclusion

that would cover custom-designed products as long as they met various

specifications.[3] Reflection Scope Ruling at 21, J.A. at 1,604, ECF No. 35. Commerce

listed the specifications in detail and based its decision on the technical literature for

the different product series that Reflection submitted. *Id.* If Reflection imports

---

[3] Commerce may only exclude from the scope products that are already in commercial production. 19 C.F.R. § 351.225(c)(1). This requirement prevented one of the products Reflection originally requested a scope ruling for, series RWW-7000, from being considered. Reflection Scope Ruling at 9, J.A. at 1,592, ECF No. 35. Reflection avers that the other excluded products are in commercial production or have been produced at this time. *Id.*

products that deviate from the exclusion's express terms, then those products are simply not excluded.

The Committee's arguments are caught in a contradiction: It seeks to simultaneously argue that Commerce's definition is too vague while also acknowledging that definition has prevented certain products Reflection submitted from being excluded. *Compare* Pl.'s Reply at 6–8, ECF No. 33 (arguing that Commerce's definition, use of submitted technical literature, and use of 7501 Entry Summary Forms is too imprecise), *with* Pl.'s Letter Br. at 6, ECF No. 44 (recognizing that the Reflection products on the submitted 7501 Entry Summary Forms were denied exclusion because they lacked slab covers). An argument divided against itself cannot stand. Because Commerce considered the evidence submitted and responded to the Committee's contravening arguments by narrowing the scope of Reflection's requested exclusion, Commerce acted according to law; and substantial evidence supports its determination.

### D. Scope Rulings Do Not Require a 7501 Entry Summary Form

Although Reflection placed three 7501 Entry Summary Forms on the record for its window wall products, none of those forms are for products actually excluded in this ruling. The submitted forms all involve products that do not have slab covers so that they do not benefit from Commerce's scope ruling. *Compare* Reflection Scope Ruling at 7–9, J.A. at 1,590–91, ECF No. 35 (limiting the exclusion to window wall systems incorporating slab covers), *with* 7501 Entry Summary Forms, J.A. at 80,023–

56, ECF No. 34 (listing the components of three Reflection imports but noting no slab covers). The Committee contends that, because there are no 7501 Entry Summary Forms for the excluded products present in the record, the decision cannot be supported by substantial evidence. Pl.'s Letter Br. at 1, ECF No. 44. Commerce notes that (1) Commerce frequently excludes yet-to-be-imported products — for which there can be no 7501 Entry Summary Forms — in scope rulings; (2) the 7501 Entry Summary Forms present in the record provide evidence that Reflection's standard practice is to import its products with all necessary components; and (3) should Reflection's products not enter on a single form, its products will not be excluded. Def.'s Letter Br. at 10, ECF No. 42; Def.'s Resp. at 35–43, ECF No. 29. Commerce supported its decision by drawing reasonable conclusions from the submitted 7501 Entry Summary Forms about how Reflection's products are normally packaged. Further, Commerce is correct that companies seek scope rulings for products before importation such that they would have no associated 7501 Entry Summary Forms. The Committee's arguments are without merit.

As noted above, Reflection's initial scope ruling request was distinct from the final exclusion in that it did not require slab covers. Commerce added that requirement *after* it asked for 7501 Entry Summary Forms for "the last three entries of Reflection's window wall system kits." *Request for Information Regarding Reflection Window + Wall, LLC's Scope Inquiry on Window Wall System Kits* (Sept. 23, 2019) at 3, J.A. at 1,098, ECF No. 35. Reflection responded to Commerce's request

and submitted the three most recent 7501 Entry Summary Forms for products it was then seeking to have excluded. Those forms — and supplementary documentation — provided detailed lists of parts for window wall systems shipped by Reflection in the ordinary course of business. *Request for Scope Ruling on Certain Window Wall System Kits Qualifying as a Finished Goods Kit* (Jan. 9, 2020[4]) (Second Scope Request) at Exhibit A, J.A. at 80,023–63, ECF No. 34. Commerce reviewed the information and determined that it was Reflection's usual practice to ship all necessary components for one window wall system together. *See* Reflection Scope Ruling at 20–21, J.A. at 1,603–04, ECF No. 35; *see also* Second Scope Request at 14, J.A. at 80,013, ECF No. 34.

A completed 7501 Entry Summary Form for the exact product excluded is not required for a scope ruling. Commerce must issue scope rulings on products that have not yet been imported and therefore have no 7501 Entry Summary Forms. *See Antidumping and Countervailing Duty Proceedings: Documents, Submission Procedures; APO Procedures: Final Rule*, 73 Fed. Reg. 3,634, 3,639 (Jan. 22, 2008) (providing that Commerce may issue a scope ruling even when "[t]he product [has not been] imported into the United States so long as the requestor can show evidence that the product is in production"); *see also* 19 C.F.R. § 351.225(d) (requiring Commerce to

---

[4] This document appears to be misdated in the record as alternately January 9, 2019, and January 6, 2019. Second Scope Request at 1, 20, J.A. at 80,000, 80,019, ECF No. 34. The signature pages list the date of January 9, 2020, and the exhibit materials are from December 2019. *Id.* at 21–23. Given that the request is responsive to Commerce's questionnaire of September 23, 2019, the Court presumes January 6 is a typographical error and that the updated scope request was submitted January 9, 2020.

issue an official scope ruling if it "can determine, based solely upon the application" and the sources listed in subsection (k)(1) whether a product is within the scope); 19 C.F.R. § 351.225(k)(1) (requiring Commerce to consult the petition, the initial investigation, and prior determinations but not requiring a 7501 Entry Summary Form). It is for this reason that Reflection still needs to demonstrate that its imported products — past and future — meet the express terms of the exclusion. Commerce's decision here does not remove that burden. Should Reflection's products not enter as a "packaged combination,"[5] they would not benefit from the exclusion. Because Commerce's use of the submitted 7501 Entry Summary Forms is reasonable, and because the determination as a whole is supported by substantial evidence, the Court upholds it.

## CONCLUSION

Reflection submitted a broad scope ruling request for its window wall systems. Commerce took evidence, developed an extensive record, narrowed the requested exclusion, and responded to the Committee's arguments to the contrary. The result is a final scope ruling that is consistent with the record before the agency, with past scope rulings interpreting the Orders, and with the Orders themselves. Keeping in mind the deference the Court owes to Commerce when it examines all the evidence

---

[5] Commerce has consistently interpreted this language to mean entrance on a single 7501 Entry Summary Form. *See Final Scope Ruling on Window Kits* at 4–6, J.A. at 1,651–53, ECF No. 35; *see also Final Scope Ruling on Hand-E-Shutter Kits* at 12, J.A. at 1,735, ECF No. 35. The Committee has not challenged this longstanding interpretation but only Commerce's application of it to the facts of this case.

before it, applies its expertise, *and* follows the procedural requirements of administrative law, *cf. Shenyang Yuanda II*, 918 F.3d at 1362–63, the Court **AFFIRMS** Commerce's scope ruling and **DENIES** Plaintiff's Motion for Judgment on the Agency Record.


                                                    /s/      Stephen Alexander Vaden
                                                        Stephen Alexander Vaden, Judge

Dated: <u>January 18, 2023</u>
            New York, New York